**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

THE ANDERSON LIVING TRUST
f/k/a THE JAMES H. ANDERSON
LIVING TRUST; THE PRICHETT
LIVING TRUST; CYNTHIA W.
SADLER; and ROBERT WESTFALL,

          Plaintiffs,

vs.                                     No. CIV 12-0040 JB/LFG

WPX ENERGY PRODUCTION, LLC f/k/a
WPX ENERGY SAN JUAN, LLC and
WILLIAMS PRODUCTION COMPANY,
LLC; and WPX ENERGY ROCKY MOUNTAIN,
LLC, f/k/a WILLIAMS PRODUCTION RMT
COMPANY, LLC,

          Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on: (i) the Letter from Cynthia L. Zedalis to the

Court (dated August 15, 2013), filed August 15, 2013 (Doc. 148)("Anderson Letter"); (ii) the

Letter from Bradford C. Berge to the Court in response to a request for production (dated August

27, 2013), filed August 27, 2013 (Doc. 149)("WPX Letter"); and (iii) the Defendants' Motion to

Reconsider the Court's September 18, 2013 Discovery Ruling, filed October 23, 2013

(Doc. 150)("Motion to Reconsider").   The Court held hearings on September 18, 2013, and

October 28, 2013.   The primary issue is whether a party must, under rule 34(b)(2)(E)(i) of the

Federal Rules of Civil Procedure, arrange and label electronically stored information ("ESI") to

correspond to the categories in the request, or whether compliance with rule 34(b)(2)(E)(ii) --

production of ESI in the form that the requesting party requests, or in another reasonably usable

form -- is sufficient.   Specifically in this case, the issue is whether the Defendants must arrange

and label approximately 20,000 pages of documents stored in hard copy form which, at the Plaintiffs' request, were scanned and produced as searchable PDF[1] files, as well as numerous Excel spreadsheets and other files always maintained in electronic form, to correspond to the categories in the Plaintiffs' requests. After reviewing rule 34's text and legislative history, the Court concludes that the term "documents" in rule 34(b)(2)(E)(i) does not include ESI, and, thus, the rule 34(b)(2)(E)(i) requirement that documents be produced either in the usual course of business or labeled to correspond to categories in the request does not apply to ESI. Because rule 34(b)(2)(E) also allows parties to stipulate out of the default rules for production, the parties' agreement to transmit hard copy documents in electronic form means that the production is governed by the rules applicable to ESI, under which the Defendants have met their obligations. The Court, therefore, grants the Motion to Reconsider.

## PROCEDURAL BACKGROUND

The Plaintiffs' counsel sent a letter to the Court on August 15, 2013, requesting an informal discovery conference to resolve a discovery dispute. See Anderson Letter at 2. The Plaintiffs say that the Defendants have produced "tens of thousands of pages of documents," but that "[t]he Defendants are steadfast in asserting they have no duty to designate which of the Plaintiffs' numbered requests these documents are responsive to." Anderson Letter at 2. "Without knowing which documents correspond with specific requests and whether the Defendants have, in fact, produced any documents responsive to some requests, the Plaintiffs

---

[1] Portable Document Format is "an open standard for electronic document exchange" invented by Adobe Systems and "maintained by the International Organization for Standardization." About Adobe PDF, http://adobe.com/products/acrobat/adobepdf.html. PDF files look "just like they would if printed," but "can contain clickable links and buttons, form fields, video, and audio," and are text searchable using optical character recognition technology. Id.

cannot determine whether the Defendants' document produced [sic] is deficient."   Anderson Letter at 2.

The Defendants (at that time) argued that their discovery response "has fully complied with the requirements of Fed. R. Civ. P. 34(b)(2)(E), which allows producing parties to disclose information, at its election, either 'as they are kept in the usual course of business' or organized and labeled to correspond to the categories in the requests."   WPX Letter at 2 (emphasis in original).   The Defendants explained that the Plaintiffs did not initially specify the format in which they wanted production and so the Defendants' counsel contacted the Plaintiffs' counsel "to ascertain Plaintiffs' preferences for the production format."   WPX Letter at 3.   The parties agreed to a specific production format, which required the Defendants to scan the hard copy documents in the order they were maintained within each file and to convert the documents to fully searchable PDF files.   See WPX Letter at 3.   The Defendants also agreed to produce the responsive revenue accounting data in native format, including metadata, with a single Bates number per spreadsheet.   See WPX Letter at 3.   The Defendants say that they complied with that agreement: "All documents were produced in reasonably usable and fully searchable electronic format, in the format requested by Plaintiffs, and as maintained in the ordinary course of business."   WPX Letter at 3.   After the Plaintiffs "complained upon receipt of the production that they were unable to manage it," the Defendants "voluntarily provided Plaintiffs an index of its document production."   WPX Letter at 3.

The Defendants at that time argued that they had done everything required of them under the Federal Rules of Civil Procedure, because they had: (i) produced the documents "as they are kept in the usual course of business"; (ii) "provided information about the particular way in which the documents are ordinarily maintained"; (iii) "provided an index identifying documents

by category"; and (iv) "produced the documents so that they are fully searchable."  WPX Letter at 3.  "There can be no real question that WPX has met its discovery obligations with respect to its document production, and thus Plaintiffs' request that WPX be ordered to identify the particular discovery request(s) to which each document responds should be denied."  WPX Letter at 3-4 (citing, e.g., Kwasniewski v. Sanofi-Aventis U.S., LLC, No. 2:12-cv-005150GMN-NJK, 2013 WL 3297182 (D. Nev. June 28, 2013); Pass & Seymour, Inc. v. Hubbell Inc., 2008 WL 4240490 (N.D.N.Y. September 12, 2008)).

The Defendants argue that the Plaintiffs have not demonstrated how correlating each responsive document to the discovery request would assist the Plaintiffs in prosecuting the case. See WPX Letter at 3 n.2.  According to the Defendants, some of the discovery requests "were duplicative and/or sought overlapping information," and "some were unintelligible as written." WPX Letter at 3 n.2.  The Defendants produced many of the documents after meeting with the Plaintiffs' counsel to determine which documents the Plaintiffs requested.  See WPX Letter at 3 n.2.  The Defendants maintain: "Many of the produced files are responsive to a number of requests."  WPX Letter at 3 n.2.  The Defendants argue that requiring them to "parse through the verbiage of each request and narrow down precisely which file was produced in response to which request would take a significant amount of time," and that the Plaintiffs had "failed to demonstrate . . . how this exercise would even assist them in prosecuting the case."  WPX Letter at 3 n.2.

