## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST, f/k/a THE
JAMES H. ANDERSON LIVING TRUST;
THE PRITCHETT LIVING TRUST;
CYNTHIA W. SADLER; ROBERT
WESTFALL; LEE WILEY MONCRIEF 1988
TRUST; KELLY COX TESTAMENTARY
TRUST 7/1238401; MINNIE PATTON
SCHOLARSHIP FOUNDATION TRUST; and
SWMF PROPERTIES, INC.,

       Plaintiffs,

vs.                                                     No. CIV 12-0040 JB/WPL

WPX ENERGY PRODUCTION, LLC f/k/a
WPX ENERGY SAN JUAN, LLC; WILLIAMS
PRODUCTION COMPANY, LLC; and WPX
ENERGY ROCKY MOUNTAIN, LLC, f/k/a
WILLIAMS PRODUCTION RMT,
COMPANY, LLC,

       Defendants,

and

THE ANDERSON LIVING TRUST, f/k/a THE
JAMES H. ANDERSON LIVING TRUST;
THE PRITCHETT LIVING TRUST;
CYNTHIA W. SADLER; SHIRLEY L.
SCANLON LIVING TRUST; ROBERT
WESTFALL; LEE WILEY MONCRIEF 1988
TRUST; and NEELY-ROBERTSON
REVOCABLE FAMILY TRUST,

       Plaintiffs,

vs.                                                     No. CIV 12-0039 JB/SCY

CONOCOPHILLIPS COMPANY, LLC,

       Defendant.

<u>**MEMORANDUM OPINION**</u>[1]

**THIS MATTER** comes before the Court on: (i) the Motion for Reconsideration of Order Denying Defendants' Motion to Dismiss Based on Statute of Limitations, filed July 17, 2014 in <u>Anderson Living Trust v. WPX Prod., LLC</u>, No. CIV 12-0040 JB/WPL (Doc. 261)("Motion to Reconsider"); and (ii) the Defendant's Motion to Dismiss Claims in Plaintiffs' Second Amended Complaint, filed October 18, 2013 in <u>Anderson Living Trust v. ConocoPhillips Co., LLC</u>, No. CIV 12-0039 JB/KBM (Doc. 97)("MTD").  The Court held a hearing on September 2, 2014. The primary issues are: (i) whether the Court should reconsider its earlier Memorandum Opinion and Order, filed May 16, 2014 in <u>Anderson Living Trust v. WPX Prod., LLC</u>, No. CIV 12-0040 JB/KBM (Doc. 246)("MOO"), in which the Court declined to "dismiss[ the Plaintiffs' case] in part," <u>i.e.</u>, to cut off damages sustained before October 20, 2007, on statute-of-limitations grounds; and (ii) whether the Court should cut off damages in <u>Anderson Living Trust v. ConocoPhillips Co., LLC</u>, No. CIV 12-0039 JB/KBM ("<u>ConocoPhillips</u>"), where this question is substantially the same one that the Court answered in the negative in its MOO in <u>Anderson Living Trust v. WPX Prod., LLC</u>, No. CIV 12-0040 JB/WPL ("<u>WPX</u>").  The Court answers no to both questions.  The Court stands behind its earlier analysis in <u>WPX</u>; it was right to refuse to cut off damages, and it will thus deny the Motion to Reconsider.  The Court will also extend the

---

[1]The Court earlier entered an Order, filed March 4, 2015 in <u>Anderson Living Trust v. WPX Prod., LLC</u>, No. CIV 12-0040 JB/LFG (Doc. 277)("WPX Order"), denying the Motion for Reconsideration of Order Denying Defendants' Motion to Dismiss Based on Statute of Limitations, filed July 17, 2014 in <u>Anderson Living Trust v. WPX Prod., LLC</u>, No. CIV 12-0040 JB/LFG (Doc. 261), and an Order, filed September 3, 2014 in <u>Anderson Living Trust v. ConocoPhillips Co., LLC</u>, No. CIV 12-0039 JB/KBM (Doc. 122)("ConocoPhillips Order"), denying Defendant's Motion to Dismiss Claims in Plaintiffs' Second Amended Complaint, filed October 18, 2013 in <u>Anderson Living Trust v. ConocoPhillips Co., LLC</u>, No. CIV 12-0039 JB/KBM (Doc. 97).  In each order, the Court stated that it would, at some point, issue an opinion "more fully detailing" the rationale for its decisions.  WPX Order at 1 n.1;  ConocoPhillips Order at 1 n.1.  This Memorandum Opinion is the promised opinion.

MOO's reasoning to ConocoPhillips, and, for the same reasons that the Court declines to cut off damages in WPX, it will refuse to cut them off in ConocoPhillips. The Court will, however, dismiss the same claims in ConocoPhillips that it dismissed in WPX, thus granting the MTD in part and denying it in part.

## FACTUAL BACKGROUND

The Court has summarized these cases' facts in numerous other opinions, see, e.g., MOO at 2-6; Memorandum Opinion at 5-9, filed June 28, 2013 in ConocoPhillips (Doc. 76), and has even made detailed findings of fact in WPX while ruling on a class-certification motion, see Memorandum Opinion and Order at 3-75, filed March 19, 2015 in WPX (Doc. 278)("Class Certification MOO"). The Court will not rehash the facts here, but, rather, will outline only those facts that are relevant to the disposition of the motions before it. On October 20, 2011, two nearly identical groups of Plaintiffs,[2] represented by the same group of attorneys, filed two lawsuits in state court. Compare Anderson Living Trust v. Williams Prod. Co., D-117-CV-2011-00511 (1st Jud. Dist. Ct., Cnty. of Rio Arriba, State of N.M.)(Raphaelson, J.), with Anderson Living Trust v. ConocoPhillips Co., LLC, D-117-CV-2011-00510 (1st Jud. Dist. Ct., Cnty. of Rio Arriba, State of N.M.)(Raphaelson, J.). The two suits are similar in every way except that one of them, WPX, is against Defendants WPX Energy Production, LLC, Williams Production Company, LLC, and WPX Energy Rocky Mountain, LLC (collectively, "the WPX Defendants"), while the other, ConocoPhillips, is against Defendant ConocoPhillips Co., LLC. Compare Fourth Amended Complaint for Underpayment of Oil and Gas Royalties, filed September 27,

---

[2]Five parties are Plaintiffs in both cases, three Plaintiffs are unique to WPX, and two Plaintiffs are unique to ConocoPhillips. Compare Fourth Amended Complaint for Underpayment of Oil and Gas Royalties ¶¶ 1-4(d), at 2, filed September 27, 2013 in WPX (Doc. 129), with Second Amended Complaint for Underpayment of Oil and Gas Royalties ¶¶ 1-5(c), at 1-2, filed September 27, 2013 in ConocoPhillips (Doc. 91).

2013 in WPX (Doc. 129)("WPX Complaint"), with Second Amended Complaint for Underpayment of Oil and Gas Royalties, filed September 27, 2013 in ConocoPhillips (Doc. 91)("ConocoPhillips Complaint").

Both suits are proposed class actions on behalf of landowners who executed long-term leases with the Defendants. See WPX Complaint ¶ 26, at 10-12; ConocoPhillips Complaint ¶ 24, at 9-11. The leases, which were executed, for the most part, in the 1940s, allow the Defendants to drill for natural gas on the Plaintiffs' land in exchange for a royalty payment -- usually one-eighth of the proceeds from sale. See WPX Complaint ¶ 26, at 10-12; ConocoPhillips Complaint ¶ 24, at 9-11. The Plaintiffs contend that the Defendants have been underpaying the royalties in a number of ways[3] -- most notably by paying royalty on natural-gas liquids at the same price per MMBtu[4] that they pay for natural gas, which is a cheaper product -- since time immemorial, and they are seeking damages for this underpayment going back to 1985. See WPX Complaint ¶ 33, at 14; ConocoPhillips Complaint ¶ 19, at 7-8; id. ¶¶ 31-32, at 12-13.

---

[3]In addition to underpaying on natural-gas liquids, the Plaintiffs also allege that the Defendants improperly deduct the costs of rendering the gas into marketable condition, see WPX Complaint ¶¶ 102-105, at 32-33, that the Defendants have failed to compensate the Plaintiffs for gas that the Defendants used off the leased premises to operate machinery, see WPX Complaint ¶ 39, at 16, that Defendants have made late royalty payments without adding the statutorily prescribed interest, see WPX Complaint ¶¶ 56-61, at 20-21, that the Defendants based their royalty price off of affiliate-sale prices, rather than proceeds yielded at arm's length transactions, see WPX Complaint ¶ 33, at 14, and that the Defendants have improperly averaged royalty payments across multiple wells, thus resulting in some Plaintiffs being underpaid, see WPX Complaint ¶ 12, at 5.

[4]An MMBtu is 1,000,000 Btus. A Btu is a "British thermal unit," which is a unit of energy equivalent to approximately 1,055 joules. The joule (J) is the SI -- or International System of Units -- unit of energy, and it is the amount of energy required to exert one Newton (N) of force over a distance of one meter. A Newton is the amount of force required to accelerate one kilogram of mass by one meter per second-squared. See Class Certification MOO ¶¶ 66-67 & nn.6-7, at 16.

The named Plaintiffs are individuals and trusts owned by individuals with no in-depth knowledge of the oil-and-gas industry, although their levels of oil-and-gas sophistication, of course, vary from Plaintiff to Plaintiff.  Owing to the age of the leases, no Plaintiff personally executed the lease that now pays his or its royalty; rather, all of the named Plaintiffs inherited their royalty interests.  See WPX Complaint ¶ 26, at 10-12; ConocoPhillips Complaint ¶ 24, at 9-11.  The only consistent information[5] the Plaintiffs receive regarding their royalties are their monthly check stubs, which contain figures -- broken down by well, for those Plaintiffs who own royalty interests in more than one well -- for the total "price," "quantity," "value," "deductions," and "net [proceeds]" of all gas recovered from the Plaintiff's well over that payment period, and the "interest," "paid int[erest]," "value," "deductions," and "net share" of the Plaintiff's royalty.  E.g., Check Stubs of James H. Anderson Living Trust (dated over numerous years), filed with the Court during the class-certification proceedings as Plaintiffs' Ex. 1.  See WPX Complaint ¶¶ 86-87, at 26-27; id. ¶ 95, at 28-29; ConocoPhillips Complaint ¶¶ 81-82, at 24-25; id. ¶ 90, at 27.  The Plaintiffs also receive the actual checks, which contain only the final dollar figure of the

---

[5]By "consistent information," the Court means the only information that the entire class received, consistently, from 1985 to present.  According to the Complaints, the check stubs are the only affirmative representations that the Defendants made to the Plaintiffs regarding royalty calculations.

The WPX Defendants, it turns out, have a staff member whose full-time job is to field questions from royalty owners, like the Plaintiffs.  The WPX Defendants presented evidence at the class-certification hearing in that case that a small but significant number of putative class members called to inquire about their royalty payments.  The Court does not know what other opportunities, beyond the check stubs, the Plaintiffs had to learn about ConocoPhillips' royalty-calculation methodology, because the Court has not yet held a class-certification hearing in ConocoPhillips.  Regardless, none of this additional information is in the Complaints, which mention only the check stubs.  Because the motions before the Court are both, ultimately, analyzed under rule 12(b)(6), the Court must limit its consideration to the Complaints' well-pled facts.

royalty payout for that payment period.  <u>See</u>, <u>e.g.</u>, Check Stubs of James H. Anderson Living Trust at 1-2.

## PROCEDURAL BACKGROUND

The Defendants in both cases -- who also share overlapping counsel, but not completely identical counsel, like the Plaintiffs in the two cases -- removed their cases to federal court on January 12, 2012, asserting federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  <u>See</u> Notice of Removal, filed January 12, 2012 in <u>WPX</u> (Doc. 1); Notice of Removal, filed January 12, 2012 in <u>ConocoPhillips</u> (Doc. 1).   On October 18, 2013, the Defendants in each case -- within an hour and ten minutes of one another -- filed twin motions to dismiss.  <u>See</u> MTD; Defendants' Motion to Dismiss Claims in Plaintiffs' Fourth Amended Complaint, filed October 18, 2013 (Doc. 145)("<u>WPX</u> MTD").   The <u>WPX</u> MTD and the MTD now before the Court in <u>ConocoPhillips</u> are nearly identical; the variations appear to be entirely substitutions in the parties' names.  <u>Compare</u> MTD, <u>with</u> <u>WPX</u> MTD.   After briefing and a hearing on the <u>WPX</u> MTD, the Court issued its MOO denying the motion.  The Court will now summarize: (i) the briefing and hearing on the <u>WPX</u> MTD; (ii) the briefing on ConocoPhillips' MTD; (iii) the Court's MOO denying the <u>WPX</u> MTD; and the WPX Defendants' attempt to overturn the MOO in (iv) the briefing on the Motion to Reconsider; and (v) the hearing on ConocoPhillips' MTD.

      **1.**       <u>**The Briefing and Hearing on the WPX MTD.**</u>

The Court will first outline the arguments that the parties made when fighting the <u>WPX</u> MTD, as the Motion to Reconsider is not supposed to advance facts or legal grounds that the <u>WPX</u> Motion did not raise.  The Court will review the parties' briefs in the order in which the parties submitted them and then summarize the hearing.

Before the WPX Defendants filed the <u>WPX</u> MTD, the Court had dismissed several of the Plaintiffs' claims in a Memorandum Opinion, filed June 28, 2013 in both <u>WPX</u> and <u>ConocoPhillips</u> (Doc. 108)("Memo. Opinion").   The Memo. Opinion was, like this Memorandum Opinion, double captioned, and it dismissed several corresponding claims in both cases.  <u>See</u> Memo. Opinion at 1.  The Memo. Opinion's only significance to the motions now before the Court is that it dismissed a claim for breach of the marketable-condition rule, concluding that New Mexico does not recognize the marketable-condition rule.[6]  <u>See</u> Memo. Opinion at 88 n.7.  When the Plaintiffs filed their <u>WPX</u> Complaint -- <u>i.e.</u>, when they amended their pre-Memo. Opinion complaint to reflect the impact of the Courts' decisions -- they reasserted a claim, titled "Implied Covenant to Market -- Unreasonable Expenses (New)," which the WPX Defendants argued was just a restyling of the marketable-condition claim.  <u>WPX</u> Complaint ¶¶ 102-105, at 32-33.  The Court ultimately agreed with the WPX Defendants and dismissed the implied-covenant-to-market claim in its MOO.  <u>See</u> MOO at 84-95.

### a.    **The WPX Defendants File the Motion.**

The WPX Defendants filed the <u>WPX</u> MTD pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss, in part, the "Plaintiffs' first, second, fourth, fifth, eleventh, and twelfth causes of action" based upon the applicable statutes of limitations.  <u>WPX</u> MTD at 1.  The <u>WPX</u> MTD also sought the dismissal of the Plaintiffs' twelfth cause of action in its entirety for failure to state any claim upon which relief can be granted, contending that, under the United

---

[6]The Court concluded -- and still believes -- that the New Mexico state courts recognize the marketable-condition rule and that, although the Supreme Court of New Mexico has not yet directly held that the marketable-condition rule governs oil-and-gas leases, it will do so once the question confronts it.  <u>See</u> Memo. Opinion at 88 n.7.  Tenth Circuit precedent holding that New Mexico does not recognize the marketable-condition rule, however, binds the Court.  <u>See</u> Memo. Opinion at  88 n.7.  <u>See also</u> MOO at 85 n.30.

States Court of Appeals for the Tenth Circuit's interpretation of New Mexico law in Elliott Industries LP v. BP America Production Co., the WPX Defendants did not breach the implied duty to market hydrocarbons.  See WPX MTD at 1, 21-24 (citing Elliott Indus. LP v. BP Am. Prod. Co., 407 F.3d at 1091).

The WPX Defendants argued that the statutes of limitations barred: (i) all of the Plaintiffs' claims founded upon breach of written contracts -- to the extent that the claims seek relief for any such breach occurring on or before October 20, 2005, i.e., more than six years before the Plaintiffs filed their initial complaint on October 20, 2011 -- because New Mexico has a six-year statute of limitations on actions based on a written contract, see WPX MTD at 2 (citing N.M. Stat. Ann. § 37-1-3); and (ii) all of the Plaintiffs' claims founded upon violation of the New Mexico Oil and Gas Proceeds Payment Act, N.M. Stat. Ann. §§ 70-10-1 to -6, breach of the duty to market under Colorado law, breach of the implied covenant to market under New Mexico law, the claim for "interest due under Colorado law," and breach of the implied covenant of good faith and fair dealing -- to the extent that the claims seek relief for any such violation occurring on or before October 20, 2007, i.e., more than four years before the Plaintiffs filed their initial complaint -- because New Mexico has a four-year statute of limitations for actions on unwritten contracts and actions whose limitation period is not otherwise specified by statute, WPX MTD at 2 (citing N.M. Stat. Ann. § 37-1-4).  The WPX Defendants contended that New Mexico law supplies the controlling statutes of limitations even for the "interest due under Colorado law" component of the fourth cause of action and for the eleventh and twelfth causes of action, which the WPX Defendants asserted all arise under Colorado law, see WPX MTD at 4, because "'[a] federal court hearing a diversity action applies the statute of limitations which would be applied by a court of the forum state,'" and "'[u]nder New Mexico choice of law

principles, a statute of limitations is procedural,' . . . [and] applies 'even where the applicable substantive law is that of another state,'" WPX MTD at 3, 3-4 (first and second alterations in original)(quoting Porcell v. Lincoln Wood Prods., Inc., 713 F. Supp. 2d 1305, 1316 (D.N.M. 2010)(Armijo, J.) [7]).

The WPX Defendants contended that all of the claims that arise under Colorado law are subject to the shorter four-year limitation period set out by N.M. Stat. Ann. § 37-1-4, see WPX MTD at 4, because the eleventh and twelfth causes of action allege breach of the implied covenant to market, and "the New Mexico Supreme Court made explicitly clear that it has 'held that the implied covenant to market is an implied covenant at law' . . . [, with] 'origins not in the parties' agreement, but rather in law,'"[8] WPX MTD at 4 (quoting ConocoPhillips Co. v. Lyons, 2013-NMSC-009, ¶¶ 63, 62, 299 P.3d 844, 860).  The WPX Defendants likewise argued that the four-year statute of limitations governs the second cause of action, which is for breach of the implied duty of good faith and fair dealing: "[F]or the six-year statute of limitations in Section 37-1-3 to apply, 'the nature of the right sued upon must be based on the breach or nonperformance of a term in a written contract."  WPX MTD at 5 (quoting Martinez v. Cornejo, 2009-NMCA-011, ¶ 29, 208 P.3d 443 (N.M. Ct. App. 2009)).

---

[7]The Honorable M. Christina Armijo, Chief United States District Judge for the District of New Mexico, became Chief Judge in 2012.  See Biographical Directory of Federal Judges: Armijo, M. Christina, Federal Judicial Center, http://www.fjc.gov/servlet/nGetInfo?jid=2898 &cid=999&ctype=na&instate=na.

[8]The Defendants do not specifically address the claim for "interest due under Colorado law," except to assert that it is substantively similar to the claim -- also in the fourth cause of action -- for a violation of the New Mexico Oil and Gas Proceeds Act.  See MTD at 3 (citing N.M. Stat. Ann. §§ 70-10-1 to -6)("Plaintiffs' Fourth Cause of Action alleged violation of the New Mexico Proceeds Payment Act, and purportedly similar unspecified Colorado law." (citation omitted)).

The WPX Defendants next argued that, "[u]nder New Mexico law, the statute of limitations in a breach of contract action . . . 'begins to run from the time of the breach.'" WPX MTD at 7 (quoting Welty v. W. Bank of Las Cruces, 1987-NMSC-066, ¶ 8, 740 P.2d 120, 122). They contended that "[t]he Tenth Circuit has recognized that 'New Mexico has refined this rule by holding the cause of action accrues at the time of injury.'" WPX MTD at 7 (quoting Zamora v. Prematic Serv. Corp., 936 F.2d 1121, 1123 (10th Cir. 1991)). The WPX Defendants asserted that the WPX Complaint "avoid[s] alleging the specific dates on which [the Plaintiffs] contend they first suffered injury in fact," but that their "artful pleading is insufficient to avoid dismissal of the claims barred by the applicable statutes of limitations," because, "despite the absence of specific dates, it is indisputably clear . . . that Plaintiffs seek to recover for injury or loss allegedly incurred more than four years, and more than six years, before the filing of their initial complaint." WPX MTD at 7-8.

The WPX Defendants asserted that "New Mexico applies the 'discovery rule,' which means that the statute of limitations 'commences when an injury manifests itself and is ascertainable.'" Great Am. Ins. Co. v. Crabtree, No. CIV 11-1129, 2012 WL 3656500, at *13 (D.N.M. Aug. 23, 2012)(Browning, J.). They argued:

> Under the discovery rule, when a defendant "makes a prima facie showing that a claim is time barred," . . . "a plaintiff attempting to invoke the discovery rule has the burden of 'demonstrat[ing] that if [he or] she had diligently investigated the problem [he or] she would have been unable to discover' the facts underlying the claim."

WPX MTD at 9 (alterations in original)(quoting Butler v. Deutsche Morgan Grenfell, Inc., 2006-NMCA-084, ¶ 28, 140 P.3d 532, 539). They further contended that "this burden applies 'at the motion to dismiss stage.'" WPX MTD at 9 (quoting Butler v. Deutsche Morgan Grenfell, Inc., 2006-NMCA-084, ¶ 28, 140 P.3d at 539). The WPX Defendants argued that the WPX

Complaint "contains no factual allegations to satisfy the discovery rule." WPX MTD at 9.  They argued that no Plaintiff has shown that he or she made a diligent investigation, and "each of them would have been able to discover the facts underlying each claim alleged." WPX MTD at 9.

The WPX Defendants then argued that the Plaintiffs, "[h]aving ignored the discovery rule entirely, . . . have resorted instead . . . to allegations of fraudulent concealment, equitable estoppel, and continuing wrong in an effort to avoid the bar of limitations." WPX MTD at 9. The WPX Defendants attempted to rebut the three tolling theories asserted by the Plaintiffs.  To rebut the fraudulent-concealment argument, the WPX Defendants argued that the Plaintiffs must demonstrate either that the WPX Defendants "engaged in affirmative acts of misrepresentation intended to conceal . . . a potential cause of action," or that "the Defendants had an affirmative obligation," arising from a special relationship, "to make any disclosure or share information outside of that required by the terms of the underlying contracts." WPX MTD at 10.  The WPX Defendants contend that, "because a claim of fraudulent concealment is grounded in fraud, the facts giving rise to such a claim must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b)." MTD at 10.  They asserted that the WPX Complaint "fails to meet these standards." WPX MTD at 11.

The WPX Defendants argued that they had no special duty to disclose and attempted to rebut what they maintain is the WPX Complaint's contention that such a duty "arose 'by virtue of the superior knowledge available to Williams [sic] all material times,'" WPX MTD at 11 (alteration in original)(quoting WPX Complaint ¶ 85, at 26), and because the Plaintiffs' "'placed trust and reliance in Williams,'" WPX MTD at 11 (quoting WPX Complaint ¶ 85, at 26).  The WPX Defendants contended that, "[u]nder New Mexico law, 'absent a fiduciary duty to speak on the part of the defendants . . . silence, nondisclosure, or denial of alleged fraudulent concealment

so as to toll a statute of limitations.'"  WPX MTD at 11 (quoting Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 1993-NMSC-039, 858 P.2d 66, 77 (N.M. 1993)).  The WPX Defendants argued that "this Court has already recognized that no such duty exists."  WPX MTD at 12 (referring to the Memo. Opinion).

The WPX Defendants argued that the WPX Complaint's allegation that the WPX Defendants misrepresented deductions in check stubs sent to the Plaintiffs is not pled with the specificity that rule 9(b) requires.  See WPX MTD at 14 (citing WPX Complaint ¶ 87, at 27).  They contended that the Plaintiffs must allege "'who, what, when, where and how'" the fraud occurred, WPX MTD at 14 (quoting United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 727 (10th Cir. 2006)), and they asserted that the Plaintiffs did not "plead how any 'volume' or 'price' or 'expense' information is inaccurate or misleading," WPX MTD at 14 (quotations unattributed).  The WPX Defendants additionally argued that the WPX Complaint fails to allege that the causes of action were not discoverable through due diligence, see WPX MTD at 15, arguing that "'[i]t [is] incumbent upon Plaintiff[s] to demonstrate that if she diligently investigated the problem, she would have been unable to discover the cause of her injury,'" WPX MTD at 15 (first and second alterations in original)(quoting Martinez v. Showa Denko, K.K., 1998-NMCA-111, ¶ 22, 964 P.2d 176, 181).

The WPX Defendants also argued that the Plaintiffs have failed to adequately allege equitable estoppel.  See MTD at 17.  The WPX Defendants contended that

> equitable estoppel "assumes that the plaintiff is aware of the facts underlying his or her cause of action, but is persuaded to forego filing suit by virtue of the defendant's actions."  Accordingly, equitable estoppel applies in the situation where the plaintiff is induced [by the defendant] not to file the complaint sooner.

WPX MTD at 17 (quoting Skyberg v. United Food & Commercial Workers Int'l Union, 5 F.3d 297, 302 (8th Cir. 1993), relied upon by Tiberi v. Cigna Corp., 89 F.3d 1423, 1430 (10th Cir.

1996)).  The WPX Defendants contended that, "[b]ecause Defendants' monthly statements were submitted to Plaintiffs every month for many many years, long before the Plaintiffs filed their complaint, these monthly statements could not have caused any Plaintiff, aware of his cause [of] action, to refrain from filing suit."  WPX MTD at 18.

The WPX Defendants further argued that the continuing-wrong doctrine does not apply, primarily because that doctrine applies only "'in the context of tort liability,' and not in breach of contract cases."  WPX MTD at 18-19 (quoting Jeffers v. Butler, 762 F. Supp. 308, 309 (D.N.M. 1990)(Mechem, J.))(citing NcNeill v. Rice Eng'g & Operating, Inc., 2006-NMCA-015, ¶ 25, 128 P.3d 476, 482-83).  They also argued that the Plaintiffs' claims "allege no more than a breach which begins at a single point in time and then has continuing effects."  WPX MTD at 21.

Last, the WPX Defendants contended that the Plaintiffs failed to state a proper claim in their twelfth cause of action.  See MTD at 21.  They contended that the Memo. Opinion and Elliott Industries LP v. BP America Production Co. foreclose relief.  See Memo. Opinion; Elliott Indus. LP v. BP Am. Prod. Co., 407 F.3d 1091, 1113-14 (10th Cir. 2005).  They argued that, although the restyling of the Plaintiff's

> previous allegations concerning "unreasonable expenses" were not "specifically addressed" in the Memorandum Opinion . . . , the allegations on which Plaintiffs' Twelfth Cause of Action depends were *specifically addressed* by the Tenth Circuit in Elliott Indus. LP v. BP America Prod. Co., on which this Court *specifically relied* when it dismissed Plaintiffs' claim for breach of the implied covenant to market, and which *specifically requires* dismissal of Plaintiffs' repetitious implied covenant to market claim in the" FAC.

WPX MTD at 22 (emphases in original)(citation omitted).  They asserted that the Court "expressly held that oil and gas lessees who, like WPX in this case, 'were and are actively producing gas, processing the gas, and selling the refined natural gas and NGLs,' are in

*compliance* 'with the implied duty to market as articulated by the New Mexico courts.'" WPX MTD at 24 (emphasis in original)(quotation unattributed).

### b.    The Plaintiffs File Their Response.

The Plaintiffs responded to the WPX MTD twenty days later. See Plaintiffs' Response to Defendants' Motion to Dismiss Claims in Plaintiffs' Fourth Amended Complaint, filed November 8, 2013 (Doc. 156)("WPX MTD Response"). They first argued that the WPX MTD would be more aptly styled as a motion for summary judgment under rule 56, because it "request[s] the Court to consider and evaluate evidentiary materials that were not made a part of, or incorporated into," the FAC. WPX MTD Response at 2. They contended that the Court should deny the WPX MTD. See Response at 3. They asserted that "[t]he inclusion of the check stub in Defendants' motion may affect the Court's determination of the merits of the motion." WPX MTD Response at 4. Although they acknowledged that "the Court may consider on a motion to dismiss 'undisputed documents central to the allegations in Plaintiffs' complaint," they contended that, because "there are potentially thousands of check stubs that will be examined at trial and that no one, single check stub is 'central' to the case," what is really happening is that the Court is being asked to consider extrinsic evidence. WPX MTD Response at 5. They argued that, if the Court chooses to convert the motion into one for summary judgment, it should also consider the five documents they attach to their WPX MTD Response: (i) the Affidavit of Bradley Brickell Pursuant to *Fed. R. Civ. P.* 56(d) in Support of Plaintiffs' Response to Defendants' Motion to Dismiss Claims in Plaintiffs' Fourth Amended Complaint (dated November, 2013), filed November 8, 2013 (Doc. 156-1); (ii) five pages of the transcript of a Deposition of Sheryl Ward (taken Mar. 1, 2013), filed November 8, 2013 (Doc. 156-2); (iii) an additional five pages from the second portion of the same Deposition of Sheryl Ward, filed

- 14 -

November 8, 2013 (Doc. 156-3); (iv) what appears to be a check stub, the first page of a rule 30(b)(6) deposition notice, and three pages of a document entitled "Exhibit B," Fourth Attachment to Response, filed November 8, 2013 (Doc. 156-4); and (v) what appear to be the fourth through eighth pages of the same document, "Exhibit B," Fifth Attachment to Response, filed November 8, 2013 (Doc. 156-5).

The Plaintiffs also argued that they had pled sufficient facts for a jury to reasonably conclude that the statutes of limitations have been tolled, and they then attempted to justify all three tolling doctrines.  See WPX MTD Response at 7.  In the WPX MTD Response, they did not dispute that New Mexico law supplies all of the relevant statutes of limitations -- although they later argued that Colorado statutes of limitations should apply.  See WPX MTD Response at 7 n.2.  They asserted that the WPX Complaint alleges fraudulent concealment by alleging that the Plaintiffs "placed trust and reliance on Defendants as lessees of the oil and gas leases," and that the Defendants' "'superior knowledge' regarding their production of hydrocarbons from Plaintiffs' wells" imparts an obligation of "a 'full and fair disclosure of the true and complete facts of all hydrocarbons produced from the subject wells.'"  WPX MTD Response at 7 (quoting WPX Complaint ¶ 85, at 26).  They further asserted that the WPX Defendants affirmatively concealed facts underlying the causes of action in their monthly statements, which: (i) "contain 'erroneous and misinformation about the volumes, values, prices, and types of hydrocarbons produced, used or sold from [the] subject wells,'" WPX MTD Response at 7-8 (alteration in original)(quoting WPX Complaint ¶ 86, at 26); (ii) do not represent "'the values of hydrocarbons based on arms' length transfers/contracts,'" WPX MTD Response at 8; and (iii) "misrepresent[] and omit[] that 'certain types and amounts of expenses were deducted for certain services,'" WPX MTD Response at 8 (quoting WPX Complaint ¶ 87, at 27).

- 15 -

The Plaintiffs also argued that they had properly pled equitable estoppel.  See WPX MTD Response at 8.  They supported this contention by pointing to allegations in the WPX Complaint and by characterizing the delivery of false monthly statements as a "'continuing wrong.'"  WPX MTD Response at 8-9 (quoting WPX Complaint ¶ 94, at 28).  They pointed to the contention in the WPX Complaint that "the class members 'did not discovery [sic] and could not have reasonably discovered their claims as alleged herein of underpayments,'" as a properly pled allegation of due diligence.  WPX MTD Response at 9.

The Plaintiffs additionally relied upon the discovery rule, which they contended "is raised more in the context of tort cases, [but] can certainly be used in cases of fraudulent concealment and in other cases involving fraudulent concealment, as pled herein."  WPX MTD Response at 9-10.  They asserted that they properly "allege[d] that they did not discover Defendants' wrongful conduct until they filed suit as a result of Defendants' fraudulent concealment and principles of equitable estoppel, which toll the statute of limitations."  WPX MTD Response at 10.  The Plaintiffs argued that they had also pled fraudulent concealment under similar Colorado law.  See WPX MTD Response at 10-11.

The Plaintiffs argued that the question whether they exercised reasonable diligence to ascertain the facts that underlie their claims is fundamentally a question for the jury, is inappropriate on summary judgment, and is not appropriate on a rule 12(b)(6) motion.  See WPX MTD Response at 12 (citing Maestas v. Zager, 2007-NMSC-003, ¶ 25, 152 P.3d 141).  They argued, contrary to the WPX Defendants' contention, that there was a special relationship between the parties "by virtue of the leases," and that a fiduciary relationship, per se, is not required.  WPX MTD Response at 12.

Last, the Plaintiffs argued that they had stated a proper claim for breach of the implied covenant of marketability.  See Response at 13.  They contended that,

> contrary to the Defendants' assertion in the moving papers, Elliott Indus. LP v. BP America Prod. Co., 407 F.3d 1091 (10th Cir. 2005), does not support dismissal.  Elliott does not hold that a producer can charge unreasonable expenses.  Nothing in the Elliott decision precludes a party from claiming breach of the implied duty to market when the royalties paid the mineral owners are based on unreasonable or phantom expenses and deductions.  The Elliott court did not reach the issue of reasonableness of the defendant's expenses because the Elliott plaintiff *dismissed* its claim for breach of contract.  The court found that the plaintiff' [sic] failure to assert a cause of action for breach of contract rejects "the very foundation" of its relationship with the lessee.

WPX MTD Response at 14 (emphasis in original).  They further asserted that "the New Mexico Supreme Court in ConocoPhillips Co. v. Lyons, 2013-NMSC-009, 299 P.3d 844, held that the *deductions* used in calculating Lessees' royalty obligations *must be reasonable* even though . . . [they] need not be 'actual.'"  WPX MTD Response at 14-15 (emphases in original).

The Plaintiffs later filed a supplement to the WPX MTD Response.  See Supplemental Brief in Response to Defendants' Motion to Dismiss -- Application of Forum State's Statute of Limitations, filed February 28, 2014 (Doc. 215)("WPX MTD Response Supp.").  The Plaintiffs filed that document after the WPX Defendants replied and after the hearing, however, and the Court will summarize the briefing in chronological order.

### c.        **The WPX Defendants File Their Reply.**

The WPX Defendants replied to the WPX MTD Response.  See Defendants' Reply in Support of Motion to Dismiss Claims in Plaintiffs' Fourth Amended Complaint, filed December 4, 2013 (Doc. 172)("WPX MTD Reply").  The WPX Defendants argue that the Court may consider the exhibit they attached to the WPX MTD, "as it is central to Plaintiffs' claims," but that the Court should disregard the extrinsic materials submitted by the Plaintiffs "in a transparent effort to convert this motion into one for summary judgment."  WPX MTD Reply at

1-2.  They contended that, under Tenth Circuit law, "if a document 'is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.'"  WPX MTD Reply at 3 (quoting GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381 (10th Cir. 1997)).  They asserted that the "Defendants' monthly statements, which include Exhibit A, repeatedly are referred to, directly and indirectly," in the WPX Complaint.  WPX MTD Reply at 3.  They further contended that the monthly statements are "central," because "a document attached to a motion to dismiss is 'central' to the plaintiffs' claims if the claims, 'at least in part,' are based on the document."  WPX MTD Reply at 4 (quoting Jornigan v. N.M. Mut. Cas. Co., No. CIV 03-0813, 2004 WL 3426437, at *6 (D.N.M. April 19, 2004)(Browning, J.)).  They also argued that, although the WPX Complaint "does not allege the specific date that Defendants or their predecessors 'first initiated delivery of monthly statements,' that omission does not *per force* establish that Plaintiffs' claims, *as alleged*, are not time-barred."  WPX MTD Reply at 2 (emphasis in original)(quoting WPX Complaint ¶ 94, at 28).

The WPX Defendants then argued that the Court should not convert the WPX MTD into a motion for summary judgment.  WPX MTD Reply at 6.  They addressed what they characterized as an attempt by the Plaintiffs to convert the motion by way of documents attached to their WPX MTD Response:

> Plaintiffs further argue that they may effect conversion of Defendants' motion into one for summary judgment simply by their submission of materials outside the pleadings. . . .  "[B]ecause the Court is asked to consider extrinsic evidence (*including deposition testimony and interrogatory answers Plaintiffs attach in opposition to the motion*), the motion *must* be converted into one for summary judgment."

WPX MTD Reply at 6 (emphasis in original)(quoting WPX MTD Response at 5).  They asserted that this attempt is "in clear conflict with the Tenth Circuit's decision in Geras v. IBM Corp., 638

F.3d 1311 (10th Cir. 2011)."  WPX MTD Reply at 6.  The WPX Defendants acknowledged that "a motion to dismiss under Rule 12(b)(6) must, *in general*, be treated as a motion for summary judgment under Rule 56 if 'matters outside the pleadings are presented to and not excluded by the court.'"  WPX MTD Reply at 6 (emphasis in original)(quoting Fed. R. Civ. P. 12(d)).  They contended, however, "that the district court is *not* required to accept evidence proffered by the plaintiff in response to a motion to dismiss."  WPX MTD Reply at 7 (emphasis in original).

The WPX Defendants next addressed the equitable tolling doctrines that the Plaintiffs allege apply in the case.  See WPX MTD Reply at 8.  They stated that, "[a]lthough Plaintiffs label these allegations as 'causes of action,' in this case they are not."  WPX MTD Reply at 8-9. See WPX MTD Reply at 9 & n.1.  The WPX Defendants contended that equitable estoppel is inapposite, because "a central element to any assertion of equitable estoppel is the plaintiff's awareness of his cause of action," and the WPX Complaint not only fails to allege this knowledge, but "it does exactly the opposite."  WPX MTD Reply at 10 (citing WPX Complaint ¶ 96, at 29).  They repeated their contention from the WPX MTD that the continuing wrong doctrine applies only in tort cases.  See WPX MTD Reply at 10-11.  They opposed the Plaintiffs' allegations of fraudulent concealment on the ground that the allegations are not plead with particularity as rule 9(b) requires, see WPX MTD Reply at 15, and on four substantive grounds: (i) that the Plaintiffs have failed to allege a fiduciary relationship between the Plaintiffs and the Defendants, see WPX MTD Reply at 11-13;  (ii) that the Plaintiffs have not alleged an affirmative act of concealment, which the Defendants contend is necessary to make out a claim of fraudulent concealment in the absence of a fiduciary relationship, see WPX MTD Reply at 13-14;  (iii) that the Plaintiffs have not alleged how they exercised the due diligence that the Defendants contend is an essential element of a fraudulent concealment claim, see WPX MTD

Reply at 14; and (iv) that <u>BP America Production Co. v. Patterson</u> is inapposite, because the procedural posture of that case "was an appeal of a class certification decision under the Colorado rule corresponding to Rule 23," and has "no relevance to the question whether Plaintiffs have properly pled fraudulent concealment in this case," <u>WPX</u> MTD Reply at 15-16 (citing <u>BP Am. Prod. Co. v. Patterson</u>, 263 P.3d 103 (Colo. 2011)).

The WPX Defendants address the viability of the Plaintiffs' twelfth cause of action by arguing that the "'conception of the implied duty to market'" upon which the Plaintiffs rely "'finds no support within New Mexico case law.'" <u>WPX</u> MTD Reply at 17 (quoting <u>Elliott Indus. LP v. BP Am. Prod. Co.</u>, 407 F.3d at 1114).  They contended that, "[i]n <u>Elliott</u>, plaintiff asserted that the implied duty to market under New Mexico law *not only* does not permit lessees 'to deduct costs incurred before a gas is in a marketable condition,' *but also* does not permit them 'to deduct costs that are not actually incurred or are unreasonable.'" <u>WPX</u> MTD Reply at 18 (emphases in original)(quoting <u>Elliott Indus. LP v. BP Am. Prod. Co.</u>, 407 F.3d at 1111). They asserted that "the Tenth Circuit rejected this claim, holding, as this Court recognized, that oil and gas lessees who 'are actively producing gas, processing the gas, and selling the refined natural gas and NGLs . . . have complied with [the] implied duty to market as articulated by the New Mexico courts.'" <u>WPX</u> MTD Reply at 18 (omission in original)(quoting <u>Elliott Indus. LP v. BP Am. Prod. Co.</u>, 407 F.3d at 1113).  They asserted that the Plaintiffs falsely alleged that "'the <u>Elliot[t]</u> court did not reach the issue of reasonableness of the defendant's expenses because the <u>Elliot[t]</u> plaintiff dismissed its claim for breach of contract,'" <u>WPX</u> MTD Reply at 18 (alterations in original)(quoting <u>WPX</u> MTD Response at 14), and that "this argument is simply a rehash of the same argument Plaintiffs made when this Court dismissed this same claim in the Memorandum Opinion," <u>WPX</u> MTD Reply at 18.  They quoted the Court: "'That the Plaintiffs

have put their leases at issue in this case does not provide them a safety-hatch from the Tenth

Circuit's explanations of New Mexico law in Elliott Indus.'"   WPX MTD Reply at 18 (quoting

Memo. Opinion at 132).

The WPX Defendants also countered the Plaintiffs' "seeming reliance" on

ConocoPhillips Co. v. Lyons, 2013-NMSC-009, 299 P.3d 844, noting that the Supreme Court of

New Mexico's holding "with respect to the lessees' right to deduct 'reasonable' costs of post-

production services in paying royalty was based *not* on the implied covenant to market, but

rather on the express royalty terms in state leases."   WPX MTD Reply at 19 (emphasis in

original)(quoting ConocoPhillips Co. v. Lyons, 2013-NMSC-009, ¶¶ 20, 24, 68, 299 P.3d at 851,

852-53, 861).   Last, the WPX Defendants contended that the "Plaintiffs' submission of a Rule

56(d) affidavit and their assertion that the determination of Defendants' motion to dismiss would

be 'premature' is improper and should be disregarded," because the WPX MTD "'tests the

sufficiency of the allegations within the four corners of the complaint.'"   WPX MTD Reply at 20

(quoting Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)).

### d.       The Court's Hearing.

The Court held a hearing on the WPX MTD a week before the Plaintiffs submitted their

Response Supp.   See Transcript of Hearing at 12-80, taken February 21, 2014 ("WPX MTD

Tr.").[9]   The WPX Defendants first attempted to clarify that the WPX Complaint referred to the

check stubs which they attached to the WPX MTD and stated that they believed that these check

stubs were attached to the monthly statements referenced in ¶ 96 on page 29 of the WPX

Complaint.   See WPX MTD Tr. at 12:15-14:2 (Court, Sheridan).   The Court stated that it was

---

[9]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version.  Any final version may contain slightly different page and/or line numbers.

inclined to consider the check stubs, which the WPX Defendants attached to the WPX MTD, but not the documents that the Plaintiffs attached to their Response, and that it would not convert the WPX MTD into a motion for summary judgment.  See WPX MTD Tr. at 16:8-14 (Court).

The Court first clarified with the WPX Defendants that what they meant when they referred to dismissing claims "in part" was "just cutting off damages" past four-to-six years before the filing of the case; the Defendants confirmed this characterization.  WPX MTD Tr. at 17:8-14 (Court, Sheridan).  As the WPX Defendants outlined their analysis, starting with what they contend are the applicable six-year and four-year statutes of limitations, the Plaintiffs for the first time -- as this hearing was before the Response Supp. was filed -- asserted that Colorado law might supply the statutes of limitations for the claims under Colorado law.  See WPX MTD Tr. at 19:9-20:22 (Court, Brickell).  The Plaintiffs acknowledged that, "in general, [statutes of] limitations [are] viewed as procedural," WPX MTD Tr. at 20:21-22 (Brickell), but contended that Phillips Petroleum v. Shutts directs the Court "to look at the issue of whether each state's law should apply or not," WPX MTD Tr. at 19:24-25 (Brickell)(citing 472 U.S. 797 (1985)).  The WPX Defendants opposed this contention, citing Porcell v. Lincoln Wood Products, Inc., 713 F. Supp. 2d at 1305, from the District of New Mexico and Elm Ridge Exploration Co., LLC v. Giant Exploration & Production Co., 721 F.3d 1199 (10th Cir. 2013), from the Tenth Circuit for the proposition that the Court should apply New Mexico's statutes of limitations to all claims.  See WPX MTD Tr. at 21:18-22:22 (Sheridan, Brickell).  The WPX Defendants also characterized Phillips Petroleum v. Shutts as inapposite, stating that the Supreme Court of the United States had found that a Kansas court's application of Kansas substantive law -- not a Kansas statute of limitations -- to royalty interests and wells almost entirely outside Kansas violated the Due Process Clause of the Fourteenth Amendment to the Constitution of the United

States of America.  See WPX MTD Tr. at 22:25-25:5 (Sheridan).  They concluded by asserting that "[t]he U.S. Supreme Court did not impose a choice of law rule on that matter."  WPX MTD Tr. at 24:19-20 (Sheridan).

The discussion then turned to the tolling doctrines, see WPX MTD Tr. at 25:6-7 (Court), and the WPX Defendants first addressed equitable estoppel, arguing again that the doctrine "assumes that the plaintiff is aware of the facts underlying his or her cause of action, but is persuaded to forego filing suit by virtue of the defendant's actions," WPX MTD Tr. at 26:4-7 (Sheridan)(purporting to quote Tiberi v. Cigna Corp., 89 F.3d 1423 (10th Cir. 1996), but the Court can find no such quote).  They assert that in the Plaintiffs' Response "at page 10 . . . they say [that] . . . they did not discover defendant's wrongful conduct until they filed suit.  So if that is to be accepted as true, . . . then they do not have an equitable estop[pel] claim."  WPX MTD Tr. at 26:20-27:3 (Sheridan).

The Plaintiffs stated that they "have a totally different read of the [Tiberi v. Cigna Corp.] case."  WPX MTD Tr. at 28:1-2 (Brickell).  They assert that, in "paragraph 31,"[10] WPX MTD Tr. at 28:8 (Brickell), the case sets out the elements of equitable estoppel: (i) "[c]onduct which amounts to a false representation [or] a concealment of material facts . . . which is calculated to convey the impression that [f]acts are . . . inconsistent with [those that] the party subsequently attempts to assert," WPX MTD Tr. at 28:10-15 (Brickell); (ii) "intention that the conduct be acted upon by the other party," WPX MTD Tr. at 28:15-16 (Brickell); (iii) "knowledge, actual or construc[tive,] of the real facts," WPX MTD Tr. at 28:16-17 (Brickell); (iv) "lack of knowledge or means of knowledge of the truth" on the part of the party asserting estoppel, WPX MTD Tr. at

_____

[10]Tiberi v. Cigna Corp. is a Tenth Circuit case and is not organized by paragraphs.  See 89 F.3d 1423.

28:18-19 (Brickell); (v) "reliance" on the part of that party, WPX MTD Tr. at 28: 20 (Brickell); and (vi) "action based there[]upon" by that party, WPX MTD Tr. at 28:20 (Brickell).   The Plaintiffs assert that they "have set those forth in spades in [their] complaint."   WPX MTD Tr. at 28:22-23 (Brickell).

The WPX Defendants responded first by voicing their displeasure at the Plaintiffs raising an issue that they seemingly forfeited in the WPX MTD Response, noting that, although they "know that this Court . . . places great importance on making the right answer, . . . it seems to [them] that it's not appropriate to be making arguments . . . in oral argument here based on cases that [the Defendants] briefed in [the WPX MTD, but that] they never responded to in their response."   WPX MTD Tr. at 29:17-23 (Sheridan).   The WPX Defendants argued the issue on the merits, however, asserting that, "[u]nder New Mexico law, fraudulent concealment is a species of equitable estoppel."   WPX MTD Tr. at 29:25-30:2 (Sheridan).   They argued that, for all equitable estoppel that is not also fraudulent concealment, actual knowledge of the party asserting estoppel must be alleged; they cited Village of Angel Fire v. Board of County Commissioners of Colfax County, 2010-NMCA-038, 242 P.3d 371, in support of this contention. See WPX MTD Tr. at 30:13-31:25 (Sheridan).

The WPX Defendants then moved to the doctrine of continuing wrong, which they asserted "is not a tolling doctrine as such, [but rather] relates to when a statute of limitations actually begins to run as opposed to being tolled, and it is a tort law doctrine."   WPX MTD Tr. at 33:2-6 (Sheridan).   They asserted that Tiberi v. Cigna Corp. "[s]pecifically mentions that where a tort involves a continuing or repeated injury," the continuing wrong doctrine applies.   WPX MTD Tr. at 33:9-10 (Sheridan).   They noted that, in McNeil v. Rice Engineering & Operating, Inc., 2003-NMCA-078, 70 P.3d 794, the Court of Appeals of New Mexico "rejected the

continuing wrong doctrine in the context of a trespass and nuisance action."  WPX MTD Tr. at

33:16-17 (Sheridan).  They also cited a case, Bishop v. Evangelical Lutheran Good Samaritan

Society, No. 25,510, 2010 WL 3998030, at *8 (N.M. Ct. App. Feb. 9, 2010)(unpublished), in

which Court of Appeals of New Mexico ruled that, in

> situation[s] in which the defendant has a repeating obligation of performance of
> one type or another, [such as to] make contribution[s] to[] a pension plan . . . [or
> a] health care benefits [fund], . . . the cause of action accrues with the first time,
> with the decision when the defendant failed to make the payment.

WPX MTD Tr. at 34:18-35:4 (Sheridan).

The Plaintiffs half-heartedly defended the WPX Complaint's assertion of the continuing-

wrong doctrine:

> We have pled the continuing wrong doctrine in order to . . .  make sure
> that we have completely pled the issues that concern fraudulent concealment.  In
> some instances it has been referred to as a continuing wrong doctrine, and
> therefore I feel like it falls under fraudulent concealment in this particular case.
> Such as announced in [C]ontinental [P]ot [A]sh.  As this Court analyzed in the
> Great American case and those issues.  I just did not want to leave that stone
> unturned as some courts refer to that as a continuing wrong if it occurs on
> numerous occasions which we've alleged it occurs every month, and so that's
> why we characterize that cause of action [as a] continuing wrong.  I don't know if
> per se that is, maybe the correct nomenclature for it or not, but if it calls under a
> number of fraudulent concealment then I'm prepared to address that right now.

WPX MTD Tr. at 36:17-37:10 (Brickell).  When asked if they "kn[e]w of any Supreme Court

case in New Mexico that applies the continuing wrong to a contract case," the Plaintiffs

answered that they "do not."  WPX MTD Tr. at 37:23-38:1 (Court, Brickell).  The Plaintiffs

asserted, however, that Oklahoma has applied the continuing wrong doctrine to contract cases,

see WPX MTD Tr. at 39:2-3 (Brickell), and cited without discussing a case called Tull v. City of

Albuquerque, 1995-NMCA-123, 907 P.2d 1010, see WPX MTD Tr. at 39:19 (Brickell).  The

Court concluded the discussion of the continuing wrong doctrine by noting that it was "inclined

to think that this is more of a kind of accrual. . . .  It doesn't sound like it's a primary doctrine the plaintiffs are relying upon anyway." <u>WPX</u> MTD Tr. at 40:21-22 (Court); <u>id.</u> at 41:5-6 (Court).

Turning to the fraudulent concealment issue, the WPX Defendants first argued that the <u>WPX</u> Complaint "is wholly lacking in the who, what, when, where, how, and why allegations necessary to properly alleged fraudulent concealment to equitably toll a statute of limitations," but "[b]eyond the pleading failures, . . . there are some substantive problems as well." <u>WPX</u> MTD Tr. at 41:19-41:24 (Sheridan).  They contended that, "to the extent that it is based upon a nondisclosure, . . . [i]n the absence of a duty to disclose, there cannot be fraudulent concealment." <u>WPX</u> MTD Tr. at 41:25-42:3 (Sheridan).  They assert that the Plaintiffs rely upon this theory in ¶ 85 of the <u>WPX</u> Complaint, which they characterize as stating that the "class members have placed trust and reliance in Williams by virtue of the superior knowledge available to Williams[;] at all material times plaintiffs [and] class members are owed a full and fair disclosure." <u>WPX</u> MTD Tr. at 42:6-10 (Sheridan).  The WPX Defendants argued that a duty to disclose arises only from a fiduciary relationship and that "there are two types of fiduciary duties": "there are duties which are fiduciary as a matter of law, [such as] a situation involving a lawyer and a client, a doctor and a patient, priest and penitent, [or a] principal and agent"; and "[t]here are other situations where a relationship between parties can rise to the level of being a fiduciary duty in fact" -- "those are relationships that are typically the subject of special trust and confidence," with the "classic example [being] the widow and the housekeeper where the housekeeper attend[s] to all of the widow's needs[,] living with her 24 hours a day[,] tak[ing] care of her[,] and then the widow changes her will and leaves everything to the housekeeper[,] disinheriting the children." <u>WPX</u> MTD Tr. at 42:18-43:8 (Sheridan).  The WPX Defendants asserted that there is no legally recognized fiduciary duty between an oil lessee and lessor, and

that "[t]here are no facts alleged . . . that in any way establish any kind of relationship of special trust or confidence." WPX MTD Tr. at 43:12-14 (Sheridan).  They asserted that "[a]ll of the plaintiffs have received their interest subsequently" -- i.e., none of them were the original signatories to their leases -- and "almost every case through inheritance." WPX MTD Tr. at 46:16-22 (Sheridan).  They concluded their nondisclosure argument by noting that "there is simply nothing that's alleged . . . that creates any sort of special trust or confidence between somebody who gets a check once a month 45[] years after the contract was entered into and the parties sending the check." WPX MTD Tr. at 46:23-47:2 (Sheridan).

The WPX Defendants then argued that the WPX Complaint alleged no affirmative act of concealment.  See WPX MTD Tr. at 47:8-9 (Sheridan).  They contended that "[w]hat has to be concealed is the cause of action," WPX MTD Tr. at 47:13-14 (Sheridan), "[a]nd there aren't any allegations in the complaint to show that the cause of action could not have been discovered by the exercise of due diligence," WPX MTD Tr. at 48:14-16 (Sheridan).  The WPX Defendants last contended that, under Tenth Circuit law, "the absence of an allegation regarding how and when [the plaintiff] learned of the alleged misconduct forecloses a claim that defendants['] fraudulent concealment prevented [the plaintiff] from discovering defendant's involvement." WPX MTD Tr. at 49: 13-17 (Sheridan)(citing Dumar v. Lummis, 543 F.3d 614, 622 (10th Cir. 2008)(Hartz, J.)).

The Plaintiffs contended that the WPX Defendants took on a special duty to disclose when they started sending monthly statements to the Plaintiffs.  See WPX MTD Tr. at 51:11-20 (Brickell).  The Plaintiffs acknowledged that "[t]here may not have been a duty to send them at all," WPX MTD Tr. at 51:19-20 (Brickell), but that, once they sent the statements, "those statements [must] be truthful and accurate," WPX MTD Tr. at 51:19 (Brickell)(citing WPX

- 27 -

Complaint ¶ 39, at 16).  The Plaintiffs asserted that "[t]hese statements failed to disclose what the gross volume, and value and character/type of all hydrocarbons produced, processed, used, traded, and sold from plaintiff's wells."  WPX MTD Tr. at 52:1-4 (Brickell).  The Plaintiffs then illustrated how they contend the fraudulent concealment was executed:

> And what I'd like to do, Your Honor[,] is direct your attention to the check stub that Your Honor recognized as part of their motion to dismiss the complaint, which is the very last page or denoted as Exhibit A.  All right, now if I can direct the Court's attention to the . . .  middle of the page there are certain letter initials that are used to describe certain things within the check stub itself.  You'll notice, Your Honor, that the second definition is called G gas.  C, condensate.  Tax, taxes, TRN, field transportation.  Now, Your Honor if I can walk you across one of the check stub lines here, let's just take, now, this is a very small check stub, so a lot of the numbers are very small on this thick one, but believe me there are a lot bigger ones than this.  But let's look at this one here on the . . . [G]ubenator Number 1 MV, and it shows for first of all the date of sale, it says is September of 2003.  And then, Your Honor, as you come across, you see the next thing which says PC at the top column and you come down it's a G for gas.  Your Honor, we're alleging that that is not all gas.  That initial that month they . . . sold natural gas liquids but failed to inform Mr. Anderson about that.  Let's go over to the price.  4 dollars 63 [cents].  Your Honor, we are alleging that that is not the value that was received in that sale by the defendants Williams [P]roduction Coley which by the way Your Honor is a name change into WPX the current defendant name.  We allege that that is some initial index or posted price, not reflective of what they received for the gas, much less the natural gas liquids that were processed out of that gas.  Your Honor, the reason why we know that there were natural gas liquids that month is because we see after the word [G]ubenator Number 1, we see an MV.  The MV stands for Mesa Verde.  Your Honor, that's a conventional gas zone and that area is productive of . . . gas that will contain inert quantities of large amounts of natural gas liquids.  We come on across and we see that they've combined the price and the quantity of 366.00 to come up with a value of 1693.42.  Your Honor, we're alleging that that 366 is not the true quantity of gas that was produced at the wellhead.  In fact, that it was larger than that; that they are not informing Mr. Anderson of what . . . the volume of gas that was produced from his well was.  And that is not the quantity of gas that was actually sold or used by the defendant.  Next, we come on across and we see that there is a TRN deduction of 6 cents.  Now, 6 cents doesn't seem like much.  But when you look at it in the context of the total value on this very small interest on this particular check stub of 59 cents, you can see that's 10 percent.  We are alleging that in fact that 6 cents was not a transportation charge but that is a number made up by the Williams companies that they have just decided that that's the amount they're going to charge, and including things like home office overhead, including things like return on investment is the way that is calculated.

> As we then state in paragraph number 40 [and] 39 on page 16, Williams intended for the plaintiffs to rely upon its written statements sent to plaintiffs. These statements knowingly failed to disclose excessive and impermissible charges. That's what I'm talking about, Judge, depreciation, profit, return on investment. And reductions imposed by Williams payment methods as well as the gross volume, value and type of all hydrocarbons produced, used, sold or traded indirect violation of Williams' statutory and common law duties to properly report the same and to act in good faith and fair dealing. The same constitutes fraudulent concealment. Your Honor, in this particular instance, this is their own attachment is a good illustration of what we are saying constitutes fraudulent concealment and it shows the specific nature of our allegations, and how exactly specific we are.

WPX MTD Tr. at 53:7-56:7 (Brickell). The Plaintiffs also argued that, even though none of the Plaintiffs were the original signatories to their leases, they are parties by succession and should be treated the same as if they had signed the leases themselves. See WPX MTD Tr. at 60:23-61:4 (Brickell).

The WPX Defendants, after providing a brief summary of what they considered "this case is about," WPX MTD Tr. at 65:7-66:20 (Sheridan), argued that "fraudulent breach of a contract does not give rise to an action for fraud," WPX MTD Tr. at 67:3-4 (Sheridan). They further argued: "There is a difference between fraud in the inducement and fraud in the performance of a contract, okay. There is no cause of action for fraud in the performance of a contract. You have a claim for breach of contract." WPX MTD Tr. at 67:12-16 (Sheridan)(citing Brick v. Cohn-Hall-Marx Co., 11 N.E.2d 902 (N.Y. 1937)).

The Court interjected to opine that, as far as it could tell, "this isn't really a nondisclos[ure] case. . . . [T]he duty is sort of a red herring here. Once you start sending out the statements you've got to be accurate. That's what the case is about, isn't it, it's not a nondisclosure, it's not a duty." WPX MTD Tr. at 71:24-25 (Court); id. at 72:8-12 (Court). The WPX Defendants responded that "[i]t has to rise to the level of being fraudulent." WPX MTD Tr. at 72:12-15 (Sheridan). They last argued that, because the Court had previously dismissed

the standalone claim for fraud, the same facts could not suffice to toll the statute by way of

fraudulent concealment.  See WPX MTD Tr. at 72:17-73:2 (Sheridan).  The Court stated that it

would take the matter under advisement.  See WPX MTD Tr. at 79:12-14 (Court).

### e.    The Plaintiffs Supplement Their Response.

The Plaintiffs filed a supplemental brief[11] to their Response a week after the hearing and

almost three months after the WPX Defendant filed the WPX MTD Reply.  See WPX MTD

Response Supp. at 1.   The WPX MTD Response Supp. first argued that the Court "should

determine whether it would be fundamentally unfair to apply the New Mexico statute of

limitations to the Plaintiffs' and Class Members' claims under wells in Colorado," WPX MTD

Response Supp. at 2 (citing Lujan v. Regents of the Univ. of Cal., 69 F.3d 1511, 1515-16 (10th

Cir. 1995), and, if so, the Court should apply the relevant Colorado statute of limitations -- which

the Plaintiffs assert is six years, see WPX MTD Response Supp. at 4 -- to the claims arising

under Colorado law, see WPX MTD Response Supp. at 2.  They argued that the fraudulent-

concealment and equitable-tolling doctrines of both states are similar, citing Continental Potash,

Inc. v. Freeport-McMoran, Inc., 1993-NMSC-039, 858 P.2d 66, from New Mexico, and BP

America Production Co. v. Patterson, 263 P.3d 103 (Colo. 2011), from Colorado.

---

[11]This brief's propriety under the local rules is questionable; the Plaintiffs probably
should have moved for leave to file a surreply, and they probably should have done so before the
hearing.   See D.N.M. LR-Civ. 7.4(a) (providing only for a response and a reply -- not a
supplement to a response); D.N.M. LR-Civ. 7.4(b) ("The filing of a surreply requires leave of the
Court.").  The WPX Defendants did not object to the WPX MTD Response Supp., however, and
the document is small in both size and scope of argument, so the Court will consider it.  The
Court ultimately rejected the WPX MTD Response Supp.'s argument, ruling instead that New
Mexico law supplies all statutes of limitations -- even for the claims arising under Colorado law.
See MOO at 61-69.

2.      **The Briefing on the (ConocoPhillips) MTD.**

ConocoPhillips filed its MTD on the same day that the WPX Defendants filed the WPX MTD.   The content of the two motions is nearly identical.   Moreover, the MTD's briefing unfolded in much the same way as the WPX MTD's.   See Plaintiffs' Response to Defendant's Motion to Dismiss Claims in Plaintiffs' Second Amended Complaint, filed November 8, 2013 in ConocoPhillips (Doc. 100); Defendants' Reply in Support of Motion to Dismiss Claims in Plaintiffs' Second Amended Complaint, filed December 4, 2013 in ConocoPhillips (Doc. 104). As the Court has noted, there is total identity between the Plaintiffs' lawyers in the two cases, and there is large overlap between the Defendants' lawyers in the two cases, with Holland & Hart's Santa Fe office taking the role of lead counsel in defending both suits.

The Court did not conduct a hearing on the MTD until after it issued its MOO, the WPX Defendants filed their Motion to Reconsider, and the parties completed their briefing on the Motion to Reconsider.  See Transcript of Hearing, filed September 12, 2014 in WPX (taken Sept. 2, 2014)(Doc. 124)("ConocoPhillips Tr.").  The arguments the parties made at the hearing on the MTD were more closely linked to the Motion to Reconsider's briefing than to the MTD's -- which makes sense, given that the MTD was briefed before the Court issued the MOO denying its twin, the WPX MTD, while the Motion to Reconsider contained the most up-to-date, post-MOO arguments -- so the Court will delay its discussion of the hearing on the MTD until after it has discussed the briefing on the Motion to Reconsider.

3.      **The MOO Denying the WPX MTD.**

The Court issued its MOO on May 5, 2014, granting the WPX MTD in part and denying it in part.   See MOO at 1-2.  The Court declined to convert the WPX MTD into a motion for summary judgment, see MOO at 59-60, refused to dismiss any claims on limitations grounds, see

60-81, but dismissed the following claims: (i) the fraudulent-concealment claim, because the Plaintiffs failed to plead it with particularity, as rule 9(b) requires, <u>see</u> MOO at 82-83; (ii) the equitable-estoppel claim, because equitable estoppel does not give rise to an independent cause of action, <u>see</u> MOO at 83-84 (citing 28 Am. Jur. 2d <u>Estoppel and Waiver</u> § 30 (2011)(stating that estoppel acts "always as a shield, never as a sword," and that it "does not . . . give a cause of action")); and (iii) the continuing-wrong claim, likewise because the continuing-wrong doctrine does not give rise to an independent cause of action, <u>see</u> MOO at 83-84.   In addition to dismissing them as independent claims, the Court also ruled that the fraudulent-concealment, equitable-estoppel, and continuing-wrong theories -- as the Plaintiffs pled them -- failed to toll the statutes of limitations.  <u>See</u> MOO at 82-84.

The Court based its refusal to dismiss the claims on limitations grounds exclusively on the discovery rule.  The Court stated that the other theories were unnecessary, inapposite, or contradictory to the Plaintiffs' other arguments -- with fraudulent concealment falling into the first camp, continuing wrong into the second, and equitable estoppel into the third:

> The Plaintiffs gain nothing from a limitations perspective by including a fraudulent concealment claim, as fraudulent concealment contains all the elements of the discovery rule, plus other substantive elements, and additionally requires heightened pleading.  The Court will dismiss the ninth cause of action without prejudice, so the Plaintiffs may re-file if they please, but the Court recommends that they do not, unless they are prepared to satisfy the rigorous pleading requirements the Court has set forth.  The Court will not strike the factual allegations enumerated underneath the claim, however, as those go to establishing the discovery rule.
>
> . . . .
>
> Neither equitable estoppel nor continuing wrong is a claim upon which relief can be granted; they are merely tolling doctrines.  <u>See</u> 28 Am. Jur. 2d <u>Estoppel and Waiver</u> § 30 (2011)(stating  that estoppel acts "always as a shield, never as a sword" and "does not . . . give a cause of action").  As such, the Court will dismiss the tenth cause of action with prejudice.

The Court will not strike the factual allegations supporting the cause of action, but, even as tolling doctrines, equitable estoppel and continuing wrong are inapplicable in the case.  Equitable estoppel requires that the Plaintiffs were aware of their cause of action, but the Defendants persuaded them not to file suit.  See Tiberi v. Cigna Corp., 89 F.3d at 1430.  Not only are there no facts in the [WPX Complaint] to support this theory, but, if the theory were properly alleged, it would destroy the Plaintiffs' ability to toll the statute on discovery rule or fraudulent concealment grounds, and those theories both require that the plaintiff was unaware of the cause of action.

The continuing wrong doctrine -- as it is traditionally conceived, and as the Plaintiffs assert it -- strongly appears to only apply in tort cases.  Although New Mexico courts have purported to consider the doctrine's application in the breach-of-contract context, they appear to be talking about something different: allowing a plaintiff to sue on the portion of a long-term, contract-breaching course of conduct that falls within the six years immediately preceding the lawsuit -- the portion within the limitations period -- but not before.  See Tull v. City of Albuquerque, 1995-NMCA-123, ¶¶ 4-11, 907 P.2d at 1010-13.  In every case in which a New Mexico court has considered applying the doctrine to a contract dispute, the choice has been between cut-off damages (partial dismissal) and no damages at all (outright dismissal), but the Plaintiffs argue that they are entitled to full damages, and no party disputes that the Plaintiffs are entitled to seek, at the very least, cut-off damages.

MOO at 82-84.

The MOO's most important portion -- the portion that the Defendants now challenge -- is the Court's refusal to cut off damages.  The Court based this decision on the discovery rule, which is a rule that provides that a limitations period does not accrue -- i.e., begin to run -- until the plaintiff either (i) actually learns of the facts giving rise to the cause of action, or (ii) would have learned of those facts had he or she exercised due diligence.  The Court concluded that, when a plaintiff pleads a claim that is facially time-barred, in whole or (as here) in part, he or she has an obligation to plead that he or she did not learn of the cause of action until late enough to put the suit within the limitations period.  The Court concluded, however, that the plaintiff is under no obligation to plead the ways in which he or she practiced due diligence.

The Court will not dismiss any of the claims on limitations grounds, because the Plaintiffs have alleged facts that might reasonably establish that the

- 33 -

discovery rule delayed the accrual of the statutes of limitations: it is plausible that the Plaintiffs' reasonable diligence either was or would have been inadequate to uncover the Defendants' alleged misconduct; and the Plaintiffs did not actually discover the misconduct until recently enough to put their suit within the statute.

. . . .

      The Court will not dismiss any of the claims on limitations grounds, because, assuming the truth of the factual allegations in the [WPX Complaint], a jury could reasonably conclude that the statutes of limitations did not accrue until October 20, 2007,[12] or later, thus putting all claims fully within the limitations periods. Specifically, it is plausible that: (i) the Plaintiffs did not discover the causes of action until after that date; and (ii) reasonably diligent investigation would have failed, or did fail, to discover the causes of action earlier -- whether the Plaintiffs actually conducted any investigation or not is immaterial. The Defendants argue that the Plaintiffs have avoided pleading the facts -- such as specific dates of unlawful conduct and the extent of the Plaintiffs' actual diligence in keeping abreast of their financial interests in the leases -- necessary for either them or the Court to conduct a full and proper statute of limitations analysis, but the Plaintiffs are under no obligation to plead such facts. As long as the [WPX Complaint] plausibly alleges the prima facie elements of the causes of action it brings, and does not, on its face, definitively establish a limitations defense, the Court should not dismiss the claims under rule 12(b)(6).

. . . .

      Accepting all factual allegations in the [WPX Complaint] as true and drawing all reasonable inferences in the Plaintiffs' favor, the Court concludes that it is plausible that: (i) the Plaintiffs did not discover the causes of action until October 20, 2007, or later; and (ii) reasonable diligence and investigation -- whether or not it was actually carried out -- would not have

---

[12]This date is the last -- i.e., earliest -- date upon which the statute of limitations could have accrued without barring any part of any of the Plaintiffs' claims. It is exactly four years before the day, October 20, 2011, that the Plaintiffs filed their suit in First Judicial District Court of New Mexico. If the statute accrued after this date, then all of the claims are valid in their entirety. If the statute accrued after October 20, 2005, but before October 20, 2007, then the second, fourth, eleventh, and twelfth claims would be cut off before the date of accrual, while the first, fifth, and sixth claims would still be valid in their entirety. The second, fourth, eleventh, and twelfth claims are not founded on breach of express, written contract, and are thus subject to a four-year limitations period. See MOO at 67-69 (citing N.M. Stat. Ann. § 37-1-4; id. § 37-1-4). The first, fifth, and sixth claims are founded upon breach of an express, written contract, and are thus subject to a six-year limitations period. See MOO at 67-69 (citing N.M. Stat. Ann. § 37-1-3). If the statute accrued before October 20, 2005, then all claims would be cut off -- i.e., limited to damages sustained after -- the date of accrual.

uncovered the causes of action sooner than that date.  See Elm Ridge Exploration Co., LLC v. Engle, 721 F.3d 1199, 1210-11 (10th Cir. 2013)(interpreting the New Mexico discovery rule's "reasonable diligence" standard as a "reasonable-person standard . . . as to whether [the plaintiff] should have known of the [cause of action]").  As a result, it is plausible that the statutes of limitations did not accrue until after that date, and none of the Plaintiffs' claims is time-barred, either in full or in part.  The facts alleged in the [WPX Complaint] make out a plausible prima facie case for the claims asserted; they do not definitively establish the affirmative defense of limitations, as is required to prevail on a motion to dismiss under rule 12(b)(6).  See Fed. R. Civ. P. 12(b)(6).

New Mexico uses the discovery rule, meaning that statutes of limitation accrue -- i.e., begin to run -- only when the "the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim."  Butler v. Deutsche Morgan Grenfell, Inc., 2006-NMCA-084, ¶ 26, 140 P.3d 532, 539 (citing Martinez v. Showa Denko, K.K., 1998-NMCA-111, ¶¶ 18-19, 964 P.2d 176, 180-81).  The substantive elements of the rule are, thus: (i) that before the date of accrual, the plaintiffs lacked actual knowledge of at least some of the facts necessary to establish the cause of action, see Gerke v. Romero, 2010-NMCA-060, ¶¶ 8-10, 237 P.3d at 114-15; and (ii) that reasonable diligence -- the level of investigation and inquiry that a reasonable person would pursue -- at any point in the period between the cause of action's occurrence and discovery, would not have unearthed the cause of action.  There is no requirement that the plaintiff have actually exercised reasonable diligence.  The Defendants do not contest that the Plaintiffs lacked actual knowledge of the causes of action, but rather that the reasonable diligence element is not properly pled.  See WPX MTD at 9.

The mechanics of the discovery rule -- namely, which party carries the burden of proof at various stages of the case -- are not well defined.  The rule is an exception to an affirmative defense, and, when overlaid with procedural standards of rule 12(b)(6), is susceptible to numerous different implementations. It is not even clear whether, under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), the Court should look to federal or state law in determining how to allocate or shift the burden of production.  See Fed. R. Evid. 301 (providing that federal courts are to allocate the burden of production, but not the burden of persuasion, in response to presumptions that controlling substantive law supplies); 21B Charles Alan Wright, Kenneth W. Graham, Jr., Victor James Gold & Michael H. Graham, Federal Practice & Procedure: Evidence §§ 5122, 5132 (2d ed. 2014)(equivocating on the issue whether to apply state or federal burdens of production in a diversity case); Second Restatement § 134 (stating that, in a horizontal choice-of-law analysis, the forum state's allocation of the burden of production applies).  What is clear is that the Court must apply the substance of

the discovery rule as the Supreme Court of New Mexico would interpret it,[13] but must apply it in a manner consistent with the Federal Rules of Civil Procedure. See Hanna v. Plumer, 380 U.S. 460 (1965)(holding that the Federal Rules of Civil Procedure are presumptively procedural and apply in all cases in federal court).

> 1.   The Plaintiffs Are Not Obligated to Plead with Particularity Facts Activating the Discovery Rule.

The Defendants' argument misapprehends the requirements of notice pleading, and the scrutiny and burden-allocation of the rule 12(b)(6) inquiry.  The crux of their argument is buried deep within the [WPX] MTD:

> In the[ WPX Complaint], although Plaintiffs avoid alleging the specific dates on which they contend they first suffered injury in fact by reason of any breach of the express royalty terms, breach of any implied in law covenants, or any statutory violation by Defendants, their artful pleading is insufficient to avoid dismissal of the claims barred by the applicable statutes of limitations.

WPX MTD at 7 (emphasis added).  The Defendants extend this logic -- that, because limitations defenses can sometimes be adjudicated at the motion-to-dismiss stage, the burden is on the Plaintiffs to plead facts that permit a full adjudication of the limitations issue -- to the discovery rule as well, arguing that, because the Plaintiffs do not plead the reasonable diligence issue to the Defendants' satisfaction, the Defendants are entitled to a win by default.

While there are obvious efficiencies to disposing of clearly time-barred claims at the motion-to-dismiss stage, not all limitations defenses are open-and-shut cases; genuine factual disputes can exist, and a rule 12(b)(6) motion is not the place to decide them.  Unless it is essential to the establishment of the prima facie elements of a claim or the claim is for fraud or mistake, see Fed. R. Civ. P. 9(b), a plaintiff is under no obligation to plead specific or identifiable dates at all.  Another court in the Tenth Circuit has concluded, applying Supreme Court precedent, that

> the Court is confined to "the four corners" of the amended complaint.  Thus, when a defendant seeks dismissal based on the statute of limitations, the time-bar must be apparent on the face of the complaint.  The Supreme Court has explained:

---

[13]In choice-of-law analyses, tolling doctrines and doctrines such as the discovery rule follow the statutes of limitations to which they apply; e.g., a court would never apply the tolling doctrines of one jurisdiction to the statute of limitations of another.  See State Farm Mut. Auto. Ins. Co. v. Boellstorff, 540 F.3d 1223, 1228 (10th Cir. 2008)(Ebel, J.)("[W]e must follow Colorado's tolling rules, as they are 'an integral part of the several policies served by the statute of limitation.'" (quoting Cook v. G.D. Searle & Co., 759 F.2d 800, 802 (10th Cir. 1985))).

A complaint is subject to dismissal for failure to
state a claim if the allegations, taken as true, show
the plaintiff is not entitled to relief.   If the
allegations, for example, show that relief is barred
by the applicable statute of limitations, the
complaint is subject to dismissal for failure to state
a claim; that does not make the statute of limitations
any less an affirmative defense.   Whether a
particular ground for opposing a claim may be the
basis for dismissal for failure to state a claim
depends on whether the allegations in the complaint
suffice to establish that ground, not on the nature of
the ground in the abstract.

Jones v. Bock, 549 U.S. 199, 215 (2007)(citations omitted).

[The] Defendant . . . appears to assume that even when he
relies on an affirmative defense, the Plaintiff must identify the
relevant dates in the complaint and that his silence requires
dismissal.   [He] presents no authority for this remarkable
proposition, and none exists.  If [he] did not include the date of his
arrest, the Court cannot dismiss the action based on the statute of
limitations.

Honeycutt v. Mitchell, No. CIV 08-140 W, 2008 WL 3833472, at *4 (W.D. Okla.
Aug. 15, 2008)(footnotes omitted)(citation omitted).  This analysis applies even to
a strictly enforced statute of limitations that does not incorporate the discovery
rule.

The introduction of the discovery rule into the calculus only tilts the scales
further in the plaintiff's favor.  The Court can conceive of several possible ways
to allocate the burden of production at the motion-to-dismiss stage, which will be
listed in descending order of favorability to the plaintiff.   First, the Court
could require that the defendant definitively establish,[14] based only on the facts

---

[14]The Court used the term "definitively establish" to refer to meeting the so-called "third
burden of proof," the quantum of evidence at which a court will rule in favor of the party with
the burden of persuasion.  See 21B Kenneth W. Graham, Jr., Federal Practice & Procedure
§ 5122 (stating that, in the trial context, the "third burden of proof" is the quantum of evidence
required to entitle the plaintiff to a directed verdict or judgment as a matter of law).  At the
motion-to-dismiss stage, a court will accept a defendant's affirmative defense only if: (i) the
facts in the complaint establish the elements of the affirmative defense; or (ii) even though the
facts in the complaint do not establish the affirmative defense, there is no plausible scenario,
based on the facts in the complaint, in which the elements of the affirmative defense will not be
established.

alleged in the complaint, that the limitations period -- including any delay in accrual as a result of the discovery rule -- expired before filing.  This interpretation would result in courts essentially never dismissing claims, unless: (i) the plaintiff goes out of his way to plead actual knowledge or the probable effectiveness of reasonable diligence; or (ii) the plaintiff pleads the specific date on which the operative events occurred, and circumstances are such that it is implausible that the plaintiff did not and could not discover the cause of action when it occurred; e.g., a car accident in which the defendant-driver gives his full contact information at the scene.  Second, the Court could shift the burden of production to the plaintiff upon a showing by the defendant that, but for the discovery rule, the facts alleged in the complaint would definitively establish a limitations defense.  Once that showing is made, the Court could require the plaintiff to: (i) allege facts that could give rise to a reasonable inference that the elements of the discovery rule might plausibly be met;[15] (ii) allege facts that, if proven at trial, could establish the elements of the discovery rule to the satisfaction of a reasonable jury; or (iii) plead with particularity -- alleging the who, what, when, where, and how -- facts that, if proven at trial, could establish the elements of the discovery rule to the satisfaction of a reasonable jury.  Such facts might include: when and how the plaintiff discovered the cause of action -- to pin down the exact time of accrual; detailed descriptions of the plaintiff's diligence; descriptions of the investigatory resources available to the plaintiff of which the plaintiff did not take advantage; and detailed allegations of any acts that the defendant carried out to conceal or to avoid disclosing the cause of action to the defendant.

For better or worse, the Tenth Circuit has borrowed from New Mexico state court procedure to require some form of burden-shifting whenever the discovery rule comes into play at the pleading stage:

> A plaintiff invoking the discovery rule must "demonstrate that if she had diligently investigated the problem she would have been unable to discover the cause of her injury."  Martinez v. Showa Denko, K.K., 1998-NMCA-111, ¶ 22, 964 P.2d 176, 181 (1998).  See also Blea v. Fields, 2005-NMSC-029, ¶ 28, 120 P.3d 430, 440 (2005)(holding that to toll statute of limitations for fraudulent concealment, plaintiff must prove that she "lacked knowledge of her cause of action and could not have discovered it by exercising reasonable diligence during the statutory period").  A plaintiff has this burden to defeat either a motion for summary

---

[15]This burden allocation is logically equivalent to the first option -- putting the full burden on the defendant to definitively establish, based only on the facts in the complaint, that the limitations period lapsed before filing.  The Court listed it separately because it contains the usual language that plaintiffs must surmount to state their claims for rule 12(b)(6) purposes.

judgment or a motion to dismiss.   Butler v. Deutsche Morgan
Grenfell, Inc., 2006-NMCA-084, ¶ 28, 140 P.3d 532, 539.

Elm Ridge Exploration Co., LLC v. Engle, 721 F.3d at 1211.  The case that the
Tenth Circuit cites for the proposition that the "plaintiff has the burden" expounds
further:

> The general rule is that "[t]he defense of the statute of
> limitations may be raised by motion to dismiss where it is clearly
> apparent on the face of the pleading that the action is barred".
> Apodaca v. Unknown Heirs of the Tome Land Grant, 1982-
> NMSC-100, ¶ 14, 651 P.2d 1264, 1267-68.  However, where there
> are disputed facts, it is generally the province of a jury to
> determine the date on which a plaintiff became aware or should
> have become aware of the facts underlying his or her claim.  If
> such factual disputes exist, granting a motion to dismiss on statute
> of limitations grounds would be improper.
>
> The issue we confront here is what a plaintiff must plead in
> order to invoke the discovery rule, thereby precluding the district
> court from granting a motion to dismiss on statute of limitations
> grounds.  When a defendant makes a prima facie showing that a
> claim is time barred, a plaintiff attempting to invoke the discovery
> rule has the burden of "demonstrat[ing] that if [he or] she had
> diligently investigated the problem [he or] she would have been
> unable to discover" the facts underlying the claim.  Martinez v.
> Showa Denko, K.K., 1998-NMCA-111, ¶ 22, 964 P.2d at 181-82.
> We acknowledge that *Martinez* involved a motion for summary
> judgment rather than a motion to dismiss.  However, we hold that
> even at the motion to dismiss stage, a plaintiff must have alleged in
> the complaint, or must respond to the motion to dismiss with,
> factual allegations that, if proved, would support application of the
> discovery rule.  All such well-pleaded allegations are to be taken as
> true, and great specificity is not required.

Butler v. Deutsche Morgan Grenfell, Inc., 2006-NMCA-084, ¶¶ 27-28, 140 P.3d
at 539 (alterations in original)(citations omitted)(internal quotation marks
omitted).

The Court concludes that option (ii) -- requiring the plaintiff to bolster
what would, without the activation of the discovery rule, be a facially time-barred
claim with allegations that, if proven at trial, could convince a reasonable jury to
reject the limitations defense -- is the most faithful to precedent.  The Court
arrives at this conclusion by separately examining the dictates of Butler v.
Deutsche Morgan Grenfell, Inc.: (i) the burden-shifting is triggered "[w]hen a
defendant makes a prima facie showing that a claim is time barred"; the Court

interprets "prima facie" to mean that the defendant need establish only that the facts giving rise to the cause of action occurred outside the limitations period, not that its discovery did; the Court interprets "showing" to mean that the defendant can definitively establish this fact using only the facts in the complaint and any other documents the Court may properly consider in a rule 12(b)(6) motion; (ii) when the burden shifts to the plaintiff to argue or present evidence for the application of the discovery rule, the statement that "great specificity is not required" strongly indicates that the heightened pleading standard of rule 9(b) does not control the form of the plaintiff's rebuttal; (iii) the statement that the plaintiff "must have alleged in the complaint, or must respond to the motion to dismiss with, factual allegations" indicates that while the complaint need not be amended -- assertions in the response may suffice -- the limitations defense must be rebutted with facts, and not with mere argument; (iv) the requirement that the plaintiff allege facts that "would support" application of the discovery rule implies that the plaintiff need not definitely establish that the discovery rule applies, but, at most, need only allege facts upon which a reasonable jury could find that the discovery rule applies; and (v) the Court of Appeals of New Mexico's equation of the motion-to-dismiss and summary-judgment standards implies that, although courts are to accept all factual assertions as true, the facts must establish the elements of the discovery rule, not merely render their establishment plausible.

For the foregoing reasons, the Court will require the Plaintiffs to assert facts that, if proven at trial, could lead a reasonable jury to conclude that reasonable diligence would most likely have been futile in discovering the causes of action.

2.   The Plaintiffs Have Adequately Pled The Reasonable Diligence Element of the Discovery Rule.

"Reasonable diligence" is defined, in the first instance, by the New Mexico courts, and any uncertainty that remains in the definition is reserved for the jury room. The courts have done almost nothing to pare down jury discretion by providing a more concrete definition,[16] and they apply "a reasonable-person

---

[16]There is a substantial body of case law and academic literature interpreting Texas' discovery rule, including its reasonable diligence prong.  See HECI Exploration Co. v. Neel, 982 S.W.2d 881 (Tex. 1998); Jennifer N. Cooper, Comment, The Discovery Rule: Should Oil and Gas Leases Be Different?, 38 Hous. L. Rev. 1283 (2001); L. Melaine Martin, HECI v. Neel: Application of the Discovery Rule to Damages Arising out of Oil and Gas Leases, 33 St. Mary's L.J. 199 (2001); Andrew J. Cloutier & Megan M. Norris, The First and Last Defenses in Private Royalty Litigation: Statute of Limitations and Constitutional Defenses 5 Rocky Mountain Mineral Law Found. 14 (2008).  The Court did not look to Texas law to refine the New Mexico definition of reasonable diligence, for two reasons: (i) the commentators suggest that Texas law is itself in a state of flux presently, and imply that Texas may be an outlier in the way it interprets the discovery rule; and (ii) the Court is of the opinion that when the application of a broad

standard . . . as to whether [a plaintiff] should have known of the [cause of action]."  Wilde v. Westland Dev. Co., 2010-NMCA-085, ¶ 18, 241 P.3d 628, 635.  "Historically, the courts of [New Mexico] have characterized the application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn."  Genesee Cnty. Emps'. Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3, 825 F. Supp. 2d 1082, 1227 (D.N.M. 2011)(Browning, J.)(alterations in original)(internal quotation marks omitted)(quoting Williams v. Stewart, 2005-NMCA-061, ¶ 16, 112 P.3d 281, 285).

The Plaintiffs have alleged facts in the[ WPX Complaint] that, if proven at trial, could convince a reasonable jury that reasonable diligence would not have uncovered the causes of action:

> (i)  "Plaintiffs and class members have placed trust and reliance in Williams" on the basis of the "superior knowledge available to Williams all material times."  WPX Complaint ¶ 85, at 26.   This allegation suggests that scrutinizing the materials from the Defendants was itself reasonable diligence, because the Defendants' superior knowledge and involvement in the production, transport, sale, and accounting functions rendered it the objectively best source of information from which the Plaintiffs could obtain information about their leases.

> (ii)  "Williams has issued monthly statements to the Plaintiffs and Class Members which contain erroneous and mis-information."  WPX Complaint ¶ 86, at 26.   Far from ignoring their leases, which would not constitute reasonable diligence, the Plaintiffs kept track of their profitability by way of the mechanism the Defendants provided -- the only economically-feasible mechanism.

> (iii)  "Williams has a duty to disclose completely and truthfully all material facts pertaining to transactions reflected on its monthly statements, i.e., check stubs."  WPX Complaint ¶ 86, at 26.   Although a plaintiff's conclusory legal assertion carries no weight, if the allegation is restyled as a statement of the Plaintiffs' then-existing belief, then their reliance on Williams seems all the more reasonable.

_____

standard, like the reasonable-person standard, is left to the jury without further judicial refinement, that should be construed as a conscious choice by the state courts to incorporate jury fact-finding into the substance of the standard, and should not be viewed by the federal courts as a gap to be filled with persuasive authority.  See Peña v. Greffet, No. CIV 12-0710 JB/KBM, at *43-47 & nn.12-13 (D.N.M. May 16, 2015)(Browning, J.)(slip op.).

(iv)    "Williams has represented in said check stubs, that certain type[s] and amounts of expenses were deducted for certain services.  These representations were false, misleading, or omitted by Williams."  WPX Complaint ¶ 87, at 27. Although many of these facts were intended to support the fraudulent concealment claim, to the extent that they speak to the "reasonable reliance" prong or the requirement that "the concealment was successful," they support a discovery rule argument, as well.

(v)    "Plaintiffs and Class Members relied upon the misrepresentations and omissions of Williams to their detriment."  WPX Complaint ¶ 88, at 27.

(vi)    "If such facts and circumstances had been revealed accurately and truthfully by Williams, the Plaintiffs and Class Members would have known of Williams intentional, continual, and repeated underpayment."  WPX Complaint ¶ 89, at 27.

(vii)    The Plaintiffs had a "lack of knowledge . . . and . . . lack of ability to reasonably discover" the causes of action.  WPX Complaint ¶ 90, at 27-28.  This allegation highlights that the Plaintiffs are ordinary people, who often do not live near their leased land, have little or no experience in the oil and gas industry, and are, in every case, uninvolved in all but one aspect -- receiving the royalty -- of the process of drilling, transporting, producing, and selling the oil removed from their land.

(viii)    "Williams[] failed to accurately report and pay the Plaintiffs and Class Members for their share of revenues . . . and the same failure . . . occurred each and every month, from the date that Williams . . . first initiated delivery of the monthly statements to the Plaintiffs and Class Members, up to the present."  WPX Complaint ¶ 94, at 28.  As the Plaintiffs became accustomed to receiving what they thought to be reliable feedback from the Defendants, their reliance on the Defendants became more reasonable over time.  Even if it was not reasonable initially -- if, at some point in the life of the lease, this reliance went from being unreasonable to reasonable -- then damages would be cut-off before that point; a jury would be needed to make the determination of when that point in time was.

- 42 -

(ix)    "Each month, these statements/check stubs have been relied
        upon by the Plaintiffs and . . . Williams intended that the
        monthly statements . . . would be relied upon to fully,
        accurately and truthfully state the true volumes, types,
        values, and amounts of hydrocarbons produced, used and
        sold." <u>WPX</u> Complaint ¶¶ 95-96, at 29.

(x)     "The Plaintiffs and Class Members did not discover and
        could not have reasonably discovered their claims as
        alleged herein . . . due to the omissions and misreporting of
        Williams as herein alleged." <u>WPX</u> Complaint ¶ 96, at 29.

        In sum, the Plaintiffs argue: (i) that they exercised reasonable diligence,
because there was nothing more, within reason, they could do to verify the
information reported to them by the Defendants, who were in a much better
position to collect knowledge about the financial circumstances of each well; and
(ii) that their exercise of reasonable diligence, and their subsequent inability
regardless to discover the causes of action, proves the futility of reasonable
diligence, and satisfies that element of the discovery rule.  The injury to any given
Plaintiff in this case is very low -- thus why this case is being brought as a class
action -- and expensive methods of auditing or independently verifying the
information reported by the Defendants would almost certainly have been costlier
than they were worth.  Even now, when the Plaintiffs know for certain that
potential causes of action exist -- something that is not known when considering
whether to invest money in investigating the performance and disclosures of a
lessor -- the suit might not be economically viable if the Court does not certify a
class action.

        It is not clear what more the Defendants want.  They offer no concrete
examples of the behavior necessary to practice reasonable diligence, but are
unsatisfied with the Plaintiffs' reliance on the Defendants -- the only financially
feasible source of information of which the Court can conceive.  The Plaintiffs are
additionally in the difficult position of having to prove a negative -- that no
reasonable amount of diligent investigation would have uncovered the causes of
action -- and they also fail to articulate a satisfactory definition of what conduct
constitutes reasonable diligence.  The Plaintiffs need only plead facts, however,
not law, and the Plaintiffs have pled sufficient facts to lead a reasonable jury to
the conclusion that reasonable diligence would be, or was, futile, and the
limitations defense thus fails.

        The Defendants largely contend that the check stub was enough to put the
Plaintiffs on notice.  In the end, the check stub tells an investor little.  Royalty
owners are terribly dependent on their working interest owners.  If the Defendants
were not accurate and truthful, there was little an investor could do to know
whether it had a cause of action.  In the Court's view, the merits of the cause of

action are intertwined with the statute of limitations defense.  In sum, it is for a
jury to decide whether the Plaintiffs should have discovered that they were being
wronged.

MOO at 58, 60-61, 69-81 (footnotes omitted)(citations to the record updated).

### 4.     The Motion to Reconsider.

The WPX Defendants filed the Motion to Reconsider on July 17, 2014, two months and

one day after the Court issued its MOO.  See Motion to Reconsider at 1.  They essentially argue

that the Court erred by applying New Mexico state-law pleading standards instead of rule 8(a).

See Motion to Reconsider at 1-2, 5-10.  They state that "the Court deci[ded] to apply a Butler

standard, rather than the Rule 8 standard."  Motion to Reconsider at 6.  They argue that,

"[b]ecause this case is in federal court, federal pleading standards, not state substantive law, must

be applied in determining whether Plaintiffs' factual allegations support application of the

discovery rule."  Motion to Reconsider at 6 (citing TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351,

357 (5th Cir. 2008); In re Josefik, 72 B.R. 393, 401 n.9 (Bankr. N.D. Ill. 1987)).  They cite

several cases with seemingly relevant passages, including Chubb Custom Insurance Co. v. Space

Systems, 710 F.3d 946, 975 (9th Cir. 2013), Skyline Zipline Global, LLC v. Domeck, No. CIV

12-0450, U.S. Dist. LEXIS 36074, at *24-25 (D. Haw. Mar. 15, 2013), In re Josefik, and In re

Processed Egg Products Antitrust Litigation, 931 F. Supp. 2d 654, 658 (E.D. Pa. 2013).[17]  They

contend that the

---

[17]The WPX Defendants cited In re Processed Egg Products Antitrust Litigation only once
in their briefing on the WPX MTD, and they did not mention it at the hearing.  The lone citation
in the WPX MTD used the case to advance a different proposition than the one they advance
here.  There, the WPX Defendants used the case as part of their argument that the Plaintiffs
failed to properly plead fraudulent joinder.  See WPX MTD at 16.  The WPX Defendants did not
cite Chubb Custom Insurance Co. v. Space Systems, Skyline Zipline Global, LLC v. Domeck, or
In re Josefik in their briefing or at the hearing on the WPX MTD.

Plaintiffs must allege the manner in which they discovered their cause of action. Without any allegation concerning how they learned of their cause of action, there is no basis on which plausibly to infer that Plaintiffs could not have learned of their cause of action earlier through the exercise of due diligence. See Summerhill v. Terminix, Inc., 637 F.3d 877, 881-80 (8th Cir. 2011)("By failing to allege when and how he discovered Terminix's alleged fraud, Summerhill has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."); Dummar v. Loomis, 543 F.3d 614, 622 (10th Cir. 2008)("We question whether the allegations of paragraph 22 are pleaded with sufficient particularity to support a claim of fraudulent concealment; but in any event, the absence of an allegation regarding how and when Mr. Dummar learned of the alleged misconduct forecloses a claim that Defendants' fraudulent concealment prevented Mr. Dummar from discovering Defendants' involvement until at least 2002 -- four years before filing suit.") (emphasis added).

Rather than requiring Plaintiffs to meet this established standard, the Court's decision actually shifts the burden to Defendants to prove that Plaintiffs either had actual knowledge of the facts underlying their causes of action, or could have discovered such facts earlier through the exercise of due diligence. The Court explains that "[i]t is not clear what more the Defendants want. They offer no concrete examples of the behavior necessary to practice reasonable diligence, but are unsatisfied with the Plaintiffs' reliance on the Defendants -- the only financially feasible source of information of which the Court can conceive." MOO at *155. To respond to the Court's rhetorical inquiry, what Defendants want is for Plaintiffs to explain how and when they learned of the facts underlying their causes of action as required by Rule 8(a). Providing this information would, of course, obviate the need for the Court to search its imagination for financially feasible sources of information. Knowing how and when Plaintiffs learned of their causes of action would provide the court with a clear baseline to assess: (1) whether Plaintiffs had actual knowledge of their causes of action prior to the limitations period and (2) whether through the exercise of reasonable diligence Plaintiffs could have learned such information earlier. By not requiring Plaintiffs to plead when or how they learned of facts underlying their causes of action, and instead requiring Defendants to provide "concrete examples of the behavior necessary to practice reasonable diligence" the Court has applied the incorrect pleading standard and has improperly shifted the burden to Defendants to show that the discovery rule does not apply.

Motion to Reconsider at 8-9.

The WPX Defendants then argue that, in addition to using the wrong legal standard, the Court "improperly rewrote the allegations contained in the [WPX] Complaint." Motion to Reconsider at 10 (capitalization altered for readability). This argument is basically an attack on

bullet point (iii) from page 79 of the MOO, quoted above, where the Court disregards the Plaintiffs' "conclusory legal assertion" but notes that, "if the allegation [were to be] restyled as a statement of the Plaintiffs' then-existing belief, then their reliance on Williams seems all the more reasonable."  MOO at 79 (referring to <u>WPX</u> Complaint ¶ 86, at 26).  Last, the WPX Defendants argue that information outside the pleadings suggests that the "Plaintiffs had actual knowledge of their cause of action prior to the applicable limitations period."  Motion to Reconsider at 12.  This argument is new; in the <u>WPX</u> MTD, the WPX Defendants argued exclusively that the Plaintiffs failed to plead due diligence -- <u>i.e.</u>, that the Plaintiffs would have uncovered their claims had they exercised due diligence -- and not that the Plaintiffs actually knew of their claims early enough for their suit to be limitations barred.  <u>See</u> MOO at 71 ("The Defendants do not contest that the Plaintiffs lacked actual knowledge of the causes of action, but rather that the reasonable diligence element is not properly pled.").

The Plaintiffs responded to the Motion to Reconsider roughly two and half weeks later. <u>See</u> Response to Motion for Reconsideration -- Defendants' Motion to Dismiss Based on Statute of Limitations, filed August 4, 2014 (Doc. 266)("Response").  The Plaintiffs argue that

> there is no support for Defendants' argument that, under New Mexico law, in order to satisfy Rule 8(a), Plaintiffs must allege a "specific tolling date" in order to "plausibly suggest" they did not learn of their claims until a time within the limitations period.  Defendants erroneously rely on <u>In re Processed Egg Prods. Antitrust Litig.</u>, 931 F. Supp. 2d 654, 658 (E.D. Pa. 2013), for this proposition. However, <u>In re Processed Eggs</u> has <u>*nothing to do with New Mexico law*</u>.  Not only do Defendants substitute "New Mexico" for "Arizona" in their brief, it is questionable whether they fully read the case.  The citation quoted above is in the context of the Pennsylvania district court's discussion of Arizona law, based on the California Supreme Court case of <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 110 P.3d 914 (Cal. 2005).  Moreover, the <u>In re Processed Eggs</u> court even recognized that in <u>Fox</u>, California "did not establish this pleading requirement under a federal Rule 8 analysis," which is directly opposite to what WPX contends here. Therefore, there is no authority that Rule 8 requires a plaintiff, when invoking the discovery rule under New Mexico law, to allege the "time and manner" of their discovery of Defendants' breach in their complaint.

Response at 3-4 (emphasis in original).  The Plaintiffs also defended the MOO's references to Butler v. Deutsche Morgan Grenfell, Inc., arguing that, because the Tenth Circuit adopted the state-court case's approach in Elm Ridge Exploration and Production Co., 721 F.3d 1199 (10th Cir. 2013), the Court should likewise look to it in determining the operation of New Mexico's discovery rule.  See Response at 4-5.

The WPX Defendants replied to the Response roughly two and a half weeks later.  See Reply Memorandum in Support of Defendants' Motion for Reconsideration, filed August 21, 2014 (Doc. 267)("Reply").  The Reply largely reiterates the Motion to Reconsider's arguments, hammering on the point that the Court should apply rule 8(a), rather than state-law pleading procedures.  See Reply at 3-6.

The Court did not hold a separate hearing on the Motion to Reconsider.  Although the Court's usual practice is to hold hearings on all contested civil motions, the MTD and the WPX MTD were so similar -- with the Motion to Reconsider spelling out the Defendants' most up-to-date arguments on both motions -- that the Court concluded that a single hearing would suffice to rule on both the MTD and the Motion to Reconsider.  The Court did hold a hearing on the MTD, which effectively served as a hearing on the Motion to Reconsider, as well.  See Order at 1, filed March 4, 2015 (Doc. 277)("The Court held a hearing on September 2, 2014, in Anderson Living Trust v. ConocoPhillips Co., LLC, No. CIV 12-0039 JB/SCY (D.N.M.), on a motion to dismiss that 'reflects substantially the same arguments and authorities that were the subject of the [M]otion . . . in the . . . case against WPX Energy.'  For the reasons stated at the hearing, the Court will deny the Motion."  (alteration and omissions in Order but not ConocoPhillips Tr.) (quoting ConocoPhillips Tr. at 3:9-12 (Sheridan))).

5.      **The Hearing on the MTD.**

The Court held a hearing on the MTD -- which effectively served as a joint hearing on both the MTD and the Motion to Reconsider -- on September 12, 2014.  See ConocoPhillips Tr. at 3:13-4:3 (Sheridan).  The hearing, although lengthy, brought out little new information or argument.  ConocoPhillips made three points at the hearing worth repeating here.  First, it became clear that ConocoPhillips truly believed that the Court had applied state-law pleading procedures, i.e., ConocoPhillips thought that the MOO said, effectively, that rule 8(a) does not apply.[18]  See ConocoPhillips Tr. at 5:6-6:11 (Sheridan).  The Court reassured ConocoPhillips that it was not "adopting any state pleading requirements," but, rather, was "looking at New Mexico [substantive] law to inform [it] what [New Mexico law] required as far as the discovery rule."  ConocoPhillips Tr. at 6:14-19 (Court).  See id. at 6:19-20 (Court)("So it wasn't that I was coming up with a -- you know, just incorporating New Mexico's 8(a).").

Second, ConocoPhillips raised -- arguably for the first time -- the possibility that the Plaintiffs had actual knowledge of their claims at an early enough point to implicate the statute of limitations.  See ConocoPhillips Tr. at 15:13-24 (Court, Sheridan).  The MOO had focused on the Defendants' other argument -- which was certainly their primary argument, if not their exclusive one -- that the Plaintiffs had not adequately pled their exercise of due diligence.  ConocoPhillips used its introduction of an actual-knowledge argument, however, to argue, at the hearing, that the Plaintiffs are obligated to plead the dates of their actual discovery of their

---

[18]The Motion to Reconsider and the Reply both talk about the Court improperly adopting a state-law pleading standard rather than using rule 8(a), but this gripe could be more naturally construed to mean "the Court's integration of New Mexico's discovery rule into its rule 8(a) analysis constructively resulted in an improper application of Erie doctrine," rather than "the Court does not understand basic Erie doctrine," which is the point that ConocoPhillips was evidently making.

causes of action.  See ConocoPhillips Tr. at 10:10-11:21 (Sheridan)("[T]hey have not alleged anything relating to an actual discovery date.  And so, you know, it is equally plausible that one or more of the named plaintiffs . . . knew or should have known of their claim prior to the four years . . . .").

Third, ConocoPhillips asked the Court to reconsider the final three paragraphs of the MOO's final footnote.  See ConocoPhillips Tr. at 73:4-79:16 (Campbell, Court).  That section of the MOO reads as follows:

> Even knowing the high bar the Tenth Circuit now sets for what constitutes intervening case law, the Court is tempted to conclude that Davis v. Devon Energy Corp. directly and unequivocally overrules Elliott Industries LP v. BP American Production Co., for three broad reasons.  First, the Tenth Circuit analyzed the implied duty to market as a term implied in fact, not one implied in law.  An implied-in-fact term is a "real" contractual term, put there by the parties" agreement -- albeit their unwritten and unspoken agreement.  Because its origins are in the parties' agreement, direct conflict with a written term of the contract destroys the implied term.  Other than having the word "implied" in them, implied-in-fact terms have little in common with implied-in-law terms, like the covenant of good faith and fair dealing, which the courts "imply" onto all contracts -- without the pretense that the parties silently agreed to the term, and, in fact, often in spite of the parties" agreement.  When Davis v. Devon Energy Corp. held that the marketable condition rule was an implied-in-law term, reversing the district judge who styled it as an implied-in-fact term, it undermined the logic of Elliott Industries LP v. BP American Production Co.  To the extent that the Tenth Circuit's case can still be read for its narrow conclusion -- now supported only by damaged logic -- that there is no marketable condition rule in New Mexico, the Court will decline to ignore Elliott Industries LP v. BP American Production Co. on this ground.
>
> Second, the Court notes that Davis v. Devon Energy Corp. may have held that there is a marketable condition rule, and its unambiguous disclaimer to the contrary, literally in all-caps and boldface type, that it "do[es] not address the marketable condition rule," may have been mere dicta (albeit clear, and loud, dicta).  2009-NMSC-048, ¶ 14, 218 P.3d at 80 (emphasis omitted).  In that case, the district court had concluded that there was a marketable condition rule governing primary conduct in New Mexico, but declined to certify a class action for its breach because the district court thought that the rule was an implied-in-fact term.  New Mexico procedure entitles parties to a contract to a parol evidence hearing on all disputed contractual terms, and the district court thought that these hearings -- which would need to be individualized -- would render the class action

unmanageable. The Supreme Court of New Mexico reversed on an abuse-of-discretion standard, holding that the marketable condition rule is an implied-in-law term -- for which no parol evidence hearings would need to occur -- and certified the class action. See 2009-NMSC-048, ¶¶ 37, 40, 218 P.3d at 86, 87. The Supreme Court of New Mexico did not purport to hold that the marketable condition rule actually exists, but rather that, if it does exist, it is an implied-in-law duty. If that were the case's holding, however, the Court cannot see how the district court's error would not be harmless: the district court misconstrued the nature of a cause of action, but the cause of action does not exist -- at least not according to the Supreme Court of New Mexico -- at all, so no legally cognizable harm was done to the plaintiffs. The Court, however, is reticent to defy the express declaration of a state's highest court in implementing the Erie doctrine, so it will not adopt this view. Moreover, the Supreme Court of New Mexico declined from deciding whether the marketable condition rule exists, no doubt knowing about the Tenth Circuit's opinion in Elliott Industries LP v. BP American Production Co., and did not take the opportunity to make it clear to the federal courts what the law is.

Third, and perhaps most obvious, whatever else can be said about Davis v. Devon Energy Corp.'s holding, one thing is clear: the Supreme Court of New Mexico permits, even if it does not direct, its subordinate courts to recognize and apply the marketable condition rule. The Court can, additionally, find no case holding that a district court may decline to recognize the marketable condition rule. The Court, however, is not confident this holding applies in federal court. Even if the Supreme Court of New Mexico intended to extend its invitation to adopt the marketable condition rule to the federal courts -- and there is no indication that it did -- New Mexico trial courts have some freedom to be a part of shaping New Mexico law, and recognizing novel or uncertain causes of action may be appropriate for them to do. The Court, on the other hand, is bound to interpret and apply the state law of New Mexico, without injecting its own policy preferences. Were it not for its opinion that the marketable condition rule already exists in New Mexico, the Court would likely not consider adopting a state cause of action that was merely permissive as to the state's district courts, and that being so, the Court will not allow its disagreement with the Tenth Circuit to cloud its judgment here. The Court will apply the Tenth Circuit's holding from Elliott Industries LP v. BP American Production Co., and conclude that it is not free to decide that the marketable condition rule exists under New Mexico law.

MOO at 85 n.30. ConocoPhillips argued that the Court read too much into Davis v. Devon Energy Corp.'s holding, that the Supreme Court of New Mexico did not reverse the district court in that case, and that the court certainly did not adopt the marketable-condition rule:

[W]e have some serious complaint with the Court's -- two statements in the Court's Footnote 30 -- that concern us very much in terms of its characterization

- 50 -

of what the Davis court held.  If the Court would simply allow me to identify those.  We have had no way to -- we certainly didn't brief the issue -- we have had no way to bring these statements to the Court's attention, but I would appreciate if you would just allow me two or three minutes to point them out to you.

THE COURT:  Certainly.

MR. CAMPBELL:  In Footnote 30 of the Court's WPX ruling in May of this year, the Court states on page 91, quote, . . .

. . . .

MR. CAMPBELL:  "When Davis versus Devon held that the Marketable Condition Rule was an implied in law term, reversing the district judge who styled it an implied in fact term, it undermined the logic of Elliott Industries."

The second statement the Court makes is in the second full paragraph, about midway down, quote, "The Supreme Court of New Mexico" --

THE COURT:  Yes.

MR. CAMPBELL:   -- "reversed on an abuse of discretion standard holding that the Marketable Condition Rule is an implied in law term for which no parol evidence is required and certified the class action."

It's our view, Your Honor, that those two statements overread Davis versus Devon significantly.  The Supreme Court in that case did not hold that there existed an implied in law covenant in the case.  And it did not reverse the district court's suggestion that it was an implied in fact covenant.

What happened in the case was that the trial court had found the Marketable Condition Rule to be a part or component of the implied duty to market.  Then, finding that the implied duty to market was an implied at law covenant suggested that the trial court, having found the Marketable Condition Rule to be a component of the implied duty to market, in effect determined that the rule was implied in law.

It, itself, did not address the question, because the question was not ripe at the time of certification.

But any implication that the New Mexico Supreme Court has held that the Marketable Condition Rule exists and is implied at law is erroneous.  If you look at the paragraph citations in the second quote, paragraphs 37 and 40, there is no suggestion there of an abuse of discretion reversal at all.

Moreover, if there is any doubt that the New Mexico Supreme Court has not held that there is an implied in law covenant for marketable condition, it is resolved by a subsequent case, a decision by the New Mexico Supreme Court approximately seven months after Davis, in a companion case titled, Ideal versus Burlington Resources -- the cite is 148 N.M. 228, 233, P.3d 362 -- the same question: Class certification of a class against Burlington Resources, an allegation of a Marketable Condition Rule.  In the Burlington case the trial court held that it would certify, on a (b)(3) basis, contrary to Judge Hall's decision in the Devon case.

But here's what the Supreme Court stated -- this is at [paragraph] 7 -- quote, "From a review of the record in this case, we are not sure whether the district court concluded that the Marketable Condition Rule applied as a matter of law, as did the district Judge in Davis."

So the Supreme Court in the subsequent companion Burlington case characterized the trial court's decision in Davis to have found that the Marketable Condition Rule was implied at law.

Continuing in the subsequent Burlington case, "We remand to the district court to resolve whether the Marketable Condition Rule applies as a matter of law, or because the parties may have intended it to apply."  That is to say the Burlington Supreme Court sent the certification back to the district court for a decision by the district court as to whether it was applying the Marketable Condition Rule as a matter of fact or as a matter of law.

The statement in your Footnote 30, made on two occasions, that the Supreme Court in Davis held that the Marketable Condition Rule applied as a matter of law is simply overreading Davis, in our view -- and we would hope to the extent -- I mean, like Footnote 7 in your first opinion, the consolidated opinion, providing your views with respect to what the Supreme Court of New Mexico would do vis-a-vis Marketable Condition Rule, we did not brief any of the suggestions you made in that Footnote 7.  We have not briefed nor had the opportunity to respond to the statements in your Footnote 30.

I would simply submit to Your Honor, respectfully, that those statements in Footnote 30 are not accurate, Davis being fairly read.

Thank you.

THE COURT:  How, then, could the Supreme Court -- I haven't focused on this statement in Burlington -- but how could the Supreme Court have reversed Judge Hall, given his holding about the parol evidence -- which I don't think would have been very relevant to an implied in law term -- how could they have reversed him, if they thought he was making a finding of implied in law?

MR. CAMPBELL: In my view, they looked at the trial court decision, Judge Hall's decision, and did not reverse him. Judge Hall held that the Marketable Condition Rule was a component of the implied duty to market. That's really all he held.  That was the order that came up.

The Supreme Court said: Having done that, Judge Hall having included the Marketable Condition Rule as a component of the implied duty to market, the Supreme Court said that ended the inquiry: Judge Hall, you did not need to go on to examine -- you don't need to consider parol evidence, because the implied duty to market is, itself, an at law duty.

And Judge Hall, having found the Marketable Condition Rule was a component of that at law duty, the Supreme Court interpreted Judge Hall to have found that the implied duty was implied at law.  That's what they confirmed in their subsequent <u>Burlington</u> case.

THE COURT:  All right. Anything else, Mr. Campbell?

MR. CAMPBELL:   No, sir. We'd ask for your reexamination of that point.  Thank you.

THE COURT:  Those two sentences.

MR. CAMPBELL:  Thank you, Your Honor.

<u>ConocoPhillips</u> Tr. at 73:23-79:16 (Campbell, Court).

## LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would

the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit has stated:

"[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."   The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(citations omitted).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008)); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").   The defense of limitations is the affirmative defense most likely to be established by the uncontroverted facts in the complaint.  See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277 (3d ed. 2014).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).  The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable

tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted it, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1235-36 (D.N.M. 2014)(Browning, J.).

### LAW REGARDING MOTIONS TO RECONSIDER UNDER RULE 59(e)

Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Rule 60 provides in relevant part:

(b)     **Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1)     mistake, inadvertence, surprise, or excusable neglect;

(2)     newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)     the judgment is void;

(5)     the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)     any other reason that justifies relief.

(c)     **Timing and Effect of the Motion.**

(1)     **Timing.**  A motion under Rule 60(b) must be made within a reasonable time -- and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2)     **Effect on Finality.**   The motion does not affect the judgment's finality or suspend its operation.

Fed. R. Civ. P. 60(b)-(c).  The Tenth Circuit has recognized:

> Generally, a "motion for reconsideration, not recognized by the Federal Rules of Civil Procedure, Clough v. Rush, 959 F.2d 182, 186 n.4 (10th Cir. 1992), may be construed in one of two ways: if filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)."   Computerized Thermal Imaging, Inc. v. Bloomberg, LP, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).

Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005).  The time limit in rule 59(e) is now twenty-eight days rather than ten days.  See Fed. R. Civ. P. 59(e).  A motion for reconsideration under rule 59(e) is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."  Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear

error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d at 1012. "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider under rule 59(e). See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997).

Rule 60 authorizes a district court to, "[o]n motion and just terms[,] . . . relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons," including "any other reason that justifies relief." Fed. R. Civ. P. 60(b). A court cannot enlarge the time for filing a rule 59(e) motion. See Brock v. Citizens Bank of Clovis, 841 F.2d 344, 347 (10th Cir. 1988)(holding that district courts lack jurisdiction over untimely rule 59(e) motions); Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., No. CIV 11-0103, 2012 WL 869000, at *2 (D.N.M. Mar. 8, 2012)(Browning, J.)("The Court may not extend the time period for timely filing motions under Rule 59(e) . . . ."). "A motion under rule 59 that is filed more than 28 days after entry of judgment may be treated as a Rule 60(b) motion for relief from judgment." 12 James Wm. Moore et al., Moore's Federal Practice § 59.11[4][b], at 59-32 (3d ed. 2012)(citations omitted). Nevertheless, a court will not generally treat an untimely rule 59(e) motion as a rule 60(b) motion when the party is seeking "reconsideration of matters properly encompassed in a decision on the merits' contemplated by Rule 59(e)." Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005).

Under some circumstances, a party can rely on rule 60(b)(1) to rectify a mistake by his or her attorney, or when their attorney acted without the party's authority. See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake

or an attorney has acted without authority . . . .").  Mistake in this context entails either acting

without the client's consent or making a litigation mistake, such as failing to file or comply with

deadlines.  See Yapp v. Excel Corp., 186 F.3d at 1231.  If the alleged incident entails a mistake,

then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs. v.

Brunswick Assocs. LP, 507 U.S. 380, 394 (1993)("This leaves, of course, the Rule's requirement

that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577

(10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant

relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision

by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding

attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result

of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577.

This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot
> now avoid the consequences of the acts or omissions of this freely selected agent.
> Any other notion would be wholly inconsistent with our system of representative
> litigation, in which each party is deemed bound by the acts of his lawyer agent
> and is considered to have notice of all facts, notice of which can be charged upon
> the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co.,

370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).  The Tenth Circuit has held that

there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct"

and has noted that those "who act through agents are customarily bound," even though, when "an

attorney is poorly prepared to cross-examine an expert witness, the client suffers the

consequences."  Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).  The Court

has previously stated:

- 59 -

> There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigations decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

Wilson v. Jara, No. 10-0797, 2012 WL 1684595, at *7 (D.N.M. May 10, 2012)(Browning, J.).[19]

---

[19]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents *and their counsel* was excusable." Pioneer Inv. Servs. Co. v. Brunswick Assoc. LP, 507 U.S. 380, 397 (1993)(emphasis in original). At the same time, the Tenth Circuit has held that, when counsel acts without authority, rule 60(b)(1) provides relief from judgment. See Cashner v. Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . ."). "There is a tension between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake." Wilson v. Jara, 2012 WL 1684595, at *7 n.7.

The Court concludes that, when the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client. See Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 749 P.2d 90, 92 (1988); Bolles v. Smith, 591 P.2d 278, 280 (1979)). "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences." Wilson v. Jara, 2012 WL 1684595, at *7 n.7. In Chavez v. Primus Auto. Fin. Servs., the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case." 1997 WL 634090, at *4. Few Tenth Circuit cases analyze whether an attorney has acted without authority. The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see, e.g., FDIC v. Oaklawn Apts., 959 F.2d at 175-76 (finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate the litigation, see, e.g., Thomas v. Colo. Trust Deed Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); Cashner v. Freedom Stores, Inc., 98 F.3d at 577 (citing with approval Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry"). Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong. Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." Moore, supra § 60.48[2], at 60-182. Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n.11 (1988)("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive."). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is

---

or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or whether he or she wishes to have any attorney. Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); Pittman ex rel. Sykes v. Franklin, 282 F. App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstance in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court concludes that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine attorney decisions which take place over the course of the case. The Court also notes that rules of professional conduct require, "[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify." Model Rules of Prof'l Conduct R. 1.2(a). While a decision on the plea to be entered in a criminal case is comparable to whether to settle a civil case, the Court has not located any decisions permitting rule 60(b) relief when a civil attorney waives his or her client's right to a jury trial. One unpublished decision from the United States Court of Appeals for the Fourth Circuit discussed briefly a scenario where, without resolving the merits of the issue, a criminal defendant raised through a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying in his defense." United States v. McMahan, 8 F. App'x 272, 274 (4th Cir. 2001)(unpublished).

appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863. Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief.  See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence.  Subsection 6 of Rule 60(b) has no application to the situation of petitioner.").  Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)].  In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." Pierce v. Cook & Co., 518 F.2d at 723.  However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

952 F.2d at 1244-45.

## ANALYSIS

The Court stands by the reasoning in its MOO, see supra Procedural History, Part 3, and, additionally, will apply that reasoning to ConocoPhillips.  The Court will therefore deny the Motion to Reconsider.  The Court will also grant the MTD in part and deny it in part, dismissing the ninth, tenth, and twelfth causes of action in the ConocoPhillips Complaint.  Last, the Court will reexamine the statements in the MOO with which ConocoPhillips has particular issues, but the Court will ultimately stand by what it said there.

## I.     THE COURT WILL DENY THE MOTION TO RECONSIDER.

For the most part, everything the Court needs to say in ruling on the Motion to Reconsider it has already said in the MOO.  The Court spent considerable time thinking through the issues and conducting research while writing the MOO; the Court works hard and takes all motions before it seriously, and the WPX MTD received more prolonged attention than most.  Moreover, the Defendants have presented nothing to cause the Court to doubt its original decision.  It is not only the case that the Court can respond to the Defendants' attacks on the MOO; the MOO itself contains responses to all of the Motion to Reconsider's points.  The MOO perhaps got a bit deep into the weeds, however, and there may be some benefit to the Court providing more of a view-from-20,000-feet description of its analysis.

Rule 8(a) -- the federal pleading standard, which applies in this case, just as it does in all federal cases, except when rule 9(b) applies -- requires the plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This requirement means that the plaintiff must plead -- i.e., allege facts that give rise to a plausible inference of -- each and every element of his or her claim.  See, e.g., Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)("The plaintiff must, of course, allege each of these elements to state a claim.").   The plaintiff need not, however, plead around the defendant's affirmative defenses, nor is the plaintiff obliged to plead facts that enable the Court to adjudicate affirmative defenses at the motion-to-dismiss stage.  See, e.g., de Csepel v. Republic of Hungary, 714 F.3d 591, 607-08 (D.D.C. 2013)("[A]lthough it is certainly true that plaintiffs must plead the elements of their *claims* with specificity, they are 'not required to negate an affirmative defense in [their] complaint.'"  (emphasis in original)(quoting Flying Food Grp., Inc. v. NLRB, 471 F.3d 178, 183 (D.C. Cir. 2006))); Williams v. Burns, 540 F. Supp. 1243, 1247 n.2 (D. Colo.

- 63 -

1982)("Since in Colorado, truth and privilege are affirmative defenses which the defendant must plead and has the burden to prove by a preponderance of the evidence at trial, they are not necessary elements of a plaintiff's cause of action.").   Not only is the burden not on the plaintiff to plead around affirmative defenses, rule 8 expressly places the burden of pleading affirmative defenses on the defendant:

> **(c)**   **Affirmative Defenses.**[20]
>
> > **(1)**   **In General.**   In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:
> >
> > . . . .
> >
> > • statute of limitations

Fed. R. Civ. P. 8(c).   "Complaints need not anticipate, and attempt to plead around, potential affirmative defenses.   When . . . Bell Atlantic Corp. v. Twombly restated the requirements of Fed. R. Civ. P. 8, the Justices did not revise the allocation of burdens concerning affirmative defenses; . . . Bell Atlantic [never] mentions affirmative defenses . . . ."   Davis v. Ind. State Police, 541 F.3d 760, 763-64 (7th Cir. 2008)(Easterbrook, C.J.)(citing Gomez v. Toledo, 446 U.S. 635 (1980); United States Gypsum Co. v. Indiana Gas Co., 350 F.3d 623 (7th Cir. 2003)).

---

[20]An "affirmative defense" is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." Black's Law Dictionary (10th ed. 2014).

The Court notes that the only "defense" with a solid pedigree of being judicable at the motion-to-dismiss stage, qualified immunity, is not one of the eighteen affirmative defenses listed in rule 8(c).   Qualified immunity is not so much a defense -- i.e., something that arises from the facts of the case -- as it is something altogether different: a form of immunity, which arises from the identity of the defendant.   Qualified immunity is subject to adjudication at the motion-to-dismiss stage for much the same reason that its denial is subject to interlocutory appeal: immunity means immunity from suit, not merely from entry of judgment; and one's right to immunity is violated whenever he or she is made to stand trial, regardless whether he or she ultimately prevails.

See Flying Food Grp., Inc. v. NLRB, 471 F.3d at 183 ("[A] 'plaintiff is not required to negate an affirmative defense in his complaint' . . . ." (quoting Tregenza v. Great Am. Commc'ns Co., 12 F.3d 717, 718 (7th Cir. 1993))).

In the statute-of-limitations context, this rule means that plaintiffs do not need to plead the dates on which things happened, unless those dates are, for some reason, necessary to establish the elements of the cause of action.[21]  See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)(en banc)(Niemeyer, J., joined by Wilkinson, J., et al.)(unanimous)(reversing a district judge's dismissal on limitations grounds where "[t]he complaint allege[d] neither a date when the contract was breached nor a date when Goodman may have discovered the breach").  If the plaintiff goes out of his or her way to plead dates, however, then it might be possible for the court to conclude that certain claims are facially time-barred:

> A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses.  But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.  See Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009).

Indep. Trust Corp. v. Stewart Info. Serv. Corp., 665 F.3d 930, 935 (7th Cir. 2012).  Basically, rule 12(b)(6) is not designed to decide affirmative defenses, but it can handle the odd case that falls into its lap.  This approach may seem somewhat easy for plaintiffs to game, as they can avoid dismissal, generally, simply by refraining from pleading identifiable dates.  Really though, this trick does not get the plaintiff very far.  For example, in a standard case in which neither the discovery rule nor any other tolling doctrine is implicated, if a plaintiff fails to plead that the incident happened five years ago when the relevant limitations period is three years, then the

---

[21]For example, if a plaintiff sued for breach of a contract that provided that the defendant must perform by a certain date, the plaintiff might need to plead that date.

defendant will likely discover this information quickly, and he or she will likely be able to mount a successful motion for summary judgment with this fact alone.  The plaintiff typically gains little by kicking the can of inevitable dismissal a few months down the road, except that its attorneys must invest more resources into a case that will not ultimately bear fruit.  Some of these cases may settle for something, but, given that it costs money to prosecute a lawsuit, if a claim is going to ultimately be thrown out anyway, it is to the plaintiff's benefit as much as the defendants to have it thrown out earlier rather than later.

"The introduction of the discovery rule into the calculus only tilts the scales further in the plaintiff's favor," MOO at 74, because, unlike cases governed by a "hard and fast" statute of limitations, all the elements of a limitations defense will rarely be established on the complaint's face when the discovery rule is involved.  In the MOO, the Court concluded that, if the plaintiff pleads facts that, but for the discovery rule, would establish a limitations defense,[22] the plaintiff must then plead "allegations that, if proven at trial, could convince a reasonable jury to reject the limitations defense."  MOO at 77.  The Court stands behind this conclusion still, but it will note

---

[22]By alleging that the leases were executed in the 1940s, and by seeking damages that relate back indefinitely, the Plaintiffs pled facts that would have established a limitations defense, but for the discovery rule:

> A fair reading of the claims -- let alone the broad reading the Court is required to give pleadings -- is that the Defendants' unlawful course of conduct extends back at least beyond October 20, 2005, the last date the statute of limitations could accrue without barring at least some of the claims.  See WPX Complaint ¶¶ 26-29, at 10-13.

> If the Court were not to construct the claims in this self-evident manner, then the Plaintiffs would be unable to pursue damages they incurred before whatever arbitrary date the Court chose as being the cut-off point in its interpretation of the claims. The MTD would be irrelevant, because the remedy it seeks -- cut-off damages -- would already have been provided.

MOO at 69 n.20.

that the one court in the nation to have addressed this question in detail, the United States Court

of Appeals for the Fourth Circuit, adopted a standard even friendlier to plaintiffs than the

Court's:

> Goodman's complaint . . . does not provide facts sufficient to apply the discovery rule. . . .
>
> The Praxair defendants argue that because the discovery rule is an extension of the limitations period that Goodman must allege and prove in response to a statute of limitations defense, the risk of failing to make the showing must fall on Goodman, not on the Praxair defendants.  The problem with this argument, however, is that the discovery rule itself is dependent upon the existence of a date of breach.  While Goodman might ultimately have to *prove* when he discovered a breach, he was not obligated to plead discovery of the breach in his complaint when the affirmative defense  had yet to be demonstrated in the complaint or asserted by the defendants.  If the defendants wished to dispose of the complaint on its face *before* asserting their affirmative defense, on the ground that their affirmative defense was evident in the complaint, they had to show also that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint.  "[O]nce a claim has been stated adequately, it may be supported by showing *any set of facts* consistent with the allegations in the complaint."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)(emphasis added).  To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised.  Of course, no such pleading is required except, perhaps, in the unusual case where a claim is filed *clearly* beyond the applicable limitations period and the plaintiff seeks to forestall its dismissal by alleging the facts of discovery.
>
> . . . [W]e conclude that the face of the complaint does not allege facts sufficiently clear to conclude that the statute of limitations had run, and the district court therefore erred in dismissing the complaint on that basis under Rule 12(b)(6).

Goodman v. Praxair, Inc., 494 F.3d at 465-66 (emphases in original).  This opinion was en banc,

unanimous, and written by a respected jurist, the Honorable Paul V. Niemeyer, United States

Circuit Judge for the Fourth Circuit.

The WPX Defendants contend that the Plaintiffs must plead the specific dates upon

which they became aware of their causes of action.  They quote two cases that, at first glance,

appear to support their contention.  In Summerhill v. Terminix, Inc., 637 F.3d 877 (8th Cir.

2011), the United States Court of Appeals for the Eighth Circuit wrote: "By failing to allege when and how he discovered Terminix's alleged fraud, Summerhill has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."  637 F.3d at 881-82.  In <u>Dummar v. Loomis</u>, 543 F.3d 614 (10th Cir. 2008), the Tenth Circuit wrote: "[I]n any event, the absence of an allegation regarding how and when Mr. Dummar learned of the alleged misconduct forecloses [his] claim . . . ."  543 F.3d at 622.  These cases, however, both deal with fraudulent concealment, which is subject to rule 9(b)'s heightened pleading standard; that standard does require the plaintiff to plead the "who, what, <u>when</u>, where, and how."  <u>Caplinger v. Medtronic, Inc.</u>, No. CIV 13-6061, 2015 WL 1786742, at *6 n.1 (10th Cir. 2015)(Gorsuch, J.)(unpublished)(emphasis added).   The WPX Defendants themselves "agree that the standard for pleading the discovery rule is governed by Rule 8(a), rather than Rule 9(b)."  Motion to Reconsider at 7 n.1.

The WPX Defendants point out, correctly, that the Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, concluded that "a plaintiff cannot plausibly suggest that the discovery rule applies to her claim unless she alleges the date on which she learned of her injury."  <u>In re Proc. Egg. Prods. Antitrust Litig.</u>, 931 F. Supp. 2d at 658.  Judge Pratter, however, cites no Circuit-level authority for this proposition,[23] and the two federal district court cases upon which he relies are suspect.  The first, <u>Stewart Coach Industries, Inc. v.</u>

---

[23]It is more precise to say that Judge Pratter does not cite any Circuit-level authority that itself makes the point he uses it to make.  Judge Pratter states that "[a] complaint that lacks such an allegation [specific dates] offers mere speculation as to the applicability of the discovery rule," 931 F. Supp. 2d at 658, and then cites <u>Zavala v. Wal-Mart Stores, Inc.</u>, 691 F.3d 527 (3d Cir. 2012), for the unremarkable proposition that, "'[e]ven on a motion to dismiss, we are not required to credit mere speculation,'" 931 F. Supp. 2d at 658 (quoting 691 F.3d at 542).

Moore, 512 F. Supp. 879 (S.D. Ohio 1981), applies the rule 9(b) standard and appears to be talking about a fraud-based "discovery rule."  512 F. Supp. at 886.  That court wrote:

> [W]hen a complaint affirmatively indicates that the alleged fraud occurred at a remote time, such that it would ordinarily be barred by the statute of limitations, it becomes the duty of the plaintiff who seeks to rely on the 'discovery rule' to affirmatively and particularly plead the date of discovery, as a material averment under F.R.C.P. 9(b), (f), or face dismissal of the complaint.

512 F. Supp. at 886 (emphasis added).  The second case, Training Institute, Inc. v. City of Chicago, 937 F. Supp. 743 (N.D. Ill. 1996), bases its decision on rule 9(f), see 937 F. Supp. at 750-51 ("TTI does not plead any facts -- in violation of Fed. R. Civ. P. 9(f) -- to support its position that it 'discovered' the racial discrimination injuries within the two-year period beginning on August 30, 1993, and ending on August 30, 1995."  (footnote omitted)); Fed. R. Civ. P. 9(f) ("An allegation of time or place is material when testing the sufficiency of a pleading."), which imparts no affirmative obligation on the pleader to allege time or place, "but merely states that when such allegations are made, they are material," 27 Tracy Bateman Farrell, John R. Kennel & Karl Oakes, Federal Procedure, Lawyers Edition § 62:169.  This analysis does not convince the Court, and, to the extent that it has any reservations about its own construction of the interaction between rule 8(a) and the discovery rule, it would be more likely to accept the Fourth Circuit's (unanimous) construction than Judge Pratter's.

The Court thus sticks with the rulings in the MOO.  Analyzing the Plaintiffs' claims under rule 8(a) -- the applicable procedural law -- for compliance with New Mexico's discovery rule -- the applicable substantive law -- the Court concludes that the facts alleged in the WPX Complaint do not establish a limitations defense.  The Court will thus deny the Motion to Reconsider.

**II.   THE COURT WILL DISMISS THE NINTH, TENTH, AND TWELFTH CAUSES OF ACTION IN THE** CONOCOPHILLIPS **COMPLAINT.**

Just as the MOO did for the WPX Complaint, the Court will now dismiss the ConocoPhillips Complaint's claims for fraudulent concealment, see MOO at 82-83; ConocoPhillips Complaint ¶¶ 79-87, at 24-26 (Ninth Cause of Action), equitable estoppel and continuing wrong, see MOO at 83-84; ConocoPhillips Complaint ¶¶ 88-92, at 27-28 (Tenth Cause of Action), and breach of the implied covenant to market, see MOO at 84-95; ConocoPhillips Complaint ¶¶ 97-100, at 30-32 (Twelfth Cause of Action).   The Court will dismiss the fraudulent-concealment claim without prejudice for failure to plead with particularity, as rule 9(b) requires.   See MOO at 82-83.   The Court will dismiss the equitable-estoppel and continuing-wrong "claims" with prejudice, because those doctrines are tolling doctrines, rather than independent claims.   See MOO at 83-84.

The Court suspects that the Plaintiffs care relatively little about those claims; they likely asserted them only in the hopes that one or more would stick as a tolling doctrine, thus saving the rest of their claims from being cut off before a four- or six-year limitations period.   The claim about which the Plaintiffs care is their implied-covenant-to-market claim, which, if viable, might allow them to achieve class certification without taking into account the varying lease language that exists among the class.   The Court might be inclined to re-examine its analysis of this claim in depth -- after all, the Defendants in these two cases move the Court to reconsider every adverse decision it issues, so it only seems fair that the Court give the Plaintiffs the same benefit -- except that the Court has already dismissed this same claim twice -- three times, if one counts the double-captioned Memo. Opinion as two opinions.   See Memo. Opinion at 128-136; MOO at 84-95.   The Court has made it clear that it believes that the Supreme Court of New Mexico will, at some point, recognize the marketable-condition rule, see Memo. Opinion at 88 n.7, but that the

Tenth Circuit's way of balancing vertical stare decisis and <u>Erie</u> doctrine binds the Court's hands, MOO at 85 n.30.  <u>Elliott Industries LP v. BP America Production Co.</u>, which holds that New Mexico does not recognize the marketable-condition rule, binds the Court.  <u>See</u> 407 F.3d at 1114.  The Plaintiffs' attempts to recast their claim as a breach of the "implied duty to market," rather than the "marketable condition rule" -- which the Court has also already rejected -- continue to be unavailing, because the marketable-condition rule is the corollary of the implied duty to market that forbids working-interest owners from deducting post-production expenses. Without the marketable-condition rule, the implied duty to market is merely

> an affirmative duty, designed to prevent the lessee's <u>inaction</u> from locking the lessor into a potentially long-term contract, earning no royalty on land that could be quite valuable, and, worse, causing society to lose out on resources locked away under the lessor's land, untouchable -- by virtue of the lease's exclusivity -- by anyone except the lessee.

MOO at 92 (emphasis in original).  The Supreme Court of New Mexico described the duty as follows:

> The object of the lessor in making the lease was to secure the development of the leased premises for oil and gas.  There is an implied covenant on the part of the lessee (in the absence of any expressed on the subject as in this lease) that after production of oil and gas in paying quantities is obtained, he will thereafter continue the work of development for production of oil and gas with reasonable diligence as to the undeveloped portion of the leased land.
>
> But the duty of lessee does not end there.  He must proceed with reasonable diligence, as viewed from the standpoint of a reasonably prudent operator, having in mind his own interest as well as that of the lessor, to market the product.

<u>Libby v. De Baca</u>, 1947-NMSC-007, ¶¶ 6-7, 179 P.2d 263, 265.  There is no suggestion that the Defendants are not bringing the production they obtain from the Plaintiffs' land to market; they are, and the only question is whether they are paying the Plaintiffs the full amount to which they are entitled.  The Defendants have thus discharged their implied duty to market -- assuming, as

the Court has already decided, that this duty does not contain the additional qualifier of the marketable-condition rule.  The Court will therefore dismiss the twelfth cause of action in the ConocoPhillips Complaint.

### III.    THE COURT WILL NOT MODIFY THE MOO'S FOOTNOTE 30.

The Court has reexamined its statements in the MOO's footnote 30 -- the ones in which, according to ConocoPhillips, the Court over-read Davis v. Devon Energy Corp. -- and the Court agrees with most of what ConocoPhillips says, but it cannot see how ConocoPhillips' statements are all that different from those in the footnote.  See supra Procedural History, Part 5 (summarizing the hearing on the MTD).  The footnote ultimately concludes that Davis v. Devon Energy Corp. does not establish the marketable-condition rule -- and this conclusion is the one that ConocoPhillips requests the Court to make.  ConocoPhillips accuses the Court of over-reading Davis v. Devon Energy Corp., but the Court suspects that ConocoPhillips may be over-reading the Court's footnote.

As for ConocoPhillips' assertions that the Supreme Court of New Mexico did not reverse the district court's denial of certification, see ConocoPhillips Tr. at 76:7-8 (Campbell)("[T]here is no suggestion there of an abuse of discretion reversal at all."); id. at 78:17-19 (Campbell)("In my view, they looked at the trial court decision, Judge Hall's decision, and did not reverse him."), while it seems odd for an appellate court to reverse a denial of certification -- in the federal system, the Courts of Appeals will reverse district courts to decertify classes, but, going the other way, will typically only remand with, at most, an instruction to certify -- the Supreme Court of New Mexico unambiguously reversed[24] the district court in that case:

---

[24]The New Mexico Court of Appeals declined the defendants' request for an interlocutory appeal, so there is no intermediate appellate-level opinion in Davis v. Devon Energy Corp.  See Davis v. Devon Energy Corp., Nos. 28,154 & 28,147 (N.M. Ct. App. Jan. 30, 2008)(Alarid &

> We therefore reverse the district court's denial of class certification under Rule 1-023(B)(3) and remand to the district court.
>
> . . . .
>
> D.     WE REVERSE THE DISTRICT COURT'S DENIAL OF CLASS CERTIFICATION UNDER RULE 1–023(B)(3)
>
> . . . .
>
> . . . We therefore reverse the district court's denial of certification . . .
>
> . . . .
>
> For the reasons stated above, we affirm the district court's certification of the classes under Rule 1-023(B)(2).  We reverse the district court's denial of certification under Rule 1-023(B)(3) and remand to the district court.  While our ruling requires certification of these classes under both (B)(2) and (B)(3) at this stage, the district court retains its broad discretion to manage these class actions as this litigation progresses.

Davis v. Devon Energy Corp., 2009-NMSC-048, ¶¶ 2, 26, 28, 40, 218 P.3d at 77, 83, 84, 87 (boldface omitted from heading).

As for ConocoPhillips' contention that the district court in Davis v. Devon Energy Corp. ruled that the marketable-condition rule is an implied-in-law term -- rather than concluding that it is an implied-in-fact term, as the Court characterized its ruling in the footnote -- the truth cannot be ascertained.  It appears that the Supreme Court, in Ideal v. Burlington Resources Oil & Gas Co. LP, 2010-NMSC-022, 233 P.3d 362, retrospectively characterized the Davis v. Devon Energy Corp. district court's decision as ConocoPhillips contends.  See 2010-NMSC-022, ¶ 7, 233 P.3d at 365 ("From a review of the record in this case, we are not sure whether the district court concluded that the marketable condition rule applied as a matter of law, as did the district

---

Fry, JJ.)(titled "Orders on Defendants' Motion to Consolidate Appeals, Defendants' Conditional Application of Interlocutory Appeal, and Plaintiff's Application for Interlocutory Appeal") ("Defendants' Conditional Application for Interlocutory Appeal and Plaintiff's Application for Interlocutory Appeal are DENIED."  (emphasis omitted)).

judge in Davis." (citing Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 37)).  After re-reading Davis v. Devon Energy Corp. -- including ¶ 37, the paragraph to which the Supreme Court pincites for that proposition -- and pulling the district court's opinion, see Davis v. Devon Energy Corp., No. D-0101-CV-2003-01590 (N.M. Dist. Ct., 1st Jud. Dist., Cnty. of Santa Fe Aug. 20, 2007)(Hall, J.)("Davis Dist. Ct. Op."), the Court can find no indication whether the district court concluded that the marketable-condition was implied in fact or in law.  The district court appeared either to assume the marketable-condition rule's existence or to put off deciding the question whether it exists for the case's post-certification stage.  See Davis Dist. Ct. Op. at 6-7.  Either way, the district court accepted the rule's applicability as a common question for the purpose of the commonality and predominance analyses.  See Davis Dist. Ct. Op. ¶¶ a-f, at 6. The district court's only word on the matter was the following:

> The Court concludes that Davis has satisfied his burden of identifying common questions of law and fact.  The factual issue of whether CBM is in a marketable condition as it leaves the wellhead from the Fruitland Formation appears to be the same issue for all CBM that is produced.  Although the Defendants contest whether CBM is marketable at the wellhead, the Defendants do not identify any rationale under which the answer to the marketability question would be different as to Davis compared to others in the class.

> The record also establishes that Devon and Blackwood apply a standardized methodology in calculating royalties with a special distinction made only for leases with "same as fed" language.  Given Defendants' standardized methodology, at least some common questions of law arise as to the appropriateness of Defendants' conduct in relation to the marketable condition rule.

Davis Dist. Ct. Op. at 6-7.

Whether the district court concluded that the marketable-condition rule was implied in law or in fact, however, is unimportant in light of the Supreme Court's holding, which reversed the district court, because the district court treated the marketable-condition rule as if it were an implied-in-fact term:

In denying class certification under Rule 1-023(B)(3), the district court . . . determined that under <u>Continental Potash</u>, it must examine the language from each royalty agreement to determine if its express terms addressed whether the costs of making CBM gas marketable could be deducted from the royalty calculations.  It found that Defendants established that the express terms of the contracts vary: there are at least nineteen different variations in <u>Davis</u> . . . .  Thus, according to the district court, it would be "impossible to conclude that the contract analysis would be the same for the proposed class members," and therefore the individualized inquiries required under <u>Continental Potash</u> predominate over any common issues of law or fact.

The district court also concluded that under <u>Mark V</u>

the court would be required at a minimum to receive evidence on relevant usage of trade, course of dealing and course of performance to determine whether an ambiguity exists in the express terms of the contracts.  Even for those contracts that have the same express terms, it may be necessary to receive evidence regarding the circumstances surrounding the making of the individual contracts.

In sum, the court concluded that because it must look to the express language of potentially thousands of contracts under <u>Continental Potash</u>, as well as extrinsic evidence of the parties' intentions under <u>Mark V</u>, "[m]anagement of a [(B)(3)] class action under the various claims for damages would be extremely difficult."  It stated that "[w]ith the opportunity to present evidence to determine whether each contract is ambiguous, the evidentiary presentations on the variety of contract terms would overwhelm the case." . . .

. . . .

The district court apparently relied on our use of the term "implied covenant" to describe the duty to market in <u>Darr</u>, 66 N.M. at 263, 346 P.2d at 1044, in determining that the provisions of Continental Potash applied to a determination of whether the marketable condition rule may be implied as a covenant in each royalty agreement.  115 N.M. at 704, 858 P.2d at 80 (discussing when covenants may be implied in mining contracts).  What <u>Continental Potash</u> failed to make clear, however, is that there are different types of "covenants" that may be implied in a given agreement, and depending on the nature of the promise to be implied, different rules of construction apply.  In other words, <u>Continental Potash</u> is not applicable in all cases.

In determining whether a covenant may be implied in a given contract, courts must first determine the legal theory supporting the implication of that promise.  In implying a covenant, courts may either be effectuating the parties' intentions by interpreting the written terms of an agreement and analyzing the

parties' conduct, or they may be stating that a duty imposed by law creates an obligation on one or more of the parties to the agreement.  Depending on the nature of the implied promise, the court may or may not be required to interpret the parties' agreement and effectuate their intentions.

>When a court finds a promise by implication, its procedure may be nothing more than the ordinary interpretation of word symbols; *it may be the interpretation of a person's acts and other conduct not including words; it may be the judicial determination that a legal duty exists, stating the result in the language of promise without doing anything that can properly be called interpretation*; or it may be a combination of any two of these or of all three at once.

6 Arthur Linton Corbin, Corbin on Contracts § 561, at 1-2 (1979)(emphasis added).  Thus, in implying promises in contracts, courts must be clear if the "'implication' is true interpretation or is purely judicial construction."  Id. at 4.  The former requires an analysis of the parties' intentions.  The latter is merely a judicial determination of the duties the law imposes on the parties.

In this way, the basis supporting the implication of the promise or covenant determines the court's analysis.  If the court is identifying an implied legal duty of a party to a contract, it may do so regardless of the parties' intentions.  See, e.g., Sanders v. FedEx Ground Package Sys., Inc., 2008-NMSC-040, ¶ 7, 144 N.M. 449, 188 P.3d 1200 (stating that the implied covenant of good faith and fair dealing is implicit in every contract).  However, if a covenant or promise does not operate to impose a duty as a matter of law, any implied obligation must arise from the parties' intentions.  This latter "process of implication is treated instead as a process of interpretation, a process of logical and factual inference and not a pure construction or creation by the court."  6 Corbin, supra § 562, at 10.  We note that:

>It would probably be advantageous if when finding a promise by "implication" the court would ask itself whether it finds the promise by actual interpretation -- that is, by searching for the meaning given to the words of the contract by one or both of the parties [--] or is putting into promissory language its finding that a party to the contract ought now to act as if he had made such a promise even though nobody actually thought of it or used words that express it.

Id. § 561 at 4. It is this distinction that we did not make clear in Continental Potash.

Continental Potash applies to the process of interpreting an agreement and its surrounding circumstances to effectuate the parties' intentions, not to the

implication of a legal duty controlling the parties' conduct.  Continental Potash
held that the defendants did not have an implied duty to blend different grades of
potash and refrain from "high-grading" the mined potash, because "express
provisions in the contract according the defendants exclusive discretion and
control in the mining operations left no room for the implied covenants that the
trial court enforced against [them]."  115 N.M. at 703, 704-05, 858 P.2d at 79, 80-
81.  By looking to the express provisions of the parties' contract, this Court
determined that the parties intended that the defendants would have exclusive
control over certain mining operations.  Id. at 705, 858 P.2d at 81.  Thus, the
Court held that these implied covenants could not be implied as legal duties as a
matter of law.  Id. at 705-06, 858 P.2d at 81-82.  As a result, the analysis set forth
in Continental Potash only applies to those promises that may be implied because
the parties so intended them.  Its analysis does not apply to covenants that impose
legal duties upon contracting parties as a matter of law.

In this way, Continental Potash is inapplicable to the implication of the
marketable condition rule as announced by the district court in this case.  The
district court ruled that "under the implied duty to market, the marketable
condition rule applies in New Mexico."  (Emphasis added.)  In Darr, this Court
recognized the implied covenant "to make diligent efforts to market the
production in order that the lessor may realize on his royalty interest."  66 N.M. at
263, 346 P.2d at 1044 (internal quotation marks and citation omitted).  We
implied this legal duty on oil and gas producers in equity, without looking to the
language of the agreements or other evidence of the parties' intentions.  Darr, 66
N.M. at 264, 346 P.2d at 1044.  Therefore, given the district court's conclusion
that the duty to market, which applies in equity irrespective of the parties'
intentions, incorporates the duty to put CBM gas in a marketable condition (a
conclusion we do not review in this opinion), the requirements of Continental
Potash are likewise inapplicable to a determination of whether the marketable
condition rule may be implied in each royalty agreement.

For the same reasons that Continental Potash is inapplicable to this case,
the extrinsic evidence analysis required by Mark V is also unnecessary. . . .

In denying class certification under Rule 1–023(B)(3), the district court
relied exclusively on Continental Potash and Mark V to determine that
individualized issues predominated over common ones and that the class litigation
would not be a superior method for resolving Plaintiffs' claims because managing
the various claims for damages would be difficult.  Although we make no
decision in this opinion regarding the existence or the applicability of the
marketable condition rule, we believe that in light of our holding that Continental
Potash and Mark V are inapplicable to these class actions, the district court's
conclusion that the marketable condition rule has been incorporated in the
existing duty to market is sufficient to certify these classes under Rule
1-023(B)(3).  The primary issue to be litigated on remand is whether the costs
deducted by Defendants were necessary to make the CBM gas "marketable."

This is an issue common among all class members and is appropriate for class certification.

Davis v. Devon Energy Corp., 2009-NMSC-048, ¶¶ 26-37, 218 P.3d at 83-86.

The Supreme Court's analysis does what the Court said it did in the MOO's footnote: it declares -- to the point of reversing a district court that concluded otherwise -- that the marketable-condition rule is an implied-in-law term, while at the same time refusing to pass on the question whether the marketable-condition rule exists.  It is possible that the district court correctly categorized the rule as an implied-in-law term, or that it failed to recognized any distinction between implied-in-law and implied-in-fact terms; it really does not matter.  What matters is that the district court treated the rule the way that one would properly treat an implied-in-fact term, and it is on that ground that the Supreme Court reversed it.

The Court's point in the second-to-last paragraph of footnote 30 is that Davis v. Devon Energy Corp. is a difficult decision to handle in the Tenth Circuit's supervening-authority Erie analysis.  It comes tantalizingly close to announcing the marketable-condition rule's existence, despite "its unambiguous disclaimer to the contrary."  MOO at 85 n.30.  The district court ruled that the marketable-condition rule presented an individual issue, rather than a common one, because the district court effectively treated the rule as an implied-in-fact term.  The Supreme Court held that, if the rule exists, it is implied in law.  What makes the opinion hard to ignore is that -- it would seem to the Court -- if the Supreme Court is unwilling to declare that the rule exists at all, then the district court's misapplication of the rule -- to the defendants' benefit -- would be harmless.  That is, the Supreme Court, if it was unwilling to pass on whether the marketable-condition rule exists, should have concluded that the plaintiffs could, then, not prevail in vindicating their rights under the rule -- in that case, their right to class certification.  The Supreme Court of New Mexico's decision is akin to a federal appellate court issuing a three-

part decision (i) reversing a district court's dismissal of a claim in a qualified-immunity case; (ii) holding that the constitutional right in question "was clearly established if it existed at all"; and (iii) remanding the case to the district court to determine whether the constitutional right exists in the first place.

The Supreme Court of New Mexico's willingness to define the contours of a rule that it will not say exists may not be an everyday occurrence, but -- as the Court concluded in its footnote -- it is not cause for a federal court to read past the Supreme Court's plain language. See Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 14, 218 P.3d at 80 ("**WE DO NOT ADDRESS THE MARKETABLE CONDITION RULE.**"); MOO at 85 n.30 ("The Court, however, is reticent to defy the express declaration of a state's highest court in implementing the Erie doctrine, so it will not adopt [the marketable-condition rule]."). The Court is not sure what else ConocoPhillips wants the Court to say -- other than, of course, that the marketable-condition rule is bad, that the state courts should not adopt it, and that the Supreme Court has never come within a mile of adopting it, which are all things that the Court will not say. But cf. Class Certification MOO at 13 n.5 (critiquing the rule). ConocoPhillips also complains that the Court opined on the rule in detail without giving the Defendants the opportunity to brief the issue, see ConocoPhillips Tr. at 74:4-7 (Campbell)("We have no way to -- we certainly didn't brief the issue -- we have had no way to bring these statements to the Court's attention . . . ."); id. at 77:25-78:2 (Campbell)("[W]e did not brief any of the suggestions you made in that Footnote 7. We have not briefed nor had the opportunity to respond to the statements in your Footnote 30."), but here the Court is, ruling on a motion whose purpose is asking the Court to reconsider the things it said in the MOO, and ConocoPhillips has still not briefed the issue -- all the Court got from ConocoPhillips on this issue was a brief soliloquy at the hearing. In any case, the Court

- 79 -

does not see anything materially incorrect about its statements in the MOO, and the Court will, thus, leave its footnotes untouched.

**IT IS ORDERED** that: (i) the Motion for Reconsideration of Order Denying Defendants' Motion to Dismiss Based on Statute of Limitations, filed July 17, 2014 in <u>Anderson Living Trust v. WPX Prod., LLC</u>, No. CIV 12-0040 JB/WPL (Doc. 261), is denied; (ii) the Defendant's Motion to Dismiss Claims in Plaintiffs' Second Amended Complaint, filed October 18, 2013 in <u>Anderson Living Trust v. ConocoPhillips Co., LLC</u>, No. CIV 12-0039 JB/KBM (Doc. 97), is granted in part and denied in part; and (iii) the ninth, tenth, and twelfth causes of action in the Second Amended Complaint for Underpayment of Oil and Gas Royalties, filed September 27, 2013 in <u>Anderson Living Trust v. ConocoPhillips Co., LLC</u>, No. CIV 12-0039 JB/KBM (Doc. 91), are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Stan Koop
Norman, Oklahoma

--and--

Stephen R. McNamara
Brian Inbody
McNamara, Inbody & Parrish, PLLC
Tulsa, Oklahoma

--and--

Karen Aubrey
Santa Fe, New Mexico

--and--

Brian K. Branch
Albuquerque, New Mexico

--and--

Turner W. Branch
Cynthia Zedalis
Branch Law Firm
Albuquerque, New Mexico

--and--

Bradley D. Brickell
Brickell & Associates, P.C.
Norman, Oklahoma

      *Attorneys for the Plaintiffs*

Sarah Gillett
Dustin L. Perry
Hall Estill Hardwick P.C.
Tulsa, Oklahoma

--and--

Christopher A. Chrisman
Holland & Hart LLP
Denver, Colorado

--and--

Mark F. Sheridan
Bradford C. Berge
Robert J. Sutphin
John C. Anderson
Holland & Hart LLP
Santa Fe, New Mexico

      *Attorneys for the Defendants WPX Energy Production, LLC f/k/a WPX Energy San Juan,*
         *LLC; Williams Production Company, LLC; and WPX Energy Rocky Mountain, LLC,*
         *f/k/a Williams Production RMT, Company, LLC*

Michael B. Campbell
Santa Fe, New Mexico

--and--

Robert J. Sutphin
Adam G. Rankin
Holland & Hart, LLP
Santa Fe, New Mexico

*Attorneys for Defendant ConocoPhillips Company, LLC*