IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST f/k/a THE
JAMES H. ANDERSON LIVING TRUST;
THE PRICHETT LIVING TRUST; CYNTHIA
W. SADLER and ROBERT WESTFALL,

      Plaintiffs,

vs.                                              No. CIV 12-0040 JB/KBM

WPX ENERGY PRODUCTION, LLC f/k/a
WPX ENERGY SAN JUAN, LLC; WILLIAMS
PRODUCTION COMPANY, LLC and WPX
ENERGY ROCKY MOUNTAIN, LLC f/k/a
WILLIAMS PRODUCTION RMT
COMPANY, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Joint Memorandum Re Objections to Exhibits and Demonstrative Evidence, filed May 13, 2014 (Doc. 245)("Objections"). The Court held a hearing on the parties' objections on July 17, 2014. The primary issue is whether the Court should exclude certain Exhibits that the parties offer for admission at trial, because they are inadmissible under the Federal Rules of Evidence on grounds of: (i) authentication; (ii) foundation; (iii) hearsay; and (iv) relevance. The Court will sustain the Plaintiffs' objections in part and admit the Defendants' Exhibit 80 -- a record of a customer service call -- for the limited purpose of showing notice, but not for the truth of the matter asserted within Exhibit 80. The Court will overrule the Defendants' objections and admit the Plaintiffs' Exhibits 189 -- two letters that Plaintiff Robert Westfall sent to Defendant WPX Energy -- and 428 -- the Plaintiffs' expert witness' summary of the various royalty clauses. Finally, the Court will take possession

of the Plaintiffs' Demonstrative Exhibits 24 and 25 -- illustrations of the physical steps involved in oil and gas production -- and Demonstrative Exhibit 27 -- an illustration of the Plaintiffs' expert witness' summary of the royalty clauses, and use them as aids in drafting the Court's Findings of Fact and Conclusions of Law without admitting them into evidence.

## FACTUAL BACKGROUND

The Court has summarized the Plaintiffs' factual allegations on numerous occasions, see Memorandum Opinion at 5-9, filed June 28, 2013 (Doc. 108); Memorandum Opinion and Order at 2-6, filed May 16, 2014 (Doc. 246); Memorandum Opinion at 3-6, filed May 26, 2015 (Doc. 284). It incorporates by reference those discussions, and sets forth additional facts pertinent to the issues of this Memorandum Opinion and Order. This case is a proposed class action on behalf of landowners who executed long-term leases with the Defendants. See Fourth Amended Complaint for Underpayment of Oil and Gas Royalties ¶ 26, at 10-12, filed September 27, 2013 (Doc. 129)("Complaint"). The leases, which were executed largely in the 1940s, allow the Defendants to drill for natural gas on the Plaintiffs' land in exchange for a royalty payment -- usually one-eighth of the proceeds from sale. See Complaint ¶ 26, at 10-12. The Plaintiffs contend that the Defendants have been underpaying the royalties in a number of ways[1] -- most

---

[1] The Plaintiffs also allege, in addition to underpaying on natural-gas liquids, that: (i) the Defendants improperly deduct the costs of rendering the gas into marketable condition, see Complaint ¶¶ 102-105, at 32-33; (ii) the Defendants have failed to compensate the Plaintiffs for gas that the Defendants used off the leased premises to operate machinery, see Complaint ¶ 39, at 16; (iii) the Defendants have made late royalty payments without adding the statutorily prescribed interest, see Complaint ¶¶ 56-61, at 20-21; (iv) the Defendants based their royalty price off of affiliate-sale prices, rather than on proceeds yielded at arm's length transactions, see Complaint ¶ 33, at 14; and (v) the Defendants have improperly averaged royalty payments across multiple wells, thus resulting in some Plaintiffs being underpaid, see Complaint ¶ 12, at 5.

notably by paying royalties on natural-gas liquids at the same price per MMBtu[2] that they pay for natural gas, which is a cheaper product. The Plaintiffs seek damages for this underpayment going back to 1985. See Complaint ¶ 33, at 14.

The named Plaintiffs are individuals and trusts owned by individuals with no in-depth knowledge of the oil-and-gas industry. Owing to the leases' ages, no Plaintiff personally executed the lease that now pays his, her, or its royalty; rather, all of the named Plaintiffs inherited their royalty interests. See Complaint ¶ 26, at 10-12.

## PROCEDURAL BACKGROUND

The Plaintiffs filed their case in state court on October 20, 2011. See Anderson Living Trust v. Williams Prod. Co., D-117-CV-2011-00511 (1st Jud. Dist. Ct., Cnty. of Rio Arriba, State of N.M.)(Raphaelson, J.). The Defendants removed the case to federal court on January 12, 2012, see Notice of Removal, filed January 12, 2012 (Doc. 1), invoking federal subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). On January 20, 2014, WPX Energy Production, LLC and WPX Energy Rocky Mountain, LLC (collectively, WPX Energy), submitted the Defendants' preliminary list of exhibits for the class certification hearing. See Defendants' Preliminary Exhibit List, filed January 20, 2014 (Doc. 199). Defendants Williams Production Company, LLC and Williams Production RMT Company, LLC submitted their final exhibit list on March 6, 2014. See Defendants' Class Certification Exhibit List at 1, filed March 6, 2014 (Doc. 219). The Plaintiffs submitted their exhibit list on March 10,

---

[2]An MMBtu is 1,000,000 Btus. A Btu is a "British thermal unit," which is a unit of energy equivalent to approximately 1,055 joules. The joule (J) is the SI -- or International System of Units -- unit of energy, and it is the amount of energy required to exert one Newton (N) of force over a distance of one meter. A Newton is the amount of force required to accelerate one kilogram of mass by one meter per second-squared. See Memorandum Opinion and Order ¶¶ 66-67 & nn.6-7, at 16, filed March 19, 2015 (Doc. 278).

2014. See Plaintiffs' Witness List, filed March 10, 2014 (Doc. 224). The Defendants filed their initial objections to the Plaintiffs' exhibit list on March 7, 2014. See Defendants' Objections to Plaintiffs' Exhibit List, filed March 7, 2014 (Doc. 221). The Court held a hearing on the Plaintiffs' Motion for Class Certification between March 10, 2014 and March 12, 2014, and from April 3, 2014 to April 4, 2014. At the hearing, the parties agreed to allow the Court to hear the evidence from the disputed exhibits at the hearing, and to decide the objections when the Court wrote its opinion. See Tr. of Hearing at 1034:3-12 (Court, Zedalis)(taken April 4, 2014), filed June 26, 2014.

Following the hearing, the parties resolved "all but a few of their objections to exhibits and demonstrative evidence." See Objections at 1. On May 13, 2014, all of the parties submitted a joint memorandum enumerating the disputed exhibits and demonstrative evidence that they propose to have the Court admit in writing its Findings of Fact and Conclusions of Law on the Plaintiffs' Motion for Class Certification. See Objections at 1. The Plaintiffs object to the Defendants' Exhibit 80. The Defendants object to: (i) the Plaintiffs' Exhibits 189 and 428; and (ii) the Plaintiffs' Demonstrative Exhibits 24, 25, and 27. The Court held a hearing on July 17, 2014. See Transcript of Hearing (taken July 17, 2014)("Tr.").[3]

### 1. **The Plaintiffs Object to Defendants' Exhibit 80 -- a Record of a Customer Service Call.**

The Plaintiffs object to Defendants' Exhibit 80, described as "Customer Service Interoffice Call Sheet re: Michael, Bank of America," which the Defendants offered during the March 12, 2014 testimony of Julie Mathis, the director of revenue and regulatory accounting at WPX Energy. Customer Service Hotline Interoffice Call Sheet (dated February 29), filed May

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

13, 2014 (Doc. 245-1).  See Objections at 2.  Exhibit 80 is a brief, three-page summary of a telephone conversation between a royalty owner and a WPX Energy customer service agent.  See Objections at 2.  The Plaintiffs object "on the grounds, and to the extent, that it (a) lacks authentication; (b) lacks foundation; (c) constitutes hearsay; and (d) is irrelevant."  Objections at 2 (citing Fed. R. Evid. 402, 403, 802, 901, 1001, and 1002).  The Plaintiffs contend that Mathis did not identify Exhibit 80 "as relating to any plaintiff or class member -- or even any well that is associated with the purported class."  Objections at 2.  Moreover, they argue that Exhibit 80 was undated and could fall outside the claim period.  See Objections at 2.  They also assert that Mathis never identified Exhibit 80 as a business record and never stated that she had seen it before this case.  Objections at 2.  The Defendants respond that the Plaintiffs have already stipulated to both authentication and hearsay.  See Objections at 4 (citing Stipulation for Purposes of Class Certification ¶ 23, at 5, filed March 10, 2014 (Doc. 223)("Stipulation")).  Regarding the Plaintiffs' objections on relevance and foundation, they argue that the record indicates that the "sponsoring witness did provide the requisite underlying information to render the document admissible."  Objections at 4.

At the hearing, the Court proposed admitting Exhibit 80 with a limiting instruction to itself that the document "not be used for the truth of the matter," but only to show notice that the customers called with questions and complaints.  Tr. at 3:10-25 (Court).  The Plaintiffs agreed to the Court's proposal.  See Tr. at 4:2-6 (Court, Zedalis).  The Defendants contended that it was a business record and the Court should therefore admit Exhibit 80 for the truth of the matter asserted.  See Tr. at 4:16-18 (Gillett).

> **2.    The Defendants Object to the Plaintiffs' Exhibit 189, Two Letters that Plaintiff Robert Westfall Sent to Defendant WPX Energy.**

The Defendants object to the Plaintiffs' Exhibit 189 because it "represents only four (4) pages out of a complete packet of information maintained and produced by WPX and because Plaintiffs never used Exhibit 189 in their presentation at the class certification hearing," so they did not lay a foundation. Objections at 9. Exhibit 189 consists of two letters that Plaintiff Robert Westfall sent to WPX Energy in 2006 inquiring why he was not receiving monthly payments. See Objections at 9. The remainder of the file includes a record of Westfall's communications with WPX Energy. See Objections at 9. The Defendants argue that introducing only the first four pages "is misleading and unfair; it allows Plaintiffs to attempt to paint an inaccurate picture of the extensive communications between Mr. Westfall and WPX." Objections at 10.

The Plaintiffs respond that "WPX was free to seek admission of the remaining pages of the file that they now request the Court to include in the exhibit," but that it failed to do so. Objections at 10. At the hearing, the Court asked whether the parties objected to admitting the entire exhibit rather than the four pages. See Tr. at 7:12-24 (Court, Gillett, Zedalis). Both parties agreed to introduce the entire file as an exhibit. See Tr. at 7:12-24 (Court, Gillett, Zedalis).

> **3.    The Defendants Object to the Plaintiffs' Exhibit 428 -- the Plaintiffs' Expert Witness' Summary of Royalty Clauses -- and Demonstrative Exhibit 27 -- an Illustration of the Expert's Summary.**

The Defendants object to Plaintiffs' Exhibit 428 -- the Plaintiffs' expert witness' summary of the various royalty clauses -- on the ground that it "omits important information from the leases' royalty provisions, rendering it inaccurate, misleading, and unreliable." Objections at 11. Demonstrative Exhibit 27 -- a demonstrative illustration of the Plaintiffs' expert witness' summary of the royalty clauses -- is derived from Exhibit 428 and therefore

presents the same problems to admissibility that the Defendants have with Exhibit 428. See Objections at 22-23 (objecting to Demonstrative Exhibit 27 on the same grounds as Exhibit 428). The Defendants assert that these exhibits violate rule 702 of the Federal Rule of Evidence, which requires an expert's opinion to be based on sufficient facts and data, and violate rule 1006 of the Federal Rules of Evidence, because they do not accurately summarize the underlying leases. See Objections at 17. The Plaintiffs respond that the Defendants' objections "challenge the weight, not the admissibility, of Plaintiffs'" exhibits. Objections at 17. The Court indicated that it was inclined to admit both exhibits, because "most of the arguments that the Defendants were making against 428 were cross-examination material." Tr. at 11:12-14 (Court).

### 4. The Defendants Object to the Plaintiffs' Demonstrative Exhibits 24 and 25 -- Illustrations of the Physical Steps Involved in Oil and Gas Production.

The Defendants assert that the Plaintiffs' proposed Demonstrative Exhibits 24 and 25 "are argumentative, not demonstrative; and, more importantly, they are inaccurate and misrepresent facts." Objections at 19. They argue that the "purpose of demonstrative evidence is to illustrate difficult factual issues as an aid to the fact-finder" in evaluating evidence. Objections at 19. They contend that Demonstrative Exhibit 24 does not serve this purpose because it inaccurately states that WPX Energy does not pay royalties on "drip condensate or oil, on natural gas liquids, and on gas sold to the WPX marketing entity at the tailgate of the Williams Field Services Ignacio plant." Objections at 20. The Defendants assert that the Plaintiffs stipulated that WPX Energy pays royalty on gas that WPX Energy Gas Marketing purchases at the tailgate. See Objections at 20 (citing Stipulation ¶¶ 10-11, at 3). They argue that "Demonstrative Exhibit 25 suffers from the same deficiencies" as Demonstrative Exhibit 24. Objections at 21.

The Plaintiffs respond that the Defendants mischaracterize Demonstrative Exhibits 24 and 25, which "aided the testimony of Plaintiffs' oil and gas engineering expert, Dan Reineke." Objections at 21.  They argue that the exhibits' purpose was to explain the physical production steps for conventional oil and gas, and to diagram where the natural gas liquids were extracted and where the arm's length sales occurred.  See Objections at 21.  The Plaintiffs also assert that the exhibits "clearly and accurately reflect the WPX stipulations."  Objections at 22.

## LAW REGARDING RELEVANCE

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 801.  "Rule 402 of the Federal Rules of Evidence provides that relevant evidence is admissible, unless otherwise provided by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other Supreme Court rules, while 'irrelevant evidence is not admissible."  Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5378288, at *7 (D.N.M. Oct. 29, 2012)(Browning, J.)(quoting Fed. R. Evid. 402).  Relevant evidence may nonetheless be excluded pursuant to rule 403 if the danger of unfair prejudice, presenting cumulative evidence, or wasting time substantially outweighs the evidence's probative value. See Fed. R. Evid. 403; Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., No. CIV02-1146JB/LFG, 2007 WL 2296903, at *9 (D.N.M. June 26, 2007) (Browning, J)("Rule 403 authorizes a trial court to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" (quoting Fed. R. Evid. 403 (2007))).

**LAW REGARDING HEARSAY**

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c) of the Federal Rules of Evidence, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay."). Rule 805 recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. A party opponent's statement is excluded from the definition of hearsay where:

> The statement is offered against an opposing party and:
>
> **(A)** was made by the party in an individual or representative capacity;
>
> **(B)** is one the party manifested that it adopted or believed to be true;
>
> **(C)** was made by a person whom the party authorized to make a statement on the subject;
>
> **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

>    **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).  As the United States Court of Appeals for the Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

<u>Grace United Methodist Church v. City of Cheyenne</u>, 451 F.3d 643, 667 (10th Cir. 2006)(alterations omitted)(internal quotations and alterations omitted).[4]

## **ANALYSIS**

Because the Defendants' Exhibit 80 contains inadmissible hearsay, the Court will sustain the Plaintiffs' objections in part and admit the Defendants' Exhibit 80 only for the limited purpose of showing the Plaintiffs had notice that they could call the Defendants regarding their royalty payments, but not for the truth of the matter asserted within the Exhibits.  The Court will

---

[4]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d), and uses instead the term "statements."  Fed. R. Evid. 801(d).  This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made."  Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee made the commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules.  Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 is still be useful for cases after the restyling.  Fed. R. Evid. 801, advisory committee's note on 2011 amends.

also overrule the Defendants' objections and admit the Plaintiffs' Exhibits 189 and 428.  Finally, the Court will take the Plaintiffs' Demonstrative Exhibits 24, 25, and 27 into consideration as it puts together its Findings of Fact and Conclusions of Law without admitting them into evidence.

**I.    THE COURT WILL ADMIT THE DEFENDANTS' EXHIBIT 80 FOR THE LIMITED PURPOSE OF SHOWING THAT THE PLAINTIFFS HAD NOTICE THAT THEY COULD CALL THE ROYALTY HOTLINE WITH COMPLAINTS.**

The Plaintiffs object to Exhibit 80 -- a summary of a telephone conversation between a royalty owner and a WPX Energy customer service agent -- on grounds that "it (a) lacks authentication; (b) lacks foundation; (c) constitutes hearsay; and (d) is irrelevant."  Objections at 2.  Exhibit 80 is a three-page document, described as a "Customer Service Interoffice Call Sheet re: Michael, Bank of America," that records the fact that a Bank of America employee named Michael called WPX Energy's customer service hotline.  Objections at 2.  At the hearing, the Plaintiffs waived their foundation and authentication objections, and agreed to admit the document for a limited purpose, but maintained their hearsay objections.  See Tr. at 4:2-6 (Court, Zedalis).  Exhibit 80 meets the Federal Rules of Evidence's foundation and authenticity requirements.  See Fed. R. Evid. 901.

First, the sponsoring witness identified and explained the nature of the Royalty Hotline and that Exhibit 80 reflects communications from a royalty owner to a WPX Energy customer service agent on the Royalty Hotline.  See Tr. at 275:3-20 (explaining that the Royalty Hotline responds to royalty owners' telephone calls, emails, and letters).  Second, her testimony establishes that Exhibit 80 relates to a royalty owner with an interest burdening a well in "Company 50," which refers to WPX's predecessor, Williams Production Company, which owned wells in the San Juan Basin -- the same area involved in this dispute.  Further, Exhibit 80 reflects that the caller was a Bank of America employee named Michael.  Bank of America

serves as the trustee representative for one potential class representative -- the Minnie Patton Scholarship Foundation Trust -- and for three named Plaintiffs: Lee Wiley Moncrief 1988 Trust, Kelly Cox Testamentary Trust 7/1238401, and SWMF Properties, Inc. See Objections at 8. Accordingly, the testimony establishes that Exhibit 80 relates to a class member. The Defendants also demonstrate that the call fell within the class period:

> Plaintiffs seek to certify a class of current and former royalty and overriding royalty interest owners dating back to 1985, and personnel records reflect that the revenue accountant who was the ultimate recipient of the Bank of America question, Brent Selph, was employed by WPX as a revenue accountant from April 17, 2006 to June 28, 2011, an approximately five-year period that falls within the class period.

Objections at 8. Rule 901 requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). A knowledgeable witness is sufficient to authenticate a document. See Fed. R. Evid. 901(b)(1). Because Mathis testified to the nature of the Royalty Hotline and the specifics of Exhibit 80, the Defendants satisfy the Federal Rules of Evidence's foundation and authentication requirements.

Exhibit 80 also satisfies the Federal Rules of Evidence's relevancy requirements. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 801. That the Plaintiffs knew they could call the Defendants with questions and complaints regarding royalty payments tends to make a fact of consequence more or less probable. See Fed. R. Evid. 801. Specifically, the Plaintiffs seek to toll the commencement of the applicable statute of limitations by relying on equitable doctrines -- namely, the discovery rule, fraudulent concealment, equitable estoppel, and continuing wrong. See Objections at 8. Exhibit 80 tends to show that the Plaintiffs could have discovered royalty underpayments earlier, and could have brought this case earlier. The Court therefore finds that Exhibit 80 meets rule

403's relevancy requirement. Moreover, the Plaintiffs agreed to admit Exhibit 80 under the Court's limiting instruction at the hearing. See Tr. at 4:2-6 (Court, Zedalis).

Although relevant, Exhibit 80 contains out-of-court statements between the caller -- a Bank of America employee -- and the Royalty Hotline representative. Under rule 801(c), "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Federal Rules of Evidence provide an exception for records of a regularly conducted activity. See Fed. R. Evid. 803(6). Although the parties stipulate that all documents that Defendant WPX Energy produces are "business records of the company" and maintained "in the ordinary course of WPX's business," the parties do not stipulate that all of the Defendants records constitute "Records of a Regularly Conducted Activity" within the meaning of the Federal Rules of Evidence. Fed. R. Evid. 803(6). See Stipulation ¶ 23, at 5. Moreover, the Defendants do not demonstrate that Exhibit 80 constitutes a business record within the meaning of rule 803(6) of the Federal Rules of Evidence. See Stipulation ¶ 23, at 5. Exhibit 80 does not fit into rule 803(6)'s exception, because the Defendants did not show: (i) that WPX Energy made "the record at or near the time" by "someone with knowledge," because they cannot identify the date that WPX Energy made the document, see Objections at 3; and (ii) that WPX Energy has a regular practice of making these records when it receives such calls, see Objections at 3-4. The Court recognizes that Exhibit 80 could fit into the business records exception and that the Defendants could make this showing, but the Defendants did not demonstrate that Exhibit 80 met all of rule 803(6)'s requirements at the hearing. Additionally, a custodian of the records "or another qualified witness" did not establish that Exhibit 80 met rule 803(6)'s requirements. Fed. R. Evid.

803(6). The documents are thus inadmissible to prove the truth of the matter asserted under rule 803(6). See Fed. R. Evid. 803(6).

Nevertheless, the Court can admit the document for a permissible purpose other than to prove the truth of the matter asserted, including to show notice. "[T]estimony is not hearsay when i[t] is [offered] to prove only that a statement was made and not the truth of the statement." Creaghe v. Iowa Home Mut. Cas. Co., 323 F.2d 981, 984 (10th Cir. 1963)(citing Aikins v. United States, 282 F.2d 53 (10th Cir. 1960)). Statements offered not to prove the truth of the statements, but rather "offered for the effect on the listener [] are generally not hearsay." Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993). See United States v. Smalls, 605 F.3d 765, 785 n.18 (10th Cir. 2010)("[S]tatements offered for their effect on the listener are not hearsay."). Thus, statements offered to show that the listener was on notice of a fact are not hearsay. See Thornburg v. Mullin, 422 F.3d 1113, 1128 (10th Cir. 2004). The Court may admit Exhibit 80 as nonhearsay to show that Bank of America, the trustee representative for three named Plaintiffs: Lee Wiley Moncrief 1988 Trust, Kelly Cox Testamentary Trust 7/1238401, and SWMF Properties, Inc., was on notice that it could call the Royalty Hotline regarding royalty payments. The Court will therefore admit Exhibit 80 with a limiting instruction that it will not be used for the truth of the matter, but only to show notice.[5]

---

[5]When the Court admits testimony for a limited purpose that would otherwise be inadmissible hearsay under rule 802, the Court provides a limiting instruction to the factfinder to limit the possibility that the evidence will be used improperly. See, e.g., United States v. Christy, 2011 WL 5223024, at *9 (noting that, where the defendant wanted to offer evidence of the defendant's statement to show the effect it had on him, "the Court can mitigate any concerns which the United States has that Christy will use the evidence [to] raise a necessity defense with a limiting instruction and [by also] omitting any instruction on a necessity defense from the jury charge"); E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, No. CIV 02-1644 JB/RHS, 2008 WL 2323492 (D.N.M. Mar. 20, 2008)(Browning, J.)("[T]he Court believes it should allow the introduction of what Edgar knew in 2001, with, if reported, a limiting instruction."); Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591JB/RHS, 2009 WL 1325440 (D.N.M. April 6,

**II.     THE COURT WILL ADMIT THE PLAINTIFFS' EXHIBIT 189, TWO LETTERS THAT PLAINTIFF ROBERT WESTFALL SENT TO DEFENDANT WPX ENERGY.**

Because both parties agree to admit the entire file as an exhibit, and doing so resolves any dispute regarding Exhibit 189, the Court will admit Exhibit 189 in its entirety.  See Tr. at 7:12-24 (Court, Gillett, Zedalis).

**III.    THE COURT WILL ADMIT THE PLAINTIFFS' EXHIBIT 428, THE PLAINTIFFS' EXPERT WITNESS' SUMMARY OF VARIOUS ROYALTY CLAUSES.**

The Defendants object to the Plaintiffs' Exhibit 428 on the grounds that it "omits important information from the leases' royalty provisions, rendering it inaccurate, misleading, and unreliable."  Objections at 11.  Exhibit 428 and Demonstrative Exhibit 27 -- derived from the information in Exhibit 428 -- provides expert Randy Kaplin's summary of "the pertinent phrases" in the Plaintiffs' lease provisions. Objections at 11.  The Defendants assert that these exhibits violate rules 702 and 1006, because they do not accurately summarize the underlying leases.  See Objections at 17.  The Court concludes that the Defendants' objections challenge the exhibits' weight -- not their admissibility -- and are therefore admissible.

Rule 702 requires experts' opinions to be based on sufficient facts and data.  See Fed. R. Evid. 702.  The Defendants argue that Kaplin's conclusions are flawed, but not that he based his conclusions on impermissible facts and data.  See Objections at 12-13.  These arguments do not demonstrate that Kaplin based his conclusions on improper facts and data in contravention of

---

2009)(Browning, J.)("The Defendants' proposed purpose, so long as they limit their use of the statements to the effect of the statements on the listeners or other non-hearsay uses, is acceptable. The Court will not exclude the MVD officials' statements, but will give the jury a limiting instruction.").  In this case, however, because the hearing is to the bench and the Court will play the role of the factfinder, a limiting instruction need not be given, as the Court will properly limit the admissibility of the evidence when considering it at the hearing, and in its preparation of the Findings of Fact and Conclusions of Law.

rule 702.  Kaplin's decision to omit certain language from his summary of important contractual language was a judgment call based on his personal expertise.  That he omitted certain language that the Defendants' expert believes is relevant suggests only that the experts disagree.  In sum, the Defendants' arguments attack the evidence's weight rather than its admissibility.  "The [exhibit] may be as flawed as Defendants think . . . but it's not inadmissible."  Tr. at 12:5-7 (Court).

Similarly, the Plaintiffs do not show that Exhibit 428 violates rule 1006.  Rule 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  Kaplin's summary is based on admissible evidence -- the leases' language -- and does not misstate the facts.  The Plaintiffs have introduced no other evidence to show that Exhibit 428 violates rule 1006.  Moreover, Exhibit 428 is not more prejudicial than probative and therefore does not violate rule 403.  See Fed. R. Evid. 403.  Exhibit 428 adds substantial probative value by summarizing complex, detailed contractual language and parsing out what at least one expert considers to be the relevant language.  The Defendants can rebut any prejudice by challenging Exhibit 428's findings on cross-examination and through the testimony of their own expert.  Accordingly, the Court overrules the Defendants' objection and admits Exhibit 428.  The Court will not admit Demonstrative Exhibit 27, but will take possession of it, and use it as an aid in preparing the Findings of Fact and Conclusions of Law.

IV.     **THE COURT WILL RELY ON THE PLAINTIFFS' DEMONSTRATIVE EXHIBITS 24, 25, AND 27 IN PREPARING ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW, BUT WILL NOT ADMIT THEM INTO EVIDENCE.**

Both parties at the hearing agreed to allow the Court to use the Plaintiffs' Demonstrative Exhibits 24, 25, and 27 in reaching its decision without formally admitting them. See Tr. at 9:1-10:5 (Court, Gillett, Sutphin, Zedalis); id. at 13:22-14:5 (Court). Accordingly, the Court will use Demonstrative Exhibits 24, 25, and 27 in reaching its decision, but it will not admit them into evidence.

**IT IS ORDERED** that: (i) the objections in the Joint Memorandum Re Objections to Exhibits and Demonstrative Evidence, filed May 2013, 2014 (Doc. 245) are overruled in part and sustained in part; (ii) the Court will admit the Defendants' Exhibit 80 for the limited purpose of showing that the Plaintiffs had notice that they could use WPX Energy's Royalty Hotline to dispute their royalty payments, but not for the truth of the matter asserted within Exhibit 80; (iii) the Court will admit the Plaintiffs' Exhibits 189 and 428; and (iv) the Court will take the Plaintiffs' Demonstrative Exhibits 24, 25, and 27 into consideration when preparing the Findings of Fact and Conclusions of Law, but will not admit them into evidence.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Stan Koop
Norman, Oklahoma

--and--

Stephen R. McNamara
Brian Inbody
McNamara, Inbody & Parrish, PLLC
Tulsa, Oklahoma

--and--

Brian K. Branch
Albuquerque, New Mexico

--and--

Karen Aubrey
Santa Fe, New Mexico

--and--

Turner W. Branch
Cynthia Zedalis
Branch Law Firm
Albuquerque, New Mexico

--and--

Bradley D. Brickell
Brickell & Associates, P.C.
Norman, Oklahoma

  *Attorneys for the Plaintiffs*

Sarah Gillett
Dustin L. Perry
Hall Estill Hardwick P.C.
Tulsa, Oklahoma

--and—

Christopher A. Chrisman
Holland & Hart LLP
Denver, Colorado

--and--

Mark F. Sheridan
Bradford C. Berge
Robert J. Sutphin
John C. Anderson
Holland & Hart LLP
Santa Fe, New Mexico

      *Attorneys for the Defendants*