## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST f/k/a THE
JAMES H. ANDERSON LIVING TRUST;
THE PRICHETT LIVING TRUST; CYNTHIA
W. SADLER and ROBERT WESTFALL,

       Plaintiffs,

vs.                                                              No. CIV 12-0040 JB/KBM

WPX ENERGY PRODUCTION, LLC f/k/a
WPX ENERGY SAN JUAN, LLC; WILLIAMS
PRODUCTION COMPANY, LLC and WPX
ENERGY ROCKY MOUNTAIN, LLC f/k/a
WILLIAMS PRODUCTION RMT
COMPANY, LLC,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Amended Motion to Require Amendment of Pleadings to Eliminate Class Allegations, filed June 9, 2016 (Doc. 334)("Motion").  The Court held a hearing on August 18, 2016.  The primary issue is whether the Court should require the Plaintiffs to amend their Fifth Amended Complaint for Underpayment of Oil and Gas Royalties, filed April 26, 2016 (Doc. 323)("Fifth Complaint"), to eliminate class allegations when the Court has not yet determined whether their new implied-duty-to-market claim can proceed as a class claim.  Although the Plaintiffs may not pursue class certification on the claims for which the Court has already denied class certification in the Memorandum Opinion and Order, filed March 19, 2015 (Doc. 278)("Class Certification MOO"), the Court will not require the Plaintiffs to amend their pleadings to eliminate those class claims.  Furthermore, because the Court has not determined whether the new claim can proceed as a class

claim, the Court will not require the Plaintiffs to strike the class allegations from their pleadings on the Plaintiffs' new implied-duty-to-market claim.  The Court therefore denies the Defendants' Motion.

## **FACTUAL BACKGROUND**

This case is an oil-and-gas dispute between numerous land-owner Plaintiffs -- the Anderson Living Trust,  f/k/a The James H. Anderson Living Trust; The Pritchett Living Trust; Cynthia W. Sadler; Robert Westfall; Lee Wiley Moncrief 1988 Trust; Kelly Cox Testamentary Trust 7/1238401; Minnie Patton Scholarship Foundation Trust And SWMF Properties, Inc. -- and oil-and-gas companies -- Defendants WPX Energy Production, LLC f/k/a WPX Energy San Juan, LLC and Williams Production Company, LLC; and WPX Energy Rocky Mountain, LLC, f/k/a Williams Production RMT Company, LLC -- regarding royalty payment disputes.  The Court has already discussed the specific facts of this case in previously published opinions.  See, e.g., Anderson Living Trust v. ConocoPhillips Co., LLC, 952 F. Supp. 2d 979 (D.N.M. 2013)(Browning, J.)("First MTD MO"); Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1192-95 (D.N.M. 2014)(Browning, J.)("Second MTD MOO"); Anderson Living Trust v. WPX Energy Prod., LLC, 2015 WL 3543011 (D.N.M. May 26, 2015)(Browning, J.).  In this opinion, the Court will address only the facts relating to this dispute.

This case is a proposed class action on behalf of landowners who executed long-term leases with the Defendants.  See Fifth Complaint ¶¶ 1-21, at 2-8.  The leases allow the Defendants to drill for natural gas on the Plaintiffs' land in exchange for a royalty payment -- usually one-eighth of the proceeds from sale.  See Fifth Complaint ¶¶ 9-14, at 4-5. The Plaintiffs contend that the Defendants have been underpaying the royalties in a number of ways -- most

notably by paying royalties on natural-gas liquids at the same price per MMBtu[1] that they pay for natural gas, which is a cheaper product.  See Fifth Complaint ¶¶ 9-72, at 2-21.

## PROCEDURAL BACKGROUND

The Plaintiffs filed a motion for class certification on January 6, 2014.  See Plaintiffs Kelly Cox Testamentary Trust 7/1238401, Lee Wiley Moncrief 1988 Trust, Minnie Patton Scholarship Foundation Trust, SWMF Properties, Inc., Cynthia W. Sadler, The Anderson Living Trust, The Pritchett Living Trust, Robert Westfall's Motion to Certify Class, filed January 6, 2014 (Doc. 194)("Motion for Class Certification").  On March 19, 2015, the Court denied the Plaintiffs' Motion for Class Certification.  See Class Certification MOO at 1-2.  The Court will describe the rulings after the Class Certification MOO to provide a background in which to understand the arguments relevant to the current Motion.

### 1. The Class Certification MOO.

In the Class Certification MOO, the Court stated that the Plaintiffs must satisfy rule 23's requirements to proceed as a class action.  See Class Certification MOO at 231.  "To be certified under rule 23(b)(3), a class must meet all four of rule 23(a)'s requirements -- numerosity, commonality, typicality, and adequacy -- and both of rule 23(b)(3)'s requirements -- predominance and superiority."  Class Certification MOO at 231.  The Court concluded that, "although the underpayment claims satisfy rule 23(a)'s other requirements, they lack commonality under rule 23(a)(2)."  Class Certification MOO at 231.  Second, the Court determined that "the underpayment claims fail to satisfy rule 23(b)(3)'s predominance requirement."  Class Certification MOO at 231.  The Court therefore denied the Plaintiffs' motion to certify the case as a class action.  See Class Certification MOO at 283.

---

[1]An MMBtu, which is 1,000,000 Btus, is a unit of measurement used in the natural gas industry.  See Class Certification MOO ¶¶ 66-67 & nn.6-7, at 16.

2.      **The Motion to Reconsider and Subsequent Briefing.**

The Plaintiffs filed a Motion for Reconsideration on June 1, 2015.  See Plaintiffs' Motion

for Reconsideration of Order Denying Class Certification, filed June 1, 2015 (Doc. 288).  The

Court declined to change its denial of class certification based on the class' claims.  It stated,

however, that the breach of the implied-duty-to-market claim might provide a path for class

certification.  See Anderson Living Trust v. WPX Energy Prod., LLC, 312 F.R.D. 620, 637

(D.N.M. 2015)(Browning, J.), Memorandum Opinion And Order, filed December 31, 2015 (Doc.

306)("Reconsideration MOO").[2]  The Plaintiffs then filed the Fifth Complaint to include the

---

[2]The Court explained that the implied duty to market has two components, one of which -
- the marketable-condition rule -- the Supreme Court of New Mexico has not yet recognized.
See First MTD MO, 952 F. Supp. 2d at 1046-49; Second MTD MOO, 27 F. Supp. 3d at 1248.
The Plaintiffs originally alleged that the Defendants violated the marketable-condition rule prong
of the implied-duty-to-market.  See First Amended Complaint for Underpayment for Oil and Gas
Royalties ¶¶ 41-53, at 13-16, filed January 12, 2012 (Doc. 1-1)(asserting that the Defendants
violate the implied duty to market based on the marketable-condition rule sub-part); Second
Amended Complaint ¶¶ 43-55, at 13-16, filed February 16, 2012 (Doc. 10)("SAC")(same); First
MTD MO, 952 F. Supp. 2d at 1046-47 (noting that the Plaintiffs asserted that the Defendants'
practice of deducting the cost of rendering the hydrocarbons marketable from the Plaintiffs'
royalty payments violates the implied duty to market); Reconsideration MOO at 48 (observing
that the Plaintiffs originally alleged a claim "for breach of the marketable-condition rule sub-part
of the implied duty to market," and that the Plaintiffs "did not properly plead" a claim for breach
of the implied duty to market in the absence of the marketable-condition rule).

After the Court dismissed their implied-duty-to-market claim the first time, the Plaintiffs
asked for leave to amend the claim in hopes of re-pleading it in a way that could state a claim on
which the Court could grant relief.  They asked for leave to file the Fourth Amended Complaint
on the grounds that the Court had not specifically addressed their "unreasonable or non-existent
expenses" allegations in the First MTD MO.  Plaintiffs' Motion for Leave to File Fourth
Amended Complaint at 5, filed August 28, 2013 (Doc. 114)("Motion for Leave to File FAC").
They argued that "the Court may not have intended to dismiss Plaintiffs' allegations regarding
unreasonable or nonexistent expenses," and therefore asked to re-plead their claim for breach of
the duty to market.  Motion for Leave to File FAC at 4-5.  They did not ask the Court to re-plead
their claim on the basis that the Court did not consider their argument that the Defendants
breached the duty by failing to secure the highest reasonable price.  Accordingly, the Court
stated that it had considered each aspect of the Plaintiffs' implied duty to market claim and
dismissed the claim from the case.  See Second MTD MOO, 27 F. Supp. 3d at 1249.

The Plaintiffs did not ask the Court to reconsider this decision on the basis that the Court
failed to consider the aspect of the implied duty to market that the Plaintiffs now allege in the
Fifth Complaint.  Accordingly, neither the Court nor the Defendants had any reason to believe

implied-duty-to-market claim.  See Fifth Complaint ¶¶ 65-71, at 20-21.  The Defendants did not object to the amendment.

### 3.    Abraham v. WPX Production.

The Court also presides over Abraham v. WPX Production, No. CIV 12-0917 JB/CG, (D.N.M. 2016)(Browning, J.)("Abraham"), which is another oil-and-gas dispute involving royalty owners in the San Juan Basin.  See Memorandum Opinion and Order, filed August 16, 2016 (Doc. 252)("Abraham Class Certification MOO").  As in this case, the Abraham plaintiffs sought class certification for royalty underpayments.  See Abraham Class Certification MOO at 1-2. They sought certification on many of the same claims for which the Plaintiffs seek certification here.  See Abraham Class Certification MOO at 66-67.  The plaintiffs also sought certification on the implied-duty-to-market claim.  See Abraham Class Certification MOO at 67.

The Court concluded that the implied-duty-to-market claim did not allow the Court to disregard the lease language describing the royalty interest on which the proposed class members were to be paid.  Accordingly, to resolve the plaintiffs' claims, the Court would have to consider each lease form's varying language.  See Abraham Class Certification MOO at 178-80.  When combined with the other individual issues involved,[3] the Court determined that the individual

---

this claim to be in the case.  Further, in a seeming attempt to prevent the Defendants from filing another motion to dismiss, the Plaintiffs stated that the Court dismissed the implied-duty-to-market claim in Count Three of the Fourth Amended Complaint.  See Fourth Amended Complaint for Underpayment of Oil and Gas Royalties at 17, filed August 28, 2013 (Doc. 114). In the Reconsideration MOO, the Court determined that the other prong of the implied duty to market, which the Plaintiffs did not allege, could possibly provide a path for certification.  The Court noted, however, that it did "not decide whether the Plaintiffs can prevail on this claim," and concluded only "that the scope of the implied duty to market is broad enough to allow the Plaintiffs to make this claim."  Reconsideration MOO at 58 n.11.

[3]One additional reason the Court denied certification in Abraham was that the class was not ascertainable.  See Memorandum Opinion and Order, filed August 16, 2016 (Doc. 252)("Abraham Class Certification MOO").  At the hearing, the Defendants asserted that the same ascertainability issues precluded class certification here.  See Transcript of Hearing at 34:1-

issues would predominate over the common ones.  See Abraham Class Certification MOO at 195-98.  It therefore declined to certify the class.  See Abraham Class Certification MOO at 222-23.

### 4.        The Abraham Class Certification MOO.

Before the Defendants filed the Motion, the Court held a brief hearing to discuss whether the parties had to mediate class claims at an upcoming settlement conference.  See Memorandum Opinion and Order, filed July 25, 2016 (Doc. 351)("Scheduling MOO").  The Court mentioned that it might be able to certify a class in Abraham on the basis of the implied duty to market.  See Scheduling MOO at 6.  Accordingly, the parties were uncertain whether the Court would certify a class in Abraham on the basis of the implied-duty-to-market claim.  Perhaps in response to the Court's statements, the Defendants filed the Motion soon after this hearing.  See Motion at 1.  Ultimately, in Abraham, the Court concluded that the Abraham plaintiffs' implied-duty-to-market claim could not proceed as a class action.  See Abraham Class Certification MOO at 2.  The Court determined that, even though the implied duty to market existed in every lease agreement, the Court nonetheless had to consider lease language to ascertain how each class member was entitled to be paid.  See Abraham Class Certification MOO at 178-80.  Accordingly, lease language variation posed one obstacle, among others, to class certification in Abraham.

---

12 (taken August 18, 2016)("Tr.")(Sheridan).  There is no ascertainability issue here.  In Abraham, the plaintiffs' class definition required that the class' gas be processed at three named processing plants.  See Abraham Class Certification MOO at 163-64.  Accordingly, to define the class, the Court had to determine which well's gas was processed at the named plants.  See Abraham Class Certification MOO at 163-66.  That issue is not presented here, where the Plaintiffs do not require such specificity in their class definition.

5.      **The Motion, Response, and Reply.**

The Defendants ask the Court to require the Plaintiffs to amend the Fifth Complaint and

"to eliminate class allegations."   Motion at 1.   They assert that, because the Court denied class

certification, rule 23 "permits the Court to 'require that the pleadings be amended to eliminate

allegations about representation of absent persons.'"   Motion at 2 (quoting Fed. R. Civ. P.

23(d)(1)(D)).   The Defendants cite several cases in which courts have required plaintiffs to

remove class allegations after the Court denies the class certification.   See Motion at 2.   The

Defendants explain that removing class allegations serves to "'clean up' the pleadings if class

certification is denied.'"   Motion at 3.

The Plaintiffs responded on June 24, 2016.   See Plaintiffs' Response to Defendants'

Motion to Require Amendment of Pleadings to Eliminate Class Allegations, filed June 24, 2016

(Doc. 339)("Response").   The Plaintiffs note that the Fifth Complaint contains new class

allegations that the Court has not previously adjudicated.   See Response at 1-2.   They explain

that the Court previously concluded that the Plaintiffs' Fourth Amended Complaint "did not

encompass a claim for breach of the implied duty to market and therefore did not consider any

evidence of such at the class certification hearing."   Response at 2 (citing Anderson Living Trust

v. WPX Energy Prod., LLC, 312 F.R.D. at 637 ("As the Plaintiffs' claims for breach of the

implied duty to market were no longer in the case, the Court did not consider whether to certify a

class on the basis of the implied duty to market.")).

They state that "the Court has not examined the elements of Plaintiffs' Seventh Cause of

Action in the context of class certification simply because Plaintiffs have not yet filed a motion,

and presented evidence, on this claim, which is now 'at issue.'"   Response at 4. They note that

the Defendants did not contest the filing of the Fifth Complaint, which included the new claim

for breach of the implied duty to market.   See Response at 2.   The Plaintiffs conclude that the

Defendants "know they could not prevail on a [12(b)(6) motion] and chose to 'rename' their Motion to avoid the high standards required by *Fed. R. Civ. P.* 12(b)(6)."  Response at 4.

The Defendants replied on July 19, 2016.  <u>See</u> Reply in Support of Motion to Require Amendment of Pleadings to Eliminate Class Allegations, filed July 19, 2016 (Doc. 348)("Reply").  The Defendants contend that they are not "estopped from seeking relief under Rule 23(d)(1)(D) merely because [they] did not oppose Plaintiffs' motion for leave to file" their Fifth Complaint.  Reply at 2.  They note that they objected to the Plaintiffs' inclusion of class allegations in the Defendants' Answer to the Fifth Amended Complaint, filed May 20, 2016 (Doc. 327)("Answer").  Reply at 2 (citing Answer ¶ 13, at 3 n.2).

The Defendants observe that the Amended Scheduling Order does not provide for Plaintiffs' filing a class certification motion or presenting additional Rule 23 evidence.  <u>See</u> Reply at 3.  They state that the Plaintiffs "have not moved to amend the Amended Scheduling Order" to present rule 23 evidence or to file a class certification motion.  Reply at 3.  The Defendants urge the Court to require the Plaintiffs to file a motion detailing how they would like the case to proceed.  <u>See</u> Reply at 3-4.  Finally, the Defendants argue that the Court should not allow the Plaintiffs' implied-duty-to-market claim to proceed as a class claim, because they could have asserted it earlier, but failed to do so.  <u>See</u> Reply at 4-6.  They argue that the Court should not permit another round of class certification proceedings "when the plaintiffs were aware of but did not pursue the first time the claim or theory they belatedly seek to press."  Reply at 6.

6.      **The Hearing.**

The Court held a hearing on August 18, 2016.  See Transcript of Hearing (taken August 18, 2016 ("Tr.").[4]  The Court began the hearing by asking how the Plaintiffs wish to proceed. See Tr. at 3:6-20 (Court).  The Plaintiffs stated that they would like to file "a motion for class certification to somewhat narrow the class to limit it, let's say, to only those owners who had" certain lease forms that would prevail on an implied-duty-to-market claim.  Tr. at 13:24-14:9 (Brickell).  They named several ways that they could narrow the class in an attempt to make the class more homogeneous.  See Tr. at 14:1-19 (Brickell).  They contended that they "could narrow the class in that fashion in order to come within . . . what the Court found as a [stumbling] block to finding there would be a common answer that would predominate."  Tr. at 14:15-19 (Brickell).

Further, the Plaintiffs explained that they never submitted evidence at the class certification hearing about the implied duty to market that is now in the case.  See Tr. at 15:8-15 (Brickell).  They argued that they could introduce evidence that, even though some leases entitle the royalty owners to be paid downstream, "all of the royalty owners are entitled at least to a starting point of the true value of the gas at the wellhead."  Tr. at 15:23-25 (Brickell).  They noted that they could "come forward with expert testimony that will show that in every [instance] . . . the index price for gas only is undervaluing the gas."  Tr. at 16:9-13 (Brickell). The Plaintiffs again emphasized that the class "would be limited to a class definition of the gas that is on the gathering systems owned by Williams Four Corners and more than likely conventional gas."  Tr. at 16:17-21 (Brickell). The Plaintiffs concluded that they "can define that type of class," "put on that kind of evidence," and "can definitely come forward with a class

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

certification motion and evidence that will allow the Court to certify this." Tr. at 17:1-19 (Brickell).

The Plaintiffs added that, instead of pursuing a second class certification hearing on this claim, the Court could allow the Plaintiffs "to make an interlocutory appeal at this time of the previous denial of class certification." Tr. at 19:11-14 (Brickell). Additionally, the Plaintiffs proposed that the Court could allow the Plaintiffs to "make an offer of proof what we would want to put forward in a class certification motion" and, if the Court determined that the offer of proof would be futile, the Plaintiffs could appeal. Tr. at 19:15-20 (Brickell). The Court questioned the benefits of allowing an interlocutory appeal on the limited issue. See Tr. at 20:4-15 (Court). The Court further noted that, "as far as the claims that I have decided in the class certification hearing, to strip it out seems to me busy work." Tr. at 22:9-13 (Court). The Court stated that the claims are "not going forward in this Court. They're going to have to go get an appeal and have me overturned before it's going to go forward." Tr. at 22:12-16 (Court).

In response, the Defendants argued that the Plaintiffs should move for class certification before the Court determines that they can pursue a second round of class certification hearings. See Tr. at 23:2-9 (Sutphin). They contended that the Plaintiffs do not deserve "another shot at class certification when the plaintiffs were aware of but did not pursue a claim that could have potentially been certified." Tr. at 25:8-12 (Sutphin). The Defendants advised the Court not to allow another round of class certification briefing when the Plaintiffs has not filed a motion. See Tr. at 26:3-10 (Sutphin). They reminded the Court that the Plaintiffs had proposed at least three potential methods of proceeding in this case, and argued that the Defendants cannot "fully evaluate the prudence, the propriety of any of those proposals," unless the Plaintiffs move the Court. Tr. at 27:23-28:1 (Sutphin). They urged the Court to require the Plaintiffs to move,

stating: "They need to figure out what their exact request is, what they want to do, and make a motion."  Tr. at 28:2-5 (Sutphin).  See id. at 32:18-20 (stating that the Court should "require plaintiffs, if they're going to do something, to make them request that in a motion" so that the Defendants "can respond to it").  They acknowledged that the Court has "complete discretion here," but stated that "the better path that this Court should follow" is to "not allow this to go any further."  Tr. at 26:15-20 (Sutphin).

The Court asked whether any cases have stripped out class allegations when the Court had not yet determined whether those claims could proceed as class claims, but had determined that other claims could not proceed as a class.  See Tr. at 42:14-20 (Court).  The Defendants stated that the Court should read the cases involving rule 23(d) "in connection with" the cases that "address the issue of not allowing a second bite at the apple when plaintiffs were aware of the theory they're trying to base their second class certification proceeding on."  Tr. at 42:1-8 (Sutphin).  They admitted that they found no cases addressing the precise facts involved here, but stated that the Court must "interpret 23[(d)(1)(D)] in connection with the so-called second bite cases."  Tr. at 44:7-16 (Court, Sutphin).

Finally, the Defendants argued that the Plaintiffs must address the procedural difficulties involved in filing a new class certification motion.  They noted that class certification briefing hearings must be scheduled, so the Plaintiffs must move the Court to hold "any additional class certification briefing and certainly an evidentiary hearing."  Tr. at 32:11-14 (Sutphin).  After the hearing, the Defendants filed a Notice of Supplemental Authorities.  See Defendants' Notice of Supplemental Authorities, filed August 26, 2016 (Doc. 354)("Supplemental Authorities").  They explained that the "notice addresses analogous cases 'where you strip out [] the class allegations, without having any class certification hearing.'"  Supplemental Authorities at 1.

## RELEVANT LAW REGARDING RULE 23(d)

Under rule 23(d), courts hearing rule 23 actions "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). The Honorable John W. Lungstrum, United States District Judge for the District of Kansas, has stated that stripping pleadings of class claims when those claims are not viable as a class "serves the interests of efficiency by avoiding the continued litigation of claims that ultimately cannot survive." In re Syngenta AG MIR 162 Corn Litig., No. 14-MD-2591-JWL, 2016 WL 1391045, at *2 (D. Kan. April 7, 2016)(Lungstrum, J.). The Honorable Timothy D. DeGiusti, United States District Judge for the Western District of Oklahoma has stated: "Thus, if a distinct portion of the putative classes alleged by plaintiffs could not maintain certain claims as a matter of law, the Court would not hesitate to dismiss those claims or to strike a certain portion of the classes." In re Syngenta AG MIR 162 Corn Litig., 2016 WL 1391045, at *2. See Hockenbury v. Hanover Ins. Co., 2016 WL 552967, at *2 (W.D. Okla. Feb. 10, 2016)(DeGiusti, J.). The Court is not convinced, however, that it should eliminate class allegations unless there is a clear reason to do so. The Court does not ask that pleadings be amended after it grants partial motions to dismiss or motions for summary judgment. Such would be considered busy work, and requiring parties to clean up class allegations, may in many circumstances, be considered busy work too.

"A Rule 23(d)(1)(D) order to strike class allegations is appropriate only after the court rules that class treatment is improper -- such as after the court denies class certification." Faktor v. Lifestyle Lift, 2009 WL 1565954, at *1 (N.D. Ohio June 3, 2009)(Gwin, J.)(citing 5-23 Moore's Federal Practice -- Civil § 23.145). Courts therefore use rule 23(d)(1)(D) after they determine that an action cannot proceed as a class action. See Faktor v. Lifestyle Lift, 2009 WL

1565954, at *2.  Notably, however, a court may conclude that an action may not proceed as a class action before the court adjudicates a motion for class certification.  See Gen. Telephone Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)(stating that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiffs' claim"); Sanders v. Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009)(Fogel, J.)("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery.").

For example, if the allegations are facially inadequate on the basis of incontrovertible facts, a court may require a plaintiff to strike class allegations before discovery or before the plaintiff files a motion to certify a class.  See Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 949 (6th Cir. 2011); Kasalo v. Harris & Harris, Ltd., 656 F.3d 557, 563 (7th Cir. 2011); Daniels v. City of Wyo., 2016 WL 524356, at *4 (S.D. Ohio Feb. 10, 2016)(Dlott, J.); Clark v. McDonald's Corp., 213 F.R.D. 198, 205 (D.N.J. 2009)(Kugler, J.)(observing that defendants may "move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met").  The Honorable Eduardo Robreno, United States District Judge for the Eastern District of Pennsylvania, has stated that striking "class claims prior to discovery and a motion to certify the class by plaintiff is the exception rather than the rule."  Whitaker v. Herr Foods, Inc., 2016 WL 4060127, at *16 (E.D. Pa. July 29, 2016)(Robreno, J.)(quoting Luppino v. Mercedes-Benz USA, LLC, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013)(Cavanaugh, J.)).  See John v. National Sec. Fire and Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007)("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 284 F.R.D. 238, 245

(E.D. Pa. 2012)(DuBois, J.)(observing that granting a motion to strike under rule 23(d)(1)(D) before class discovery is proper only "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met" and "no amount of discovery will demonstrate that the class can be maintained"); Timing of Class Action Determination -- Motion to Strike Allegations, 1 <u>McLaughlin on Class Actions</u> § 3:4 (12th ed.)("Therefore, motions to strike should not be the norm, but are appropriate where the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts.").

Although the United States Court of Appeals for the Tenth Circuit has not articulated a standard for evaluating preemptive motions to deny class certification, courts within the Tenth Circuit "have held motions to strike class allegations to a high standard of proof." <u>Wornicki v. Brokerpriceopinion.com, Inc.</u>, 2015 WL 1403814, at *4 (D. Colo. March 23, 2015)(Brimmer, J.). For instance, in <u>Francis v. Mead Johnson & Co.</u>, No. 10–cv–00701–JLK, 2010 WL 3733023 (D. Colo. Sept. 16, 2010)(Kane, J.), the court ruled that, to prevail on a motion to strike class allegations, a defendant "must demonstrate from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." 2010 WL 3733023, at *1 (quoting <u>Bryant v. Food Lion, Inc.</u>, 774 F. Supp. 1484, 1495 (D.S.C. 1991)(Hawkins, C.J.)(emphasis in original). Likewise, in <u>Friedman v. Dollar Thrifty Automotive Group, Inc.</u>, No. 12–cv–02432–WYD–KMT, 2013 WL 5448078 (D. Colo. Sept. 27, 2013)(Daniel, J.), the court opined that, in a preemptive challenge to class certification, "the Tenth Circuit would require only that the named [p]laintiffs prove that the allegations of their complaint, accepted as true, satisfy Rule 23(a)'s requirements." 2013 WL 5448078, at *3 (citation and quotation omitted). Most recently, the Honorable Philip A. Brimmer, United States District Judge for the District of Colorado, stated that, to prevail on a motion to strike class

allegations, "a defendant 'must demonstrate from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove[.]'" Wornicki v. Brokerpriceopinion.com, Inc., 2015 WL 1403814, at *4. Brimmer wrote that "the Court will grant a defendant's motion only if they are able to show conclusively that plaintiffs will be unable to establish facts that would make class treatment appropriate." Wornicki v. Brokerpriceopinion.com, Inc., 2015 WL 1403814, at *4. See also Whitaker v. Herr Foods, Inc., 2016 WL 4060127, at *16 ("[D]istrict courts in the Third Circuit typically hold that 'motions to strike class allegations are premature.").

## ANALYSIS

Although the Plaintiffs may not pursue class certification on the claims for which the Court already denied class certification, the Court will not require the Plaintiffs to amend the pleadings. Moreover, because the Court cannot soundly conclude at this time that the implied-duty-to-market claim cannot proceed as a class claim, the Court will not require the Plaintiffs to strike the class allegations from their pleadings on this claim. In sum, while the Court is not granting another round of class certification proceedings in this opinion, it will not require the Plaintiffs to amend the pleadings. The Court therefore denies the Defendants' Motion.

## I.   ALTHOUGH THE PLAINTIFFS MAY NOT PURSUE CLASS CERTIFICATION ON THEIR REMAINING CLAIMS, THE COURT WILL NOT REQUIRE THE PLAINTIFFS TO AMEND THE PLEADINGS.

With respect to the remaining claims, the Court considered and denied class certification. The Court held that those claims could not be certified as class claims under rule 23(b). See Class Certification MOO at 1-2. As rule 21(d) grants the Court extensive power to manage all aspects of class claims, the Court will not allow the Plaintiffs to pursue another round of class certification hearings and briefings on these claims. See Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 172-73 (1989)(stating that the district court has "considerable authority to manage

[its] own affairs so as to achieve the orderly and expeditious disposition of cases"); Hartman v. United Bank Card, Inc., 291 F.R.D. 591, 596-97 (W.D. Wash. 2013)(stating that a plaintiff must show "some justification" for filing another class certification motion, "and not simply a desire to have a second or third run at the same issues").

Nevertheless, rule 23(d) does not require the Court to direct the Plaintiffs to remove class allegations.  See Fed. R. Civ. P. 23(d)(1)(D)("[T]he court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons . . . .")(emphasis added).  Instead, it merely authorizes a district court "to 'clean up' the pleadings if class certification is denied."  Friedman v. Dollar Thrifty Automotive Grp., Inc., 2015 WL 4036319, at *8 (D. Colo. July 1, 2015)(Daniel, J.)(quoting Bank v. Am. Home Shield Corp., 2013 WL 789203, at *3 (E.D.N.Y. March 4, 2013)(Block, J.)).  The Court will not require the Plaintiffs to engage in this busy work in light of the Court's clear denial of certification on these claims.  The parties do not point to any confusion whether these allegations remain class claims.

## II.   THE COURT WILL NOT REQUIRE THE PLAINTIFFS TO ELIMINATE THE CLASS ALLEGATIONS IN THE SEVENTH CAUSE OF ACTION.

The Defendants ask the Court to require the Plaintiffs to remove all class allegations from their new implied-duty-to-market claim.  See Motion at 1-2.  Rule 23 allows the Court to require the Plaintiffs to strip the pleadings of class claims after the Court determines that those claims cannot proceed as class claims.  See Fed. R. Civ. P. 23(d)(1)(D).  The Court will not require the Plaintiffs to remove class allegations from their Seventh Cause of Action.  First, although the Court has determined that some of the Plaintiffs' claims cannot proceed as class claims, the Court has not concluded that the Plaintiffs' new implied-duty-to-market claim cannot proceed as a class claim.  Second, given the Plaintiffs' new claim and proposed narrower class, the Court cannot soundly conclude that it will be impossible to certify a class action.

- 16 -

As to the first issue, the Plaintiffs plead a new claim that the Court did not consider in its Class Certification MOO.  The Court has not yet determined whether it could certify a class on the basis of the Plaintiffs' new claim.[5]  See Anderson Living Trust v. WPX Energy Prod., LLC, 312 F.R.D. at 637 ("As the Plaintiffs' claims for breach of the implied duty to market were no longer in the case, the Court did not consider whether to certify a class on the basis of the implied duty to market.")).  Regarding the second issue, the Court cannot soundly and conclusively determine that it could not certify a rule 23 class on the basis of this claim.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), requires the Court to engage in its own "rigorous analysis" whether the Plaintiffs have satisfied rule 23's class certification requirements.  See 131 S. Ct. at 2551.  The Supreme Court of the United States of America observed that "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the

---

[5]Although the Court has not yet determined whether the Plaintiffs' new claim can proceed as a class action, the Court recently concluded that the Abraham plaintiffs' implied-duty-to-market claim could not proceed as a class action.  See Abraham Class Certification MOO at 2.  There, the Court determined that, even though the implied duty to market existed in every lease agreement, the Court nonetheless had to consider lease language to ascertain how each class member was entitled to be paid.  See Abraham Class Certification MOO at 178-80.  Accordingly, lease language variation posed one obstacle, among others, to class certification in Abraham.

The Plaintiffs face a similar certification hurdle to that which the Abraham plaintiffs faced.  The issues and proposed classes are not identical, however.  First, as noted above, the Plaintiffs here do not require that the class' gas be processed at specific processing plants.  Additionally, the Plaintiffs argue that they can address the obstacle that lease language variation poses.  See Tr. at 16:9-13 (Brickell)(explaining that they could introduce expert testimony to address some of the Court's concerns).  The Plaintiffs explain that they will seek to certify a narrower class than the class in Abraham, perhaps only to include class members with certain lease forms.  Tr. at 13:24-14:9 (Brickell)(stating that the Plaintiffs intend to file "a motion for class certification to somewhat narrow the class to limit it, let's say, to only those owners who had" certain lease forms that would prevail on an implied-duty-to-market claim).  Given the differences between this case and Abraham, the Court cannot soundly and conclusively determine, at least now without any details how the Plaintiffs plan to proceed, whether it could ultimately certify a class on the basis of this claim.  Given the Court's conclusions in Abraham, however, it doubts that it can certify a class on the basis of the current class definition.

plaintiff's underlying claim."  131 S. Ct. at 2551.   Here, however, the parties do not address the

claim's merits or viability as a class claim in the briefing.   Furthermore, the Plaintiffs assert that

they need to introduce expert testimony on the claim.   See Tr. at 16:9-13 (Brickell).   Although

the Plaintiffs face an uphill battle in proving that the Court can certify a class,[6] the Court cannot

soundly hold at this stage that it will be impossible to certify a class regardless of the facts that

the Plaintiffs may prove.   "[C]ourts in this district have held motions to strike class allegations to

a high standard of proof."   Wornicki v. Brokerpriceopinion.com, Inc., 2015 WL 1403814, at *4.

The Defendants have not met that standard of proof here.

The cases that the Defendants cite do not persuade the Court to strike all class allegations

on claims that the Court has not considered.   For instance, in Gomez v. Kroll Factual Data, Inc.,

2014 WL 2206966 (D. Colo. May 28, 2014)(Martinez, J.), the Honorable William J. Martinez,

United States District Judge for the District of Colorado, required the plaintiff to strike class

allegations only after conclusively determining that he could not certify a class action.   See 2014

WL 2206966, at *2.   The plaintiff filed an amended complaint with a slightly modified class

definition.   Because Judge Martinez had already "considered the newly defined class when

denying the Class Certification Motion" and "determined that Plaintiff's proposed class should

not be certified," he required the plaintiff to remove class allegations.   2014 WL 2206966, at *2.

Similarly, in Kunin v. Costco Wholesale Corp., 2011 WL 6090132, at *8 (E.D. Mich. Dec. 7,

2011)(Roberts, J.), the Honorable Victoria A. Roberts, United States District Judge for the

Eastern District of Michigan, required the plaintiff to strike his class claims after the court's

---

[6]The Defendants note that, in addition to the substantive difficulties, the Plaintiffs face procedural obstacles to class certification as well.  See Reply at 3.   They observe that the "Amended Scheduling Order does not provide for Plaintiffs' filing a class certification motion or presenting additional Rule 23 evidence."  Reply at 3.

"determination that class treatment of Kunin's claims is inappropriate."   Kunin v. Costco Wholesale Corp., 2011 WL 6090132, at *8.  See Boatwright v. Walgreen Co., 2011 WL 843898, at *2 (N.D. Ill. March 4, 2011)(Castillo, J.)("Rule 23(d)(1)(D) can be used to remove class allegations from a complaint after the class certification issue had be[en] properly presented and determined by a court.").

Here, in contrast, the Plaintiffs propose to certify a new class on the basis of a claim that the Court has not yet considered as a class claim.  The Defendants acknowledge that no case requires plaintiffs to remove all class allegations when courts have not yet determined whether a claim could proceed as a class claim.  See Tr. at 44:7-16 (Court, Sutphin).  Instead, they ask the Court to read various authorities together to preclude the Plaintiffs from proceeding as a class action.  See Tr. at 44:7-16 (Court, Sutphin)(admitting that the Defendants found no cases addressing the precise facts involved here, but that the Court must "interpret 23[(d)(1)(D)] in connection with the so-called second bite cases").  Specifically, they ask the Court to apply the standard applicable to motions to amend the pleadings.

The battle whether to allow a second round of class certification proceedings frequently plays out in the context of a motion to amend the plaintiff's complaint, or a motion to pursue a second -- or third -- round of class certification proceedings.  See Mogel v. UNUM Life Ins. Co. of Am., 677 F. Supp. 2d 362, 365-66 (D. Mass. 2009)(Gorton, J.)(denying the plaintiff's motion for leave to amend their complaint and file a renewed motion for class certification); Cabrera v. Gov't Employees Ins. Co., 2015 WL 464237, at *3-4, 7 (denying the plaintiff's renewed motion for class certification after the plaintiff "changed his theory of the case and the class he seeks to represent four times"); Chapman v. First Index, Inc., 2014 WL 351127, at *1-2 (N.D. Ill. July 16, 2014)(Ellis, J.)(denying the plaintiff leave to amend the complaint with a new class definition

pursuing "a new theory of liability" under rule 15(a)'s standards after the court had denied class certification).   In this case, however, the Plaintiffs have not filed a motion to amend or a motion for class certification.   Nevertheless, the Defendants ask the Court to apply the same standards applicable to motions to amend to their rule 23(d) Motion.   See Tr. at 42:1-8 (Sutphin); Reply at 6-7.   Rule 23(d) is a different rule that directs the Court to apply a different standard than rule 15(a).   The Defendants did not object to the Plaintiffs' Fifth Complaint.   See Reply at 2 (conceding that the Defendants "did not oppose Plaintiffs' motion for leave to file" the Fifth Complaint, but arguing that "no authority suggests that WPX is estopped from seeking relief under Rule 23(d)(1)(D)").   If the Defendants wanted the Court to apply rule 15(a)'s standards, they should have done so when the Plaintiffs sought to file the Fifth Complaint.

Moreover, rule 23(c)(1)(C) authorizes courts to alter or amend orders granting or denying class certification before final judgment.   See Fed. R. Civ. P. 23(c)(1)(C).   The Court has "ample discretion to consider (or decline to consider) a revised class certification motion after initial denial."   In re Initial Public Offering Sec. Litig., 483 F.3d 70, 73 (2d Cir. 2007).   Even after courts have denied a plaintiff's first attempt at class certification, courts allow plaintiffs to propose a refined class definition or different claims in an attempt to certify a different class than the one originally proposed.   See Pettco Enterprises, Inc. v. White, 162 F.R.D. 151, 156 (M.D. Ala. 1995)(Albritton, J.)(allowing the plaintiffs to attempt to certify a class, even after the court had already denied certification once, and noting that the plaintiffs' new class definition changed the class and the claims).   Courts of Appeals have made clear that nothing "precludes the [plaintiffs] from returning to the District Court to seek certification of a more modest class, as one to which the Rule 23 criteria might be met."   In re Initial Public Offering Sec. Litig., 483 F.3d 70, 73 (2d Cir. 2006).   The United States Court of Appeals for the Fifth Circuit has

"specifically invited" a district court to reconsider a denial of class certification.  Calderon v. Presidio Valley Farmers Ass'n, 863 F.2d 384, 389 (5th Cir. 1989).  The United States Court of Appeals for the Second Circuit has similarly noted that a plaintiff could seek to certify a narrower class after the Second Circuit upheld the district court's denial of class certification. See In re Initial Public Offering Sec. Litig., 483 F.3d at 73.  The Second Circuit stated that the district court "can be expected to give such a request full and fair consideration."  In re Initial Public Offering Sec. Litig., 483 F.3d at 73.  On remand, the Honorable Shira A. Scheindlin, United States District Judge for the Southern District of New York, "held that the revised class definition satisfied the Rule 23 certification requirements" for purposes of a class settlement.  In re Initial Public Offering Sec. Litig., 2011 WL 2732563, at *3 (S.D.N.Y. July 8, 2011)(Scheindlin, J.).  On the other hand, the plaintiffs need to be careful not to turn a new class certification motion into a motion to reconsider, thereby asking the Court to apply the standards applicable to motions to reconsider.

Further, the Plaintiffs are not prohibited from seeking to certify a class on the basis of new claims that they could have pursued earlier.  In Scott v. Family Dollar Stores, Inc., 733 F.3d 105 (4th Cir. 2013), the United States Court of Appeals for the Fourth Circuit held that a district court erred when it did not consider the plaintiff's new allegations.  See 733 F.3d at 116-17. Like here, the plaintiff in Scott v. Family Dollar Stores, Inc. attempted to certify the class after improving the pleadings.  See 733 F.3d at 116-17.  The Fourth Circuit stated that, even if the plaintiff pursued "a completely new legal theory from the one asserted previously, such an approach is not cause for 'judicial estoppel.'"  733 F.3d at 118 (quoting Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996)(noting that, to prevent a party from pursuing a new claim, "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance

taken in prior litigation," which "must be one of fact rather than law or legal theory")(emphasis added)).  Here, the Fifth Complaint's factual position is consistent with the original complaint's factual position.

In the Supplemental Authorities, the Defendants point to several cases demonstrating that federal courts "apply principles of comity to each other's class certification decisions when addressing a common dispute."  Supplemental Authorities at 1 (quoting Smith v. Bayer, 564 U.S. 299, 317 (2011)).  They ask the Court to apply its reasoning in Abraham to the "effectively identical" issues here to deny class certification.  See Supplemental Authorities at 1-2.  Unlike in the cases that the Defendants cite, the Court cannot determine that the Plaintiffs' class warrants "identical" treatment to the class in Abraham.  Although the implied-duty-to-market claim may be largely the same in the two cases, there are numerous other differences between the cases and between the class definitions.  These differences matter to class certification.  Notably, the Court did not hold that it could never certify a class on the implied-duty-to-market claim, nor did it hold that the individual Plaintiffs could not prevail on the claim.  Instead, the Court concluded that it could not ignore lease language, and that the numerous individual issues involved in Abraham would predominate over the common ones.  Some of the individual issues in Abraham are not involved in Anderson.  In contrast with Abraham, the primary problem with class certification in Anderson involves the large number of lease forms the Court would have to consider.  If the Plaintiffs eliminated this obstacle, the individual issues might not predominate here.  Although the Court thinks that the issues are very similar and that it will likely have to deny class certification here, it does not know, and it cannot conclusively determine that the Plaintiffs will be unable to certify a class.

The cases that the Defendants cite address situations where "class counsel makes repeated efforts to certify the same class 'by the simple expedient of changing the named plaintiff in the caption of the complaint.'"  Ott v. Mortgage Investors Corp. of Ohio, Inc., 65 F. Supp. 3d 1046, 1063 (D. Ore. 2014)(emphasis added)(citing Smith v. Bayer Corp., 564 U.S. at 317).  See Baker v. Home Depot USA, Inc., 2013 WL 271666, at *5 (observing that the plaintiff sought to certify a class that was "materially identical" to multiple other classes that had been denied certification).  Here, the Anderson case involves numerous different issues and a different class of persons than Abraham.  Moreover, even the cases that the Defendants cite did not strike class allegations merely because another case denied class certification.  Rather, they viewed the other court's class certification denial "as a rebuttable presumption against certification of the same classes."  Ott v. Mortgage Investors Corp. of Ohio, Inc., 65 F. Supp. 3d at 1063 (emphasis added).  In Ott v. Mortgage Investors Corp. of Ohio, Inc., when the proposed class differed from the class for which another district court denied certification, the United States District Court for the District of Oregon did not strike those class allegations.  See Ott v. Mortgage Investors Corp. of Ohio, Inc., 65 F. Supp. 3d at 1064 (noting that "a motion to strike is not the appropriate procedural vehicle to test the class allegations with respect to numerosity," and stating that the previous court did not address one proposed class at issue).  Here, the Plaintiffs attempt to certify a distinctly different class that does not require the gas to be processed at three named processing plants -- the biggest obstacle to the Abraham class certification.  Accordingly, a motion to strike is not the proper procedural vehicle to dismiss the Plaintiffs' implied-duty-to-market class allegations here.

In the end, rule 23(d) authorizes the Court to direct plaintiffs to strip all class allegations from the complaint only when the Court has determined that the claims cannot proceed as class

claims.  Because the Court has not yet made that determination on the implied-duty-to-market claim, the Defendants' arguments are premature.  See Korman v. Walking Co., 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007)(Robreno, J.)(noting that district courts within the United States Court of Appeals for the Third Circuit typically hold that "motions to strike class allegations are premature and that the proper avenue is to oppose the plaintiff's motion for class certification").  Other courts have similarly refused to require plaintiffs to strip their pleadings of class allegations when the court has yet to determine whether the claims can proceed as a class action.  See Faktor v. Lifestyle Lift, 2009 WL 1565954, at *2 (noting that the defendants' request to strip the pleadings of class allegations was "premature" when the court had not determined whether any of the claims could proceed as a class action).  Ultimately, the Plaintiffs will bear the burden of demonstrating that questions of law or fact common to class members predominate over any questions affecting individual members.  See Fed. R. Civ. P. 23(b)(3).  The Court can better address these questions after the Plaintiffs flesh out the details of the claim and their class, and introduce the proposed evidence on the implied-duty-to-market claim.  Even the Defendants urge the Court to require the Plaintiffs to file a class certification motion if that is how they wish to proceed.  See Reply at 3-4.  The Court declines to require the Plaintiffs to strike their class allegations now, before the Court has considered evidence or arguments on the implied-duty-to-market claim.  See Wornicki v. Brokerpriceopinion.com, Inc., 2015 WL 1403814, at *;4; Boatwright v. Walgreen Co., 2011 WL 843898, at *2 (refusing to strike class allegations when the court had not yet determined whether to certify a class action).  If the Plaintiffs wish to certify a class action on this new basis, however, they must file a motion.  See Fed. R. Civ. P. 7 ("A request for a court order must be made by motion.").

**IT IS ORDERED** that the Defendants' Amended Motion to Require Amendment of Pleadings to Eliminate Class Allegations, filed June 9, 2016 (Doc. 334), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Stan Koop
Norman, Oklahoma

--and--

Stephen R. McNamara
Brian Inbody
McNamara, Inbody & Parrish, PLLC
Tulsa, Oklahoma

--and--

Karen Aubrey
Santa Fe, New Mexico

--and--

Brian K. Branch
Albuquerque, New Mexico

--and--

Cynthia Zedalis
Cohen & Zedalis LLP
Santa Fe, New Mexico

--and--

Bradley D. Brickell
Brickell & Associates, P.C.
Norman, Oklahoma

*Attorneys for the Plaintiffs*

Christopher A. Chrisman
Holland & Hart LLP
Denver, Colorado

--and--

Mark F. Sheridan
Bradford C. Berge
Robert J. Sutphin
John C. Anderson
Holland & Hart LLP
Santa Fe, New Mexico

*Attorneys for the Defendants*