The Court held a discovery conference on September 18, 2013.  See Liberty Court Player at 1:09:42-1:51:37 (September 18, 2013)("Liberty").  The Court explained its initial inclination on the matter, which was to require the Defendants to label their responsive documents to correspond to the Plaintiffs' requests.  See Liberty at 1:09:42-28:10 (Court).  It cited three cases

- 4 -

where it had previously required parties to identify with specificity the Bates numbers responsive to discovery requests.  See Liberty at 1:10:17-13:35 (Court).  In Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 2460756 (D.N.M. July 31, 2009)(Browning, J.), the Court required the defendants to specify by Bates number which of its previously produced documents were responsive to a specific request.  See 2009 WL 2460756, at *8.  In Union Pac. R.R. Co. v. Larkin, 229 F.R.D. 240 (D.N.M. 2005)(Browning, J.), the Court required the responsive party to supplement its answer to an interrogatory "by specifying which lines and pages of the depositions produced are responsive and by identifying responsive documents by Bates number."  229 F.R.D. at 244.  In Res. Assocs. Grant Writing & Evaluation Servs., LLC v. Maberry, No. CIV 08-0552 JB/LAM, 2009 WL 1300561 (D.N.M. Feb. 5, 2009)(Browning, J.), the Court required the defendant to identify the Bates numbers for the documents it had already produced that were responsive to the request.  See 2009 WL 1300561, at *10.

The Court said that it understood rule 34(b)(2)(E)(i) -- requiring a responding party to produce documents "as they are kept in the usual course of business or . . . organize and label them to correspond to the categories in the request" -- to apply both to hard copy documents and to ESI, as both are subsets of the catchall term "documents," and that rule 34(b)(2)(E)(ii) and (iii) are additional provisions related only to the production of ESI.  Liberty at 1:17:57-18:32 (Court). The Court expressed uncertainty regarding how a party would produce ESI "in the usual course of business," and that, if the party were to go through the documents and remove privileged or unresponsive documents before placing the files on a storage device, this production would not meet the "usual course of business" requirement and the party would have to label the documents to correspond to the categories in the request.  Liberty at 1:18:32-19:42 (Court).  The Court

compared hard copy document storage to ESI and noted that it would be difficult to find an analog to allowing opposing counsel access to boxes of information kept in warehouses, because it would require the responding party to give the other party access to the responding party's computer system, or to place all of the files on a storage device without culling out any unresponsive or privileged files.  See Liberty at 1:14:15-15:45, 1:18:32-19:22 (Court).

The Plaintiffs explained that, because of the requests they made, they needed the Defendants to match the Bates numbers to the specific requests.  See Liberty at 1:28:28-29:16 (Brickell).  For example, in Request Number 4, the Plaintiffs attached check stubs relating to certain wells and asked for documents relating to those wells.[2]  See Liberty at 1:28:48-30:09 (Brickell).  The Plaintiffs did not think they should have to "ferret out what they deem responsive" when the Defendant[s] produced between 17,000 and 20,000 documents.  Liberty at 1:31:12-31:26 (Brickell).  Further, the Plaintiffs said it would be very difficult to take depositions without knowing if the Defendants produced documents responsive to every request.  See Liberty at 1:31:26-31:52 (Brickell).

The Defendants said that they produced many of the documents as they kept them in the regular course of business, such as leases, which they took off the shelves, scanned, and

---

[2] The full request for production says:

> Please produce the invoices, plant statements, receipts and all other documents which reflect all or a part of the transactions which resulted in the gross values by price, quantity and location received by you or any of your affiliates for each production month and well for the arm's length sales of gas, casinghead gas, oil, condensate and natural gas liquids from your leasehold share of production from the Plaintiffs' wells as marked on the attached check stubs. Furnish all documents which comprise and evidence the type and amount of deductions or subtractions for transportation, processing or other expenses related to the same marked production months and wells in the attached check stubs.

Plaintiffs' First Set of Request for Production of Documents to Defendant WPX Energy Production, LLC, Request No. 4, at 7, filed August 15, 2013 (Doc. 148-1).

produced.   See Liberty at 1:33:07-33:40 (Sutphin).   The Defendants admitted that some documents, such as spreadsheets, were not produced as kept in the usual course of business, and so they suggested that they label those documents according to the requests to which each responds.  See Liberty at 1:24:15-34:34 (Sutphin).  The Court asked the Plaintiffs if that solution was satisfactory, see Liberty at 1:34:34-34:40 (Court), but the Plaintiffs said that would likely lead to more disputes, because the parties would disagree as to whether a certain item was kept in the usual course of business or not, see Liberty at 1:34:40-35:21 (Brickell).  The Plaintiffs said that rule 34(b)(2)(E) gives the Court flexibility to make a common-sense judgment and that wading through thousands of documents to determine what may be responsive to a specific request would not be feasible.   See Liberty at 1:37:06-38:48 (Brickell).   The Defendants protested that the Plaintiffs are essentially asking the Defendants to do their work for them.  See Liberty at 1:40:53-41:07 (Sutphin).  The Defendants argued that the Plaintiffs are familiar with the documents that the Defendants have produced and that they can just as easily determine to which request documents are responsive.  See Liberty at 1:41:07-41:32 (Sutphin).

The Court said that it would require the Defendants to indicate by Bates numbers the documents responsive to each request, but that it would not require the Defendants to indicate more specifically than that, such as matching the responsive documents for each Plaintiff.  See Liberty at 1:47:34-48:00 (Court).  The Court said it understood rule 34(b)(2)(E)(i) to require the responding party to correspond the documents to each request if the party extracted any documents from the files before responding, but that it would continue to research discovery requirements for ESI.  See Liberty at 1:49:22-51:20 (Court).

On October 21, 2013, the Court held a hearing on an unrelated matter in the case.  See Transcript of Hearing, taken October 21, 2013 ("Oct. 21 Tr.").[3]  The Defendants raised the issue of ESI production, indicating an intention to move the Court to reconsider its prior ruling.  See Oct. 21 Tr. at 2:10-14 (Sutphin); id. at 8:7-9 (Gillett).   The Court said that it was seriously rethinking its prior ruling on the basis of having read a number of sources, including the section in Moore's on ESI production, see Oct. 21 Tr. at 7:13-23 (Court), and that it might be the case that "some of the commentators and some of the cases conflate" 34(b)(2)(E)(i) and (E)(ii).  Oct. 21 Tr. at 9:11-12 (Court).  See 7 James Wm. Moore et al., Moore's Federal Practice, Civil § 37A.41 (3d ed. 2013)("Moore's").

The Court nonetheless requested an affidavit from the Defendants describing the manner and form of their production, see Oct. 21 Tr. at 8:21-23 (Court), and stated that, if the Defendants could prove that the ESI was produced as it was kept in the usual course of business, without litigation-related alteration, then it was inclined to rule that no labeling would be required:

> [S]omebody swear an affidavit: I downloaded it, here it is.  I can hand it to my accounting department, or I can hand it to the plaintiff's counsel.  And that's the way I keep it in the business.  I think in that case, I'd probably say, you're right, you don't need to produce any sort of correlation.

Oct. 21 Tr. at 14:3-9 (Court).  The Court also stated, however, that, "once you've set there and you had your paralegals go through it, you've decided that this is relevant, this is not relevant, we're going to go through it for privilege, we're going to Bates stamp it, I don't think that's . . . the usual course of business."  Oct. 21 Tr. at 14:10-16 (Court).  The Court indicated it would entertain a motion to reconsider.  See Oct. 21 Tr. at 7:13-14 (Court); id. at 9:1 (Court).

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

On October 23, 2013, the Defendants filed their Motion to Reconsider, along with the affidavit of one of their attorneys.  See Declaration of Sarah Jane Gillett, filed October 23, 2013 (Doc. 150.1).  They argue primarily that rule 34(b)(2)(E)(i) applies only to hard copy documents, not to ESI, absolving them of the (E)(i) obligation to produce discovery either as it is kept in the usual course of business or labeled to correspond to the categories in the request.  See Motion to Reconsider at 4.  In the alternative, the Defendants argue that, even if (E)(i) applies to ESI, the Defendants' production complies with (E)(i), because they produced the information as they maintained it in the usual course of business.  See Motion to Reconsider at 7.

To bolster their contention that (E)(i) does not apply to ESI, the Defendants cite Moore's, which states: "'The [2006] amendment [to Rule 34] was patterned on the traditional production requirements governing paper documents.  But Rule 34 sets a slightly different standard for electronically stored information.'"  Motion to Reconsider at 4 (alterations in original)(quoting Moore's § 37A.41)(internal quotation marks omitted).  The Defendants also cite The Sedona Principles, which they describe as "a benchmark and ground-breaking publication in the area of electronic discovery" that "explains the reason for a separate set of rules for electronically stored information."  Motion to Reconsider at 4, 5 (citing The Sedona Conference Working Group on Best Practices for Electronic Document Retention & Production, The Sedona Principles 61 cmt. 12 (2d ed. 2007)("The Sedona Principles")).  Lastly, the Defendants quote a 2013 case from the United States District Court for the Western District of Washington, emphasizing the disjunctive word choice of that court when describing the rule 34(b)(2)(E) obligations: "A party must produce **documents** as they are kept in the usual course of business, *or for electronically stored information a party must produce it in the form it is ordinarily maintained or in a reasonably usable form.*"  Motion to Reconsider at 6 (emphasis in original)(quoting Nat'l Prods., Inc. v.

- 9 -

<u>Aqua Box Prods., LLC</u>, No. C12-605, 2013 WL 142881, at *1 (Jan. 11, 2013))(internal quotation marks omitted).

To support their alternative argument that their discovery production was in the usual course of business, the Defendants cite a number of cases outlining the standard for determining whether a production is in the usual course of business.  <u>See</u> Motion to Reconsider at 7-11.  They also respond to the Court's concerns that the culling of privileged and non-responsive documents may destroy a producing party's assertion that its production was in the usual course of business. <u>See</u> Motion to Reconsider at 11.  They assert that they could find "no authority declaring that the identification of only responsive electronic files . . . [,] the conducting of a privilege review, or the application of bates labeling . . . [destroys] compliance with Fed. R. Civ. P. 34(b)(2)(E)(i)," and that at least one court has held that a producing party "ha[s] an **obligation** to review documents first and then to produce only responsive documents.  To allow otherwise would seem to allow the document dumping that Rule 34 seeks to prevent."  Motion to Reconsider at 11, 12 (emphasis in original)(citing <u>Levit v. Herbst</u>, No. 04-CV-6185, 2005 WL 3776322 (N.D. Ill. May 19, 2005)).

In their response to the Motion to Reconsider, the Plaintiffs do not contest that rule 34(b)(2)(E)(i) is inapplicable to ESI.   <u>See</u> Plaintiffs' Response to Defendants' Motion to Reconsider, filed October 25, 2013 (Doc. 152)("Response").   Rather, they contend that the requested material in which they are most interested in obtaining and having labeled is not ESI at all, because, before the discovery process, the Defendant stored it in hard copy form.  Response at 2-3.

> The Defendants attempt to confuse "ESI," with documents that were kept in hard copy "in the ordinary course of business" and merely scanned in order to produce them.  The key documents at issue here are not a) lease files or division order files that were produced for review in Tulsa, even though those documents,

when produced had been "purged" and many documents removed as "privileged" from the inspection; b) revenue accounting data; or c) legitimate ESI data.

      The only documents at issues here, as the Defendants well know, are the approximately 20,000 pages of documents, which were produced from November 13, 2012 to September 6, 2013 on six (6) separate cd's, pursuant to the Plaintiff's First Request for Documents . . . .  The Defendants, in their correspondence, dated July 30, 2013 have admitted all of these documents existed in various paper files and were removed from those files, reviewed for privilege, privilege [sic] documents removed, then scanned and then produced in PDF form to Plaintiffs. . . .

      Subparts (ii) and (iii) [of rule 34(b)(2)(E)] are inapplicable, in as much as the documents in question here are not "electronically stored information."

Response at 2-3 (citations omitted).

    The Court held a hearing on the Motion to Reconsider on October 28, 2013.  See Transcript of Hearing, taken October 28, 2013 ("Oct. 28 Tr.").[4]  The Court indicated that it was inclined to grant the motion, see Oct. 28 Tr. at 8:20-21 (Court), as it now viewed ESI as distinct from "documents," and thus not subject to (E)(i)'s requirements.  See Oct. 28 Tr. at 5:6-11 (Court).  The Court further indicated that it found the Plaintiffs' argument -- that the items are not ESI because they were stored in hard copy form before the litigation -- unavailing, because the opening line of rule 34(b)(2)(E), applicable to both (E)(i) and (E)(ii), allows parties to stipulate out of the rule's default provisions, which is what happened when the Plaintiffs requested the items in scanned electronic form.  See Oct. 28 Tr. at 7:10-24 (Court).

    The Defendants noted that much of the discovery at issue had always been stored as ESI and that only a portion of it was hard copy documents converted into ESI for the litigation.  See Oct. 28 Tr. at 10:13-18 (Gillett).  They noted that all discovery in the case had been conducted electronically and that the Plaintiffs had specifically requested this form of production:

---

     [4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

> [W]e usually would produce this kind of document in a TIFF, Tagged Image File Format, and that's what our vendor is used to.  And [the Plaintiffs] said, no, we specifically want it in the portable document format, PDF.  Can you check with your vendor? . . .  [O]ur vendor said, well, it's actually an extra step; it may cost a little more.  But we felt like for purposes of convenience of the parties and to get along, we would go ahead and it [sic].

Oct. 28 Tr. at 16:6-16 (Gillett).

The Plaintiffs argued that, "by requesting a copy [of a hard copy document] in PDF form, it does not transform a hard paper file into ESI for the purposes of the rule."  Oct. 28 Tr. at 20:4-6 (Brickell).  They further argued that the items were not produced in the usual course of business, because they "were pulled from various sources" in different files and then produced in bulk, without delineating which pages came from which files.  Oct. 28 Tr. at 20:11 (Brickell).  The Plaintiffs cited a prior case from the Court, Radian Asset Assurance, Inc. v. College of Christian Bros. of New Mexico, No. CIV 09-0885JB/DJS, 2010 WL 4928866 (D.N.M. Oct. 22, 2010)(Browning, J.), in which the Court subjected ESI to the rule 34(b)(2)(E)(i) requirements, and ruled that conducting a privilege review precluded the producing party from arguing that it produced the ESI in the ordinary course of business.  See Oct. 28 Tr. at 21:6-25.

The Court ruled that the items in question -- including the items that existed in hard copy but were scanned into PDF form at the Plaintiffs' request -- are ESI, and thus governed by (E)(ii), not (E)(i), which controls only hard copy documents.  See Oct. 28 Tr. at 36:14-21 (Court).  The Court clarified that, "if at the beginning of the litigation the documents existed in document hard copy form," then the Defendant could not unilaterally convert the documents into ESI, see Oct. 28 Tr. at 36:1-7 (Court), but that the Plaintiffs' request for PDF format acted as a stipulation under the opening line of rule 34(b)(2)(E), and the Plaintiffs could not then ask the Court "to go back and impose [(E)(i)] document rules."  Oct. 28 Tr. at 36:14-15 (Court).

- 12 -

## LAW REGARDING RULE 34(b)(2)(E)

Rule 34 governs "Producing Documents, Electronically Stored Information, and Tangible Things, or Entering Onto Land, for Inspection and Other Purposes."  Fed. R. Civ. P. 34. Subdivision (a) of the rule outlines the scope of discoverable items, and subdivision (b) outlines the procedures to be followed for requesting items, <u>see</u> Fed. R. Civ. P. 34(b)(1), objecting to requests, <u>see</u> Fed. R. Civ. P. 34(b)(2)(C), and producing "documents or electronically stored information," <u>see</u> Fed. R. Civ. P. 34(b)(2)(E), the relevant provision here.  Rule 34(b)(2)(E) provides:

> *Producing the Documents or Electronically Stored Information.*  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> > (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
> >
> > (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
> >
> > (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E) (emphasis in original).  There is confusion among courts and commentators as to the meaning of and relationship between (E)(i) and (E)(ii), hinging in large part on whether the term "documents," as used in (E)(i), includes ESI.[5]  The Court concludes that provisions (E)(i) and (E)(ii) apply to distinct, mutually exclusive categories of discoverable

---

[5] "The rules of statutory construction apply to the Federal Rules . . . ."  <u>In re Kubler</u>, No. 11-0048, 2012 WL 394680, at *11 (D.N.M. Jan. 25, 2012)(Browning, J.).  <u>Accord</u> <u>Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993)(applying the *expressio unius est exclusion alterius* canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); <u>Hillis v. Heineman</u>, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").

information: Documents -- a term that does not include ESI -- are governed for production solely by (E)(i), while (E)(ii) but not (E)(i) governs ESI.

    1.    **The Evolution of Rule 34 from 1970 to 2006.**

Before 1970, rule 34 made no mention of ESI -- by that name or any other -- and allowed only for "the inspection and copying or photographing . . . of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things." Fed. R. Civ. P. 34 (1964)(amended 1970). Although it would have been possible for courts to shoehorn the developing technology of ESI into one of those categories, in 1970, in recognition of the emerging importance of electronic record storage, the rule was amended[6] to the following: "Any party may . . . inspect and copy[] any designated documents (including writings, drawings, graphs, charts, photographs, phono-records, and <u>other data compilations</u> from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form) . . . ." Fed. R. Civ. P. 34(a) (2000)(amended 2006)(emphasis added).

---

[6] The Federal Rules of Civil Procedure are initially drafted by an Advisory Committee and adopted by the Supreme Court of the United States. <u>See</u> 28 U.S.C. § 2072; <u>Miss. Pub. Corp. v. Murphree</u>, 326 U.S. 438, 444 (1946)(referring to "[t]he fact that this Court promulgated the rules as formulated and recommended by the Advisory Committee"). Before a given rule goes into effect, however, Congress has at least seven months in which to review and, if it so chooses, veto the rules that the Supreme Court proposes.

> The Supreme Court shall transmit to the Congress not later than May 1 of the year in which a rule prescribed under section 2072 is to become effective a copy of the proposed rule. Such rule shall take effect no earlier than December 1 of the year in which such rule is so transmitted unless otherwise provided by law.

28 U.S.C. § 2074. <u>See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.</u>, 498 U.S. 533, 552 (1991); <u>INS v. Chadha</u>, 462 U.S. 919, 935 n.9 (1983)(explaining that the Act of June 19, 1934 "gave Congress the opportunity to review the Rules before they became effective and to pass legislation barring their effectiveness if the Rules were found objectionable"); <u>Sibbach v. Wilson & Co.</u>, 312 U.S. 1, 14-15 (1941)(rejecting an argument that rules 35 and 37 were against Congressional policy, in part, because "the rules were submitted to the Congress so that that body might examine them and veto their going into effect if contrary to the policy of the legislature").

"Documents" was no longer one of several classes of discoverable material, but rather had become the catchall term for virtually all discoverable material.[7]  The advisory committee notes "make[] clear that Rule 34 applies to electronic data compilations," Fed. R. Civ. P. 34 advisory committee's notes, and as technology advanced, courts properly allowed for discovery of ESI under the same procedural framework provided for all other forms of "documents."  E.g., Bills v. Kennecott Corp., 108 F.R.D. 459, 461 (D. Utah 1985)("It is now axiomatic that electronically stored information is discoverable under Rule 34 of the Federal Rules . . . .").

In 1980, with ESI growing in prominence but hard copy discovery still predominant, subdivision (b) of the rule was amended to add the requirement that "[a] party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."  Fed. R. Civ. P. 34(b), para. 3 (2000)(amended 2006).  The reason for this amendment was to put an end to the "apparently not rare" practice of "deliberately . . . mix[ing] critical documents with others in the hope of obscuring significance."  Fed. R. Civ. P. 34 advisory committee's notes (quoting Section of Litigation of the American Bar Association, Report of the Special Committee for the Study of Discovery Abuse 22 (1977))(internal quotation marks omitted).  See United States v. O'Keefe, 537 F. Supp. 2d 14, 19 (D.D.C. 2008)("The Rule was amended in 1980 to prevent the juvenile practice whereby the producing party purposely rearranged the documents prior to production in order to prevent the requesting party's efficient use of them."); In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 351, 363 (N.D. Ill. 2005)(stating that the provision is designed to prevent litigants from "deliberately mixing critical documents with masses of other documents to hide

---

[7] Only "tangible things" remained outside of the "inclusive description of 'documents'" that the new rule furnished.  Fed. R. Civ. P. 34(a), 34 advisory committee's notes on 1970 amendment (1970)(amended 2006).

their existence or obscure their significance" (citing Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202 v. Admiral Heating & Ventilating, Inc., 104 F.R.D. 23, 36 (N.D. Ill. 1984)(Shadur, J.))).

Over time, courts began to interpret the amended rule 34(b) to impose affirmative requirements on all massive productions of documents, with the logic being that the enormity of a production, alone, could render it useless to the requesting party even without any deliberate mixing on the part of the producing party.  See Pass & Seymour, Inc. v. Hubbell Inc., 255 F.R.D. 331, 334 (2008)(noting the disfavor that courts had shown to the "dumping of massive quantities of documents, with no indexing or readily apparent organization, in response to a document request from an adversary").  The amendment had the effect of requiring the producing party to turn documents over in an organized, comprehensible arrangement -- either by specifically indexing each document to the request to which it was responsive, or, failing that, by turning over the documents with the business's filing system or other organizational structure still intact and usable by the requesting party, thus "minimiz[ing] the burden of production while maintaining the internal logic reflecting business use."  SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 409 (S.D.N.Y. 2009)(Scheindlin, J.)(internal quotation marks omitted).  See CooperVision, Inc. v. Ciba Vision Corp., No. 2:06CV149, 2007 WL 2264848, at *4 (E.D. Tex. Aug. 6, 2007)("[P]roduction of records as kept in the usual course of business ordinarily will make their significance pellucid.  That is the overarching purpose of the rule.").  The usual course of business -- in the days of warehousing large numbers of hard copy documents -- meant giving the requesting party free access to the facility without any culling or reviewing for responsiveness by the producing party.

In the context of ESI, the new 34(b) para. 2 requirement ended up serving another purpose: in addition to regulating the organization of production, it allowed courts to specify, or at least restrict, the form -- i.e., the file formatting -- of the individual artifacts of ESI being produced.  Requiring production of ESI in the usual course of business was widely interpreted to mean turning over computer files in their "native form" -- the format in which they were kept with the party before the commencement of litigation -- or some agreed-upon alternative. Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 648-49 (D. Kan. 2005).  See Fed. R. Civ. P. 34(a) (2002)(amended 2006)(providing that "data compilations" must be "translated, if necessary, by the respondent through detection devices into reasonably usable form").  Cf. The Sedona Principles 44-46 cmts. 13.a-c (2004).  Although this interpretive spin on 34(b) para. 2 was not perfect -- it had the effect of reading out the alternative requirement of labeling production to correspond to categories in the requests, which cannot easily be construed to bear on file formatting -- it served the purpose in the absence of an alternative basis for regulating the form of ESI production.

From 1980 until the 2006 amendments, courts applied the organized production requirement to both hard copy documents and ESI: (i) as a textual matter, the term "documents," as defined parenthetically in rule 34(a), still included "data compilations from which information can be obtained"; (ii) the evil that the 1980 amendment was designed to combat -- hiding important information in a blizzard of irrelevant material, or jumbling the organization of production so as to render diligent examination impracticable -- could just as easily thwart ESI discovery, especially in the days before the widespread availability of optical character recognition ("OCR") search technology; and (iii) there being, at that time, no other basis in the rule for regulating the file formatting of ESI production, reading out the 34(b) para. 3

requirement would leave producing parties free to turn over ESI in whatever form they wanted --
even if it meant deliberately converting ESI from its easily accessible native format into an
inconvenient, obscure, or expensive one.

       **2.**      **The 2006 Amendments.**

       The 2006 amendments created rule 34 as it exists in its current form,[8] altering both the
rule's scope and procedural portions.  See Fed. R. Civ. P. 34 (2006)(amended 2007).  Rule 34(a)
now reads:

> (a) **In General.**  A party may . . .
>
> > (1) . . . inspect, copy, test, or sample the following items . . .
> >
> > > (A) any designated documents <u>or</u> electronically stored information
> > > -- including writings, drawings, graphs, charts, photographs, sound
> > > recordings, images, and other data or data compilations -- stored in
> > > any medium from which information can be obtained . . . or
> > >
> > > (B) any designated tangible things . . . .

Fed. R. Civ. P. 34(a) (second emphasis added).  ESI -- now referenced by that name -- is no
longer lumped into an expansive parenthetical definition of "documents" under the heading of
"other data compilations," but instead placed alongside documents in a three-item list.  This
change was not haphazard, stylistic, or unintentional.  <u>See</u> Fed. R. Civ. P. 34 advisory
committee's notes.   "Lawyers and judges interpreted the term 'documents' to include
electronically stored information because it was obviously improper to allow a party to evade
discovery obligations on the basis that the label had not kept pace with changes in information
technology.  But it has become increasingly difficult to say that all forms of electronically stored

---

[8] The rule was amended again in 2007 "as part of the general restyling of the Civil Rules
to make them more easily understood and to make style and terminology consistent throughout
the rules.  Th[o]se changes are intended to be stylistic only."  Fed. R. Civ. P. 34 advisory
committee's notes.  This opinion will refer to the current language of the rule, rather than the
2006-07 language.

information, many dynamic in nature, fit within the traditional concept of a 'document.'"  Fed. R. Civ. P. 34 advisory committee's notes.

The production procedure in subsection (b) was also amended, retaining the "usual course of business or . . . organiz[ation] and label[ing]" requirement for "documents" in the newly styled (E)(i), and creating a new standard -- that ESI must be produced "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms" -- in the new (E)(ii).  Fed. R. Civ. P. 34(b)(2)(E).  These two provisions have widely been recognized as codifying the organization-versus-form distinction drawn by earlier cases.  "[T]he term 'form' relates to the diverse types of electronically stored information such as file types ('.pdf') or various storage means.  The comments do not refer to the term 'form' as encompassing the organization of all of a party's production." Suarez Corp. Indus. v. Earthwise Techs., Inc., Nos. C07-5577RJB & C07-2020RJB, 2008 WL 2811162, at *2 (W.D. Wash. July 17, 2008).  See Diesel Mach. Inc. v. Manitowoc Crane, Inc., No. CIV 09-4087-RAL, 2011 WL 677458, at *3 (D.S.D. Feb. 16, 2011).

Of course, just because not all ESI fits into the genus "documents," it does not follow that none of it does; a large portion of ESI, such as electronic mail transmissions or electronic memoranda, would seem to fit comfortably into the everyday definition of documents.  Likewise, while textually and purposively the new (E)(ii) does not apply to hard copy documents -- (E)(ii) regulates the form of production, which for hard copy documents is always paper -- it is not obvious why the old requirements, now embodied in (E)(i), should not continue to apply to ESI. Put another way: it is reasonable to read (E)(i) and (E)(ii) as supplementary, rather than alternative, at least for those items that seem to be both documents and ESI.  There is something to be gained from imposing basic organization requirements onto massive productions of ESI;

- 19 -

artifacts of ESI can be jumbled beyond usefulness -- by dumping them out of their file directories and onto the requesting party -- just as easily as hard copy documents can.

The vast majority of courts have treated (E)(i) and (E)(ii) as supplementary rather than alternative, applying (E)(i)'s organized production requirement to ESI the same way they had before the 2006 amendments, and adding the (E)(ii) form requirement on top of the requirements of (E)(i).[9]  See, e.g., Diesel Mach. Inc. v. Manitowoc Crane, Inc., No. CIV 09-4087-RAL, 2011 WL 677458, at *3 (D.S.D. Feb. 16, 2011)(holding that ESI was not produced in the usual course of business and thus must be labeled to correspond to categories in the requests); SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 413 (S.D.N.Y. 2009)(Scheindlin, J.)(holding that ESI produced in the course of an investigation, "which is by its very nature not routine or repetitive[,]

---

[9] While not directly in conflict, there is some tension in between the Court's decision in Radiant Asset Assurance, Inc. v. College of the Christian Bros. of New Mexico, No. CIV 09-0885 JB/DJS, 2010 WL 4928866, at *6 (D.N.M. Oct. 22, 2010)(Browning, J.), and the interpretation of rule 24(b)(2)(E) the Court adopts here.  In Radian Asset Assurance, Inc. v. College of Christian Bros. of New Mexico, the Court assumed, without much analysis, that rule 34(b)(2)(E)(i) applied to ESI.  In that case, the Court analyzed the production of ESI tape backups under (E)(i) before deciding the issue on other grounds.  Radian Asset, the requesting party, had argued that the College could not produce its ESI as it was kept in the usual course of business as (E)(i) requires.  See 2010 WL 4928866, at *6.  The Court assumed, as did the parties in their arguments, that (E)(i) applied, and stated that it was unconvinced by Radian Asset's argument that, because the College transferred its ESI to a third party before subpoenaing it back, the College could not produce its records in the same way in which they were maintained before it transferred them.  See 2010 WL 4928866, at *6.  The Court stated: "Merely transferring material between parties, however, does not necessarily alter how it was 'kept.'"  2010 WL 4928866, at *6.  The Court concluded: "Thus, the fact that the CSF ESI is stored, in part, on tape backups does not, without more, suggest that the ESI is not in the same state as it was 'kept in the usual course of business.'"  2010 WL 4928866, at *6 (quoting Fed. R. Civ. P. 34(b)(2)(E)(i)).  The Court stated that rule 34 is a default rule, and that the Court can order the producing party to meet additional or alternative obligations.  See 2010 WL 4928866, at *7.  The Court stated: "Consequently, even if the CSF ESI was not kept on tape backups in the course of business, the Court may order that the tapes be produced."  2010 WL 4928866, at *7.  The Court also required the College to produce affidavits or declarations stating that the ESI was kept in the usual course of business.  See 2010 WL 4928866, at *9.  Thus, while the Court does not have any reason to question what the Court did in Radian Asset Assurance, Inc. v. College of the Christian Bros. of New Mexico, it might have analyzed the result differently if it had been presented squarely with the issue in this case and done the the analysis here.

cannot fall within the scope of the 'usual course of business,'" and requiring the SEC to label their responsive ESI by category); MGP Ingredients, Inc. v. Mars, Inc., No. 06-2318-JWL-DJW, 2007 WL 3010343, at *3 (N.D.N.Y. Oct. 15, 2007)(stating explicitly that (E)(i) controls the production of ESI).  See Mark S. Sidoti et al., Form and Manner of Production Under FRCP 34, 52 DRI For the Defense 61 (2010)("This section gives the producing party the option to produce documents (including, of course, ESI) as they are 'kept in the usual course of business' . . . .").

Portions of the advisory committee notes on the 2006 amendments support that interpretation.  For example, the committee advises that "a Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information unless discovery in the action has clearly distinguished between electronically stored information and 'documents,'" reflecting the reality that items of ESI are routinely referred to as documents in common parlance -- and, before 2006, were included in the legal term of art.  Fed. R. Civ. P. 34 advisory committee's notes (emphasis added).  Most confusingly of all, the term "documents" has a different definition in other rules:

> [T]he term used in Rule 34(a)(1) appears in a number of other amendments, such as those to Rules 26(a)(1), 26(b)(2), 26(b)(5)(B), 26(f), 34(b), 37(f), and 45. . . . References to "documents" appear in discovery rules that are not amended, including Rules 30(f), 36(a), and 37(c)(2).  These references should be interpreted to include electronically stored information as circumstances warrant.

Fed R. Civ. P. 34 advisory committee's notes (emphasis added).  Professor John K. Rabiej[10] explains: "[T]he term 'documents' usually includes ESI but only in 'discovery rules that [were]

---

[10] Professor Rabiej is currently the director of the Center for Judicial Studies at Duke University Law School.  Before joining the faculty at Duke, he was executive director and director of judicial outreach for the Sedona Conference.  Before that position, he was the chief of the Rules Committee Support Office of the Administrative Office of the United States Courts -- the office that staffs the Advisory Committee on Rules of Civil Procedure -- for nearly twenty years, during which time he oversaw the 2006 amendments to rule 34.  He has been a member of the American Law Institute since 2004, is the sole author of all of the Moore's sections on ESI

not amended [in 2006] . . . .   The limitation excludes Rule 34, which was amended."  John K.

Rabiej, <u>Rabiej on Production of ESI</u>, Emerging Issues 2628, at *2 (July 29, 2008)(second and

third alterations in original)(quoting Fed. R. Civ. P. 34 advisory committee's notes).   He

continues:

> [S]ubparagraph (E)(i) applies <u>only</u> to the production of hard-copy documents,
> while subparagraph (E)(ii)  <u>exclusively</u> governs the production of ESI. . . .
>
> . . .
>
> The drafters of the e-discovery amendments to Rule 34 recognized that the
> procedures in subparagraph (E)(i), which were written to apply to hard-copy
> documents, did not neatly fit ESI and had to be modified to apply to ESI.  In
> particular, though the procedures in subparagraph (E)(i) work well with paper
> documents, which generally can be produced in only one form, they are not as
> effective with ESI, which can exist in different forms.   Accordingly, the
> rulemakers crafted <u>alternative, mutually exclusive</u>, procedures in subparagraph
> (E)(ii) that are designed to apply specifically to ESI, not to supplement the
> procedures in subparagraph (E)(i).
>
> . . .
>
> Though lawyers and judges have long interpreted "documents" to include ESI,
> Rule 34(a)(1)(A) and the accompanying Committee Note make clear that ESI is
> separate from and distinguishable from documents. . . .   <u>ESI is not a subset of
> documents; it is a new category</u> in addition to documents.

Rabiej, <u>supra</u> at *1-2 (emphasis added)(citing <u>Report of Advisory Committee on Civil Rules to

Committee on Rules of Practice and Procedure</u>, July 25, 2005, found in House Document 109-

105, at  157-58  (2006)(memorializing  that  the  Committee  decided  to  recommend  making

"electronically stored information" separate from "documents"); <u>Moore's</u> § 37A.41 ("Procedures

governing production in paper format do not apply to production of electronically stored

information." (title case removed))).   <u>See</u> Richard L. Marcus, <u>E-Discovery & Beyond: Toward a</u>

---

discovery, and is recognized as one of the nation's top experts on electronic discovery.   <u>See</u> <u>John
Rabiej to Join Duke's Center for Judicial Studies</u>, <u>Duke Law News</u> (Feb. 7, 2012),
http://law.duke.edu/news/7404; John K. Rabiej, <u>Rabiej on Production of ESI</u>, Emerging Issues
2628, at *3 (July 29, 2008); <u>Moore's</u> ch. 37A.

Brave New World or 1984?, 25 Rev. Litig. 633, 649 (2006)("[r]ecognizing 'electronically stored

information' as a separate object of discovery" and noting that "[t]reating [ESI] as one

subcategory of 'documents' . . . seems not to acknowledge its centrality[, while u]nder the

revised rule, it may not be recognized as central, but it is at least recognized as co-equal to

'documents'").

> Professor Rabiej goes on to explain that, while (E)(ii) was designed to parallel (E)(i),
>
> [s]ubparagraph (E)(ii) was drafted . . . to provide requirements comparable, but
> not in addition, to those in subparagraph (E)(i) . . . . Thus, the option in
> subparagraph (E)(ii) to produce ESI "in a form or forms in which it is ordinarily
> maintained" parallels the option to produce documents as "they are kept in the
> usual course of business," while the second option to produce ESI "in a
> reasonably usable form or forms" parallels the option to produce documents in an
> order that categorizes the information by topic or related to a specific request . . . .

Professor Rabiej explains that there are "substantial practical differences between the two

production procedures."  Rabiej, supra at *2 (quoting Fed. R. Civ. P. 34).  Namely, while (E)(i)

document production gives the producing party the right to choose[11] whether to produce "in the

usual course of business" or "label[ed] . . . to correspond to the categories in the request," (E)(ii)

puts the ball in the requesting party's court by first giving them the option to "specify a form for

producing" ESI.  Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii).  It is only if the requesting party declines to

specify a form that the producing party is offered a choice between producing in the form "in

which it is ordinary maintained" -- native format -- or "in a reasonably useful form or forms."

Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii).  A second major difference is that, while (E)(ii)'s ordinary

form option is a good match to (E)(i)'s usual course of business option -- in that both allow the

---

[11] There is some disagreement in the case law how absolute this right is -- i.e., whether a
producing party that keeps its files jumbled in the usual course of its business has any further
obligation of organization -- and it is undoubtedly true that the producing party bears the burden
of showing, by more than an unsupported representation to the court, that the manner of
production is the manner in which the documents are kept in the usual course of business.  See
Johnson v. Kraft Foods N. Am., Inc., 236 F.R.D. 535, 540-41 (D. Kan. 2006).

producing party to minimize production costs by simply turning over what he has, 'as is' --

(E)(ii)'s "reasonably useful form" option seems to fall far short of (E)(i)'s labeling option in

terms of its immediate usefulness to the requesting party.  Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii).  The

reason for this difference, according to Professor Rabiej, comes down to searchability:

> The option to produce electronically stored information in a reasonably usable form is not precisely the same as the option to produce hard-copy documents organized and labeled to correspond to the request, but it is functionally analogous because producing electronically stored information in a word searchable format can enable a party to locate pertinent information, regardless of any index or labeling provided by the responding party.
>
> . . .
>
> [C]ases [in which courts require parties to label and match ESI to categories in requests] impose an unwarranted burden not intended by the Rule 34(b)(2)(E)(ii) amendments . . . .

Moore's § 37A.41.  Conversely, both Professor Rabiej and the advisory committee notes imply

that, if ESI is produced in a non-text searchable format -- or at least if it cannot be readily

converted to a text-searchable format -- it most likely is not "reasonably usable."  Cf. Fed. R.

Civ. P. 34 advisory committee's notes ("If the responding party ordinarily maintains the

information it is producing in a way that makes it searchable by electronic means, the

information should not be produced in a form that removes or significantly degrades this

feature."); Rabiej, supra, at *3 ("Determining whether production of ESI in a form other than in

its native file format represents a 'reasonably usable form' will depend on the circumstances of

each case. . . .  [E]lectronic .tiff images are not word text-searchable, [but] . . . can be converted

to word text-searchable images using an Optical Character Recognition software program.").

## ANALYSIS

The parties mutually agreed to transmit discovery in ESI format -- despite both parties'

knowledge that many of the requested items existed in hard copy in the Defendants' possession -

- and in doing so opted to have rule 34(b)(2)(E)(ii) govern the production.  <u>See</u> WPX Letter at 3; Oct. 28 Tr. at 10:13-18 (Gillett).  This election is permissible under rule 34(b)(2)(E), which in its preface announces that it is a default rule, governing only "unless otherwise stipulated or ordered by the court."  Fed. R. Civ. P. 34(b)(2)(E).  Because rule 34(b)(2)(E)(i) is not controlling, the Defendants are under no obligation to produce their discovery in the usual course of business, nor to label it to correspond to the categories in the Plaintiffs' requests.

From the back-and-forth communications between the Plaintiffs and the Defendants over discovery production, it appears that the parties were more than capable of customizing their own optimally efficient discovery rules.  <u>See</u> WPX Letter at 3; Oct. 28 Tr. at 10:13-18 (Gillett). From the evidence available to the Court, it appears that the Plaintiffs did more than merely "stipulate" to the form of production -- it appears the Defendants were the ones making most of the concessions: they agreed to the Plaintiffs' request to scan hard copy documents into ESI for the Plaintiffs' convenience, and they assented to the Plaintiffs' request to convert the information into PDF form, rather than the cheaper and more familiar (from the Defendants' perspective) TIFF form.  <u>See</u> Oct. 28 Tr. at 10:13-18 (Gillett).

Rule 34(b)(2)(E)(i) governs hard copy documents, and (E)(ii) governs ESI, with no overlap between.  The Plaintiffs do not contest this conclusion in their Response, arguing instead that (E)(i) applies -- not because they believe the (E)(i) and (E)(ii) provisions are cumulative, as many courts have ruled -- but because the items in question are hard copy documents and should be treated as such under rule 34 despite being (mutually consensually) produced as ESI.  <u>See</u> Response at 2-3; Oct. 28 Tr. at 20:4-6 (Brickell).

First, it is unclear whether hard copy document production even <u>could</u> be produced as ESI and still be "in the usual course of business."  Fed. R. Civ. P. 34(b)(2)(E)(i).  If the

quintessential example of producing hard copy documents in the usual course of business involves handing over the keys to the filing room, then it is hard to see how an ESI production could ever provide a comparably true-to-life picture of the business' hard copy document organization.  See Knowledge A-Z, Inc. v. Jim Walter Res., Inc., No. 1:05-1019-cv-RLY-WTL, 2007 WL 3119756, at *1 (S.D. Ind. Oct. 23, 2007)("[P]roviding unfettered access to documents stored in a warehouse will satisfy Rule 34(b)").  The Court need not address that question here, because the parties' agreement as to the form of production preempts the need for an (E)(i) analysis.

The Court finds the Plaintiffs' argument unpersuasive.  Requesting parties are entitled to the guarantees of (E)(i) or (E)(ii), but not both.  Having already secured production in their preferred form -- thus availing themselves of the guarantee in (E)(ii) -- the Plaintiffs now seek to have the production organized for them as well.  The drafters of 34(b)(2)(E) contemplated that parties requesting ESI would be able to organize it themselves -- in their own way, to their own satisfactory level of thoroughness, and at their own expense -- through the use of text-searching technologies like filtering, grouping, and ordering.  See Rabiej, supra, at *2-3.  See Fed. R. Civ. P. 34 advisory committee's notes.  The nimbleness of current search functionality with ESI software is the very reason the Advisory Committee found it unnecessary to make (E)(i)'s organization guarantees applicable to ESI.

The Plaintiffs want the benefits of both (E)(i) and (E)(ii).  They are dissatisfied at being denied the perks of (E)(i), but they would likely be equally dissatisfied had the Defendants refused their request for electronic production and turned over 20,000 pages of hard copy documents -- organized "in the usual course of business" or not.  And, even if that was their preference, the Plaintiffs forfeited their right to demand hard copy production -- and the rules

that govern it -- when they agreed with the Defendants to receive the production as ESI.  Were the Court to now require the Defendants to effectively produce hard copies, it would violate the (E)(iii) provision that "[a] party need not produce the same electronically stored information in more than one form."[12]  Fed. R. Civ. P. 34(b)(2)(E)(iii).  The Defendants satisfied their discovery obligations when they produced the items in question, in PDF format, as the Plaintiffs requested.

      **IT IS ORDERED** that the Defendants' Motion to Reconsider the Court's September 18, 2013 Discovery Ruling, filed October 23, 2013 (Doc. 150), is granted.   The Defendants' production of discovery in PDF format -- consisting of items stored as ESI before the litigation, as well as approximately 20,000 pages of documents that existed in hard copy form before being rendered into ESI for production -- is adequate, and no further production or labeling is required.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Stephen R. McNamara
Brian T. Inbody
McNamara, Inbody & Parrish, PLLC
Tulsa, Oklahoma

--and--

Stan Koop
Stan Koop, PLLC
Norman, Oklahoma

--and--

Karen Aubrey
Law Office of Karen Aubrey
Santa Fe, New Mexico

_____

[12] Paper is expressly contemplated as a form of production for ESI.  See Fed. R. Civ. P. 34 advisory committee's notes.

--and--

Brian K. Branch
The Law Office of Brian K. Branch
Albuquerque, New Mexico

--and--

Turner W. Branch
Cynthia Zedalis
Branch Law Firm
Albuquerque, New Mexico

--and--

Bradley D. Brickell
Brickell & Associates, PC
Norman, Oklahoma

    *Attorneys for the Plaintiffs*

Dustin L. Perry
Hall Estill
Tulsa, Oklahoma

--and--

Christopher A. Chrisman
Holland & Hart LLP
Denver, Colorado

--and--

Mark F. Sheridan
Bradford C. Berge
Robert J. Sutphin
John C. Anderson
Holland & Hart LLP
Santa Fe, New Mexico

--and--

Sarah J. Gillett
Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.
Tulsa, Oklahoma

*Attorneys for Defendants